## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

MICHAEL D. ROSE, et al.,      )
                      )
      Plaintiffs,      )
                      )
v.                     )      Civil Action No. 5:22-cv-00405
                      )             (Judge Volk)
JEFF S. SANDYT, et al.,     )
                      )
      Defendants.     )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT WEXFORD HEALTH SOURCES, INC.

**COMES NOW** Plaintiffs, through counsel, and in further support of their *Motion for Sanctions* respectfully states as follows:

### PROCEDURAL HISTORY

On June 1, 2023, the undersigned counsel for Plaintiffs filed an Amended Notice of 30(b) Deposition of Defendant Wexford Health Sources, Inc. (hereinafter "Wexford") [ECF No. 294]. On June 6, 2023, Wexford filed a Motion for Protective Order pertaining to Plaintiffs' 30(b)(6) Notice [ECF No. 315]. On June 23, 2023, Plaintiffs filed a Response in Opposition to Wexford's Motion for Protective Order [ECF No. 363]. On June 30, 2023, the Court entered an Order denying Wexford's Motion for Protective Order [ECF No. 370].

On July 18, 2023, Mary Stone (hereinafter "Ms. Stone"), Wexford's Vice President of Operations, appeared for her deposition as the corporate representative of Wexford. *See* Transcript attached hereto as Exhibit 1. During her deposition, Ms. Stone was unprepared to offer testimony relating to various areas of inquiry contained in the notice of deposition. It also became evident that Ms. Stone had conducted no search for responsive documents, failed to adequately educate

1

herself regarding numerous areas of inquiry, failed to interview Wexford employees with adequate knowledge (*e.g.*, the health services administrator), and was otherwise unprepared to responsively testify.  In addition, Wexford produced no documents pursuant the Rule 34 requests contained in Plaintiffs' 30(b)(6) Deposition Notice.  Accordingly, Plaintiffs now bring the present Motion for Sanctions.

## ARGUMENT AND CITATION OF AUTHORITY

### A. WEXFORD'S FAILURE TO DESIGNATE AN ADQUATELY PREPARED CORPORATE REPRESENTATIVE MERITS SANCTIONS.

"The imposition of discovery sanctions is generally within the sound discretion of the trial court." *Centola v. AMS, Inc*., 2016 U.S. Dist. LEXIS 77554 (S.D. W.Va. 2016). Rule 30(d) sanctions, however, are not limited to counsel.  This Court has previously determined that the term "person" utilized in the Rule included "the deponent, any party, or any other person involved in the deposition." *See id*.

In *Centola*, the Court found that a deponent's acts and failures to act "impended, delayed, and frustrated his examination." *Id.* at *7.  Specifically, the deponent "failed to take reasonable steps in preparation of the deposition.  Although he was served with the subpoenas to testify and produce documents two weeks before the deposition was scheduled to occur, [the deponent] did not personally search for the subpoenaed documents and made no effort to ensure that a reasonable search was conducted." *Id*. at *7-8.  Based upon this conduct, the Court awarded attorney's costs and fees for taking of the deposition and the cost of bringing the motion to compel: a total of $17,845.00. *Id*.

In the present case, the Court may go a step further, as the deponent at issue was a corporate representative, offered by Wexford under Rules 30(b)(6) of the *Federal Rules of Civil Procedure*. Under Rule 30(b), a party may propound a notice to a corporate defendant requesting the

2

production of responsive documents, as well as the production of a corporate representative to provide deposition testimony as to matters within the knowledge of the corporation.  *See* Fed. R. Civ. P. Rule 30.  The clear purpose of corporate representative depositions is:

> to avoid the difficulties encountered by both sides when the examining party is unable to determine within the corporation who would be best able to provide the information sought, to avoid the 'bandying' by corporations where individual officers disclaim knowledge of facts clearly known to the corporation, and to assist corporations which found an unnecessarily large number of their officers and agents were being deposed. Rule 30 [. . .] gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf.  For a Rule 30(b)[7] deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and *the corporation must designate and adequately prepare witnesses to address these matters*.

*U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C), *aff'd* 166 F.R.D. 367 (1996) (emphasis added). Rule 30 requires that the corporate representative, while not required to have personal knowledge or have been personally involved in the examination topics, is required to "be sufficiently prepared to give knowledgeable, complete, and binding answers on behalf of the corporation." *Id*. Producing an unprepared witness is tantamount to failure to appear.  *See id*.

Pursuant to Rule 37, sanctions may be warranted where a person designated under Rule 30(b)(6) to testify on behalf of a party fails "to appear for the person's deposition" or "fails to serve its answers, objections, or a written response" to Rule 34 requests for production.  *See* Fed. R. Civ. P. Rule 37(d).  In such a situation, the Court may impose sanctions including, but not limited to, entry of an order: (a) that the disputed matters or facts at issue shall be taken to be established for the purposes of the action; (b) refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; (c) striking out pleadings or parts thereof, or staying further proceedings until

3

the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party. *See id*.

Failure to provide an adequately prepared corporate representative is tantamount to providing no witness at all. *See Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("if a [corporate witness] is unable to give useful information [s]he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it [. . .] the purpose behind [the Rule] is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf"); *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196 (5th Cir. 1993) ("If [the] agent is not knowledgeable about relevant facts, and the principal has failed to identity an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all); *Groat v. Equity Am. Ins. Co.*, 884 P.2d 228 (Ariz. App. 1994) (the lower court properly imposed sanction of striking answer, 30(b)(6) deponent had no knowledge of subject areas). Moreover, when it is apparent that an appointed corporate representative is deficiently informed, the party appointing the representative has a duty to substitute another, knowledgeable representative. *See Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

Where no representative or an inadequately prepared representative is presented, sanctions are merited under Rule 37. *See Black Horse, supra* (affirming entry of order imposing monetary sanctions pursuant to Rule 37 for failure to produce a knowledgeable corporate representative); Resolution *Trust Corp.*, *supra* (affirming award of attorney fees and costs pursuant to Rule 37 for failure to produce an adequately prepared corporate representative); Taylor, *supra* ("The Rule

provides a panoply of sanctions, from the imposition of costs to entry of default"). These sanctions include the entire array of sanctions available under Rule 37.

As evidenced by her deposition testimony, Wexford's designated corporate representative, Ms. Stone, was woefully ill prepared to testify regarding the topics in Plaintiffs' 30(b)(6) Notice. As a threshold matter, Ms. Stone has scant personal knowledge about how Wexford operates at Southern Regional Jail (hereinafter "SRJ"). During her deposition, she testified that since Wexford took over the medical unit at SRJ on June 26, 2022, she has not been involved with SRJ on a daily basis and has only personally been to the jail "[o]ne time that I can remember." *See* Ex. 1 at pp. 14:1; 15:1-14. Likewise, when asked how often she talks to the nurses at SRJ about what they believe is going on in the facility, she answered, "I don't." *Id*. at p. 264:8-16. In addition, when asked how often she speaks with Dr. Rasid, the Wexford on-site medical director at SRJ, she answered, "[a] few e-mails is all [I] have. I haven't had much conversation with Dr. Rashid." *Id*. p. 264:17-20.

Armed with such little personal knowledge about SRJ, Ms. Stone was obligated to educate herself (by reviewing documents, interviewing Wexford employees, etc.) regarding the medical unit at SRJ and the topics listed in the 30(b)(6) Deposition Notice prior to testifying on behalf of Wexford. However, in preparation for her deposition, the *only documents* Ms. Smith reviewed were the transcript of Dr. Rashid's deposition taken previously in this case and some National Commission on Correctional Health Care standards (hereinafter "NCCHC Standards"). *See id*. at pp. 9:1-18.[1] Moreover, the *only person* she spoke to in advance of her deposition was the health services administrator (hereinafter "HSA"), but on only a few, limited topics.

---

[1] Ms. Stone also produced *no documents* pursuant to Plaintiffs' Rule 34 requests in the 30(b)(6) Deposition Notice.

As made clear during her deposition testimony, Ms. Stone has little knowledge of the medical unit at SRJ, Dr. Rashid's role and involvement in the medical care provided at SRJ, and whether the medical unit at SRJ was in compliance with various NCCHC Standards. Thus, as a result of Ms. Stone's lack of knowledge and utter failure to adequately prepare for her 30(b)(6) deposition, she answered "I don't know" or "I'm not sure" to *scores* of basic questions about how the medical unit at SRJ operates.

For example, Ms. Stone testified that she "does not know": if all members of the medical staff at SRJ are certified in correctional health care [p. 18:15-18]; how many nurses are currently employed at SRJ [p. 19:5-8]; how many of the SRJ medial staff changed over from PrimeCare to Wexford when it took over at the jail [p. 20:8-11]; who is in charge of video training at SRJ [p. 21:2-4]; how many inmates SRJ is designed to house [p. 33:15-19]; how long SRJ went without a mid-level-provider [p. 50:6-12]; whether NCCHC accreditation reports have been produced in this case [p. 78:9-21]; if Dr. Rashid attends monthly staff meetings at SRJ [p. 110:7-14]; if Dr. Rashid reviews policies and procedures annually [p. 115:17-24; 116:1-11]; who is on the quality improvement committee at SRJ [p. 119:17-24; 120:1-7]; if Dr. Rashid reviews quality improvement committee minutes/summaries [p. 121:10-24; 122:1-4]; if health record reviews are performed at SRJ [p. 122:21-24; 123:1-5]; if correctional officers are involved with inmate mortality reviews at SRJ [p. 125:2-7]; who participates in administrative mortality reviews at SRJ [p. 125:17-24; 126:1-3]; if a psychological autopsy is performed within 30 days after every suicide death at SRJ [p. 126:17-24; 127:1]; how many healthcare grievances are filed annually at SRJ [p. 129:1-11]; who other than the HSA reviews medical grievances at SRJ [p. 129:15-20]; if Dr. Rashid reviews medical grievances at SRJ [p. 129:21-24]; who is involved in responding to healthcare grievances at SRJ [p. 131:1-23]; if there are scheduled preventative screenings at SRJ

[p. 138:5-9]; how many preventative screenings are performed at SRJ every year [p. 138:10-13]; if there is a correctional officer health training program at SRJ [p. 142:6-16; 143:3-13]; how often correctional officer health training occurs at SRJ [p. 143:14-24; 144:1-4]; if new correctional officers at SRJ receive healthcare training [p. 144:13-24; 145:1-9]; if monthly missed appointment reports are generated at SRJ [p. 159:4-16]; if Dr. Rashid reviews all inmate screenings within 14 days [p. 168:8-18]; who performs initial health assessments at SRJ [p. 170:20-24; 171:1-11]; if inmates with acute mental health issues are transferred to outside facilities [p. 177:8-18]; if there is a dentist at SRJ [p. 178:21-24; 179:1-13]; what dentist provides training to health staff at SRJ [p. 181:13-22]; if there is a nurse at SRJ who has been there for more than 10 years [p. 192:20-24; 193:1-4]; who the most experienced health care professional is at SRJ [p. 193:19-24; 194:1-9]; if there is a face-to-face follow up to each daily healthcare request at SRJ [p. 194:23-24; 195:1-24; 196:1]; if Dr. Rashid reviews all nursing protocols [p. 202:13-24; 203:1-6]; if Dr. Rashid reviews clinical protocols annually [p. 220:18-24; 221:1-3]; and how often someone from Wexford's mental health subcontractor, PsiMed, is present at SRJ [p. 225:4-9].

Likewise, Ms. Stone testified that she is "not sure": if NCCHC Standards were addressed during Dr. Rashid's Wexford orientation [p. 26:8-9]; whether on-site medical directors, like Dr. Rashid, have monthly training [p. 27:1-2]; how often Dr. Rashid's is physically present at SRJ [p. 28:17-21]; how long SRJ went without a director of nursing [p. 32:8-11]; whether Dr. Rashid complained to other Wexford administrators about medical understaffing [p. 57:8-16]; when the last time SRJ was NCCHC accredited [p. 73:13-20]; what the responsible health authority's schedule is at SRJ [p. 87:6-23]; if anyone from Wexford has ever talked with Dr. Rashid about his inability to complete his clinical and administrative responsibilities at SRJ [p. 101:10-16]; if Dr. Rashid reviews the minutes/summaries of quarterly administrative meetings [p. 109:8-12]; if

policies and procedures are reviewed by medical staff when changed [p. 117:1-13]; if Dr. Rashid is involved in a continuous quality improvement program at SRJ [p. 118:10-24; 119:1-7]; if all inmate screenings are reviewed within 14 days [p. 166:21-24; 167:1-4]; if Dr. Rashid is involved in initial health assessments at SRJ [p. 169:4-15]; if positive mental health screenings have follow-up evaluations within 30 days [p. 176:1-21]; if inmates at SRJ receive an oral health examination after 12 months [p. 183:15-24; 184:1-5]; who reviews and prioritizes daily healthcare requests at SRJ [p. 187:6-10]; and if nurses are reviewed annually at SRJ [p. 205:10-20].

These deficiencies in Ms. Stone's testimony, as the corporate representative of Wexford, are inexcusable. Upon providing a deficient representative, Wexford had a duty to remedy this issue. It has not.

On July 26, 2023, counsel for Plaintiffs had a telephone call with counsel for Wexford to address the deficiencies in Wexford's corporate representative's deposition testimony. Before hearing counsel's concerns, or seeing Plaintiffs' good-faith letter, counsel for Wexford stated that he would "object" to whatever issues Plaintiffs' raise. The following day, on July 27, 2023, counsel for Plaintiffs sent correspondence to counsel for Wexford detailing the deficiencies in the testimony provided by Wexford's corporate representative. *See* Exhibit 2. No resolution has been reached. Accordingly, the entire array of sanctions provided for under Rule 37 are available to the Court.

Plaintiffs respectfully request that this Court enter an order assessing sanctions under Rule 30 and under Rule 27 including, but not limited to: (1) finding that the deficient areas of Ms. Stone's testimony are established in favor of Plaintiffs; (2) preventing Wexford from introducing evidence in its favor with regard to the deficient areas of Ms. Stone's testimony; (3) awarding costs and fees for bringing this motion; (4) awarding costs and fees for the deposition of Ms. Stone, the

utility of which was limited due to Ms. Stone's lack of preparation; and (5) for the full array of sanctions provided for under Rule 30 and 37 of the *Federal Rules of Civil Procedure*, up to and including default.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Plaintiffs respectfully request that the Court enter an Order sanctioning Wexford for producing an inadequately prepared corporate representative in response to their 30(b)(6) Deposition Notice.  Plaintiffs further request such other and further relief as this Court deems just and proper.

**MICHAEL D. ROSE, on his own behalf and on behalf of all those similarly situated,**

**By Counsel**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Amanda Taylor (WVSB No. 11635)
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com
mandy@newtaylorlaw.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that a true and correct copy of the foregoing *MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT WEXFORD HEALTH SOURCES, INC.* was filed with the clerk on August 9, 2023, via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)