

WEST VIRGINIA
office of
technology

_(signature)_
WV Office of Technology
**Chief Information Officer**
**Title:**
11/08/2021
**Date:**

_(signature)_
Department of Homeland Security
_Cabinet Secretary_
**Title:**
11/8/21
**Date:**

**PLAINTIFF'S EXHIBIT**

CASE NO. 5:22-cv-405

EXHIBIT NO. 1

## 1.    INTRODUCTION

The purpose of this Memorandum of Understanding is to establish a formal agreement between the client, the Department of Homeland Security and the West Virginia Office of Technology (WVOT).

This document defines the standard technology products and services that the WVOT provides to its clients, as well as outlining the framework for mutual collaboration.

Additional topics addressed in this agreement include:

- defining services provided and supported by the WVOT,

- organizing and documenting the roles and responsibilities established to deliver services, and

- defining service objectives.

Any and all Agency-specific activities, products or services that are outside the scope of this agreement will be documented in Section 7 of this agreement.

## 2.    AUTHORITY

Pursuant to West Virginia Code Article 6 Chapter 5A, the West Virginia Office of Technology is responsible for the state's technical infrastructure and providing quality technology services.

## 3.    DEFINITIONS

"Agency" means the West Virginia Department of Homeland Security and the divisions organized under the West Virginia Department of Homeland Security and identified on Appendix A.

"MOU" stands for the Memorandum of Understanding

"IRM or Intergovernmental Relationship Manager" is an individual assigned to an Agency as an advocate within the WVOT to ensure the Agency's technical requirements are thoroughly understood, documented, prioritized and achieved.

## 4.    TERMS

The WVOT and the Agency agree to the contract expectations and working assumptions listed below. These expectations and assumptions are not listed in any order of priority.

2

## 4.1 PERIOD OF AGREEMENT

This MOU is effective October 1, 2021 through June 30, 2023 and may be renewed by the parties for additional terms as necessary.

## 4.2.   MODIFICATION

Either party may review and suggest modification to this Agreement at any time. Any modification shall be in writing and signed by an authorized representative of each party.

## 4.3.   COMPLIANCE WITH OTHER POLICIES AND PROCEDURES

This MOU assumes that the Agency is following all applicable local, state, and federal statutes, laws, and regulations, including but not limited to all policies issued by the Chief Technology Officer (CTO) of the WVOT. Likewise, WVOT will follow policies and procedures established by the Agency. The Agency's policies and procedures will supersede non-Agency policies and procedures. WVOT may contact the Agency head to resolve conflicts regarding policies and procedures.

## 4.4.   SERVICE CONSTRAINTS

4.4.1. Natural Disasters - Increases in workload, such as backlogs due to power outages, may result in temporary reduction of normal service delivery. The WVOT will make every effort to provide support to those sites designated as critical sites by the Department.

4.4.2. Conformance Requirements - Changes in state policy or governing regulations (i.e. legislative rules, federal mandates, or IRS requirements) may alter procedures and service delivery timeframes.

4.4.3. Personnel and Other Resources – Product and material availability, required subcontractors, and/or suppliers, carriers and third-party service vendors that must be procured following the state's purchasing process may hinder or delay service predictions.

## 4.5.   RATES AND FEES

The WVOT is a special revenue agency that relies on its clients' prompt payment. All WVOT services have the potential of including direct labor, contracts, hardware, software, and/or other direct and indirect costs as required by the WVOT to provide technology service delivery.

The expectations for all billing methodologies are based on the following guiding principles:

3

Compliance requirements related to the state's overall IT strategy must be met. Examples include security policies, contract agreements, federal and state regulations and software licenses.

Any current hardware and software maintenance contracts the Agency has directly with vendors will continue to be paid by the Agency.

Agencies will be charged on a per unit per month basis for core services, which include email management, security services and tech support. Other products and services are provided on a fee for service basis. Specific WVOT products and services are outlined in the current WVOT Service Rate Catalog:

https://technology.wv.gov/SiteCollectionDocuments/FY2020%20Rates%20Catalog.pdf

Rates and fees for those products and services are set annually and published in the WVOT Service Rate Catalog. The WVOT will notify the Agency before the changed rates are reflected in billing.

## 4.6.   INVOICING

4.6.1. The WVOT utilizes the Internal Service Fund financial model, in which the WVOT recovers the costs of the service by invoicing the client for services provided.

The WVOT issues monthly billing statements based upon the rate structure outlined in the WVOT Service Rate Catalog. Invoices may reference specific account numbers of the agency and divisions within the agency, as requested by the agency or division. The summary page serves as the invoice to allow Inter-Governmental Transfers (IGT), which will be utilized by the Agency. The Agency must submit in writing any billing inquiries or requests for billing adjustment to the WVOT. With notice to the WVOT, the Agency may withhold payment of the disputed charges until the issue is resolved, but the Agency must pay the amount not in dispute when due. Invoices should be paid under the 3214 object code. Payment is due within 30 days of the invoice issue date.

4.6.2. Disputed Charges Process:

For any amounts in dispute agencies must complete the Spending Unit Dispute Form and email it to ot.billing@wv .gov within 30 days of the date of the invoice. The form is available in the forms section of WVOT's website:

http://www.technology.wv.gov/ProductsAndServices/Pages/DownloadableForms.aspx

## 4.7.   CRITICALITY

4

Critical site designation requires the agency to complete a criticality assessment resulting in the justification for critical site designation with 24X7 support. Critical site designation may invoke the need for a cyber risk assessment to determine operational impact cyber risks related to technology, people, and processes. The agency is required to validate all previously-designated critical sites annually. WVOT may require a reassessment at its own discretion. The critical site designation, if applicable, may be attached as a separate appendix to this agreement and listed in Section 7.1.

## 4.8. TRANSFER OF SERVICES OR EMPLOYEES

In the event Agency employees that perform technology services are transferred to the WVOT after approval by the State Personnel Board of an agreement between the Agency and WVOT, the transfer is considered permanent, and not subject to annual review of responsibilities of the parties established by this MOU.

## 5. WVOT RESPONSIBILITIES

### 5.1. In support of the MOU the WVOT will:

5.1.1. Assign an Intergovernmental Relationship Manager (IRM) to each Agency and division identified in Appendix A. In this role, the IRM will act as the advocate and Agency subject matter expert to facilitate moving technology forward in each Agency. The IRM will work with the Agency to identify, address, document, and communicate Agency requirements and expectations and effectively build relationships between the WVOT and the Agency. An IRM maintains a proactive relationship, staying knowledgeable of the Agency's technological needs in order to help both the Agency and WVOT forecast long-term requirements and prioritize current work, with regards to multiple, concurrent projects. Through regular contact with the Agency's Signature Authority or designee, the IRM is expected to facilitate project initiation, and work with the Agency to prioritize current work, especially in the case of multiple, concurrent projects. These meetings will be arranged between the IRM and Agency Point of Contact upon agreement and shall become "standing, scheduled meetings" subject to change and rescheduling only by agreement of the parties.

5.1.2. Make concerted efforts to assure that the Agency's equipment and data are properly managed and secured by the WVOT. As such, the WVOT stipulates that WVOT employees and WVOT-managed contractors supporting the Agency's operations and projects have undergone a background check, completed Security and Privacy Training, adhere to WVOT Security policies, and have          signed the West Virginia Executive Branch Confidentiality Agreement:

https://privacy.wv.gov/SiteCollectionDocuments/Privacy%20Policies/1c%20Confi dentiality%20Agreement%20Document.pdf)

If additional Agency specific confidentiality agreements are required, the Agency will provide the WVOT with those confidentiality agreements and they shall be executed

5

and returned by WVOT employees and officers prior to the provision of services under this agreement.

5.1.3. WVOT employees and its contractors will sign Agency Confidentiality Agreements and attend all Agency required training before accessing data or providing services for the Agency. Additional training to support Agency-specific systems and/or compliance with external regulations or standards will be provided by the Agency.

5.1.4. Provide clients with a minimum 72-hour notice, when possible, of maintenance and enhancement work that will impact application and system availability. Notices will be provided to the Agency designated Point of Contact (Appendix A) by email distributions. If maintenance and enhancement will severely impact the Agency's business, the WVOT will work with the Agency to reschedule maintenance, when possible. The WVOT will not schedule maintenance or enhancement work during periods when the Agency has given advance notice of necessary system availability, when possible.

5.1.5. Publish the WVOT Service Rate Catalog annually to identify the products and services offered by the WVOT and the correlating rates. The WVOT will notify each Cabinet Secretary, as well as posting the new catalog to the WVOT website prior to rate changes being reflected on invoices.

5.2.    The WVOT is not obligated to provide services or support for applications, software or hardware not included in outlined WVOT services of the Rates Catalog or for applications, software or hardware that WVOT is not currently supporting.

## 6.    AGENCY RESPONSIBILITIES

In support of the MOU, the Agency will:

6.1.    Designate an Agency Point of Contact and Division-level Points of Contact, if applicable. Points of Contact must be able to accurately represent the Agency's or Division's current and future priorities and strategic priorities. The Point of Contact will meet with the WVOT designated IRM on a regular basis to collaborate on ways technology services offered can help the Agency meet its business and strategic needs. The contact information for each of these individuals will be provided to the WVOT, and shall include name, title, address, telephone number, and email address (Appendix A). The Point of Contact provides essential support to facilitate seamless, collaborative efforts between the WVOT and the Agency.  Specifically, the Point of Contact is responsible for:

6.1.1. Notifying Agency users of WVOT activities such as system enhancements/updates, system maintenance and monthly updates.

6

6.1.2. Authorizing Agency users' system access, computer equipment, or network accounts.

6.1.3. Notifying WVOT Network Accounts Management (naf@wv.gov or www.naf.wv.gov) or the Service Desk immediately when the Agency needs user access removed to ensure the security and integrity of the state systems.

6.1.4. Discussing any proposed projects requiring information technology services with the IRM in the preliminary planning stages, ensuring required requests are made (i.e project concept requests, CTO requests, etc.)

6.2.    Provide utilities, data connectivity, rent, floor space, furniture, and ancillary supplies for WVOT employees housed in any of the Agency's locations.

6.3.    Any employee training that is required by the Agency and outside of the basic scope provided by the WVOT such as Agency or business-specific knowledge, skills, and abilities (i.e. IRS 1075 requirements, HIPAA requirements, OSHA training), will be provided or arranged for by the Agency.

6.4.    Provide the WVOT with advanced notice, in writing or in accordance with published procedures, for initiatives, activities, and projects, directly and indirectly related to technology and/or enterprise technology services.  This can include, but not limited to site relocation/renovations, technology acquisitions/installations, technology updates/upgrades.  To enable proper resource allocations and management, WVOT stipulates the following notification requirements:

6.4.1. The minimum notification requirement is six-months, unless otherwise outlined.  WVOT reserves the right to require written justification and signature authority escalation notification inside of six months.

6.4.2. Some WVOT services, such as application development or specialized customization, may require longer timeframes.  Agencies are encouraged to keep an open dialogue with WVOT concerning future planning.

6.4.3. Any initiative, activity, or project not reported to the WVOT within the timeframe will not be subject to the same service commitments.

6.5. In situations where the Agency asks the WVOT to initiate contact with a third-party vendor, the WVOT must have written, signed authorization from an expenditure authoritative Agency representative. The authorization must be received before the WVOT can contact the vendor. Unless otherwise negotiated in advance, the Agency is responsible for all vendor charges.

6.6.    The Agency shall provide the WVOT with all contact information and relevant physical access (subject to Agency security and safeguarding requirements)

and information for any Agency or Agency-contracted software or hardware that the WVOT supports.

6.7. The Agency understands that all hardware, software, applications and operating systems will be current or standard versions that are eligible for warranty, support, or maintenance by the manufacture or licensing authority when possible. The Agency shall keep application software up to date with current platforms. The WVOT is authorized by statute to set technology standards for the state. If an agency requires higher standards, requests must be approved in advance by the CTO, in light of any associated support considerations.

## 7. PRODUCTS AND SERVICES PROVIDED

Technology products and services provided are described in the annual Rates Catalog available at:

https://technology.wv.gov/ProductsAndServices/Pages/RatesCatalog.aspx.

Should additional or specialized services or products, those are listed below and provided for in attached appendices. Unless otherwise specified in an attached appendix, additional or specialized services or products are subject to the same delivery and payment terms as those identified in the rates catalog, and in this MOU. The Agency may utilize any and all appropriate products and services identified in the Rates Catalog.

7.1. Additional services appendices:

    A.    Appendix A – Agency Points of Contact
    B.    Appendix B – Data Management Appendix
    C.    Appendix C – Critical Site Designation
    D.    Appendix D – Technical Services Agreement – Emergency Management Division
    E.    Appendix E - Mock Riot Support

# APPENDIX A

**Agency Point of Contact:**

Name/title:   Stephanie Tiller, Executive Assistant
Email: stephanie.r.tiller@wv.gov
Phone: 304-558-2930
Address: 1900 Kanawha Blvd., East Building 1, Room W-400, Charleston, WV 25305

**Division-level Points of Contact:**

**Division of Administrative Services**
Name/title:   Larry McDonnell, Senior Procurement Specialist
Email: larry.mcdonnell@wv.gov
Phone: 304-558-2350
Address: 1201 Greenbrier St, Charleston, WV 25311

**Division of Administrative Services/Justice and Community Services**
Name/title:   Jeff Estep, Operations Manager
Email: jeff.d.estep@wv.gov
Phone: 304-558-8814
Address: 1124 Smith Street,Charleston, WV

**Division of Corrections and Rehabilitation**
Name/title:   Brad Douglas, DCR Chief of Staff
Email: brad.t.douglas@wv.gov
Phone: 304-588-2036
Address: 1409 Greenbrier St., Charleston, WV 25311

**Division of Emergency Management**
Name/title: G.E. McCabe, Deputy Director of Logistics
Email: GE.McCabe@wv.gov
Phone: 304-414-4655
Address: 2403 Fairlaw Ave., Dunbar, WV 25064

**Fire Marshal**
Name/title: Kenneth E. Tyree, Jr., State Fire Marshal
Email: kenneth.e.tyree@wv.gov
Phone: 304-558-2191 Ext 53206
Address: 1207 Quarrier Street, Second Floor, Charleston, WV 25301

**Fusion Center**
Name/title: Steven Patterson, Deputy Director
Email: steven.d.patterson@wv.gov
Phone: 304-558-4831

9

Address: 1700 MacCorkle Ave., SE, Charleston, WV 25314

**Parole Board**
Name/title:    Brittany Franklin, Executive Secretary
Email: brittany.d.franklin@wv.gov
Phone: 304-558-6366
Address: 1356 Hansford St.,Suite B, Charleston, WV 25301

**APPENDIX B**
**DATA MANAGEMENT**

This Data Management Agreement between the West Virginia Office of Technology ("WVOT") and the Department of Homeland Security ("Agency") outlines the duties and responsibilities of the parties in data management related to data management.

Agency Ownership of Data

The Agency is the owner of data created by or originating with an Agency, data transferred to the Agency from a third party, and all data that is the output of computer processing or other electronic manipulation of any data that was created by or in any way originated with the Agency, whether such data or output is stored on the Agency's hardware, WVOT's hardware or exists in any system owned, maintained or otherwise controlled by either the Agency or by WVOT. Only the Agency may authorize any release thereof. The WVOT may hold or have access to data maintained on behalf of the Agency and its agencies.

WVOT shall not access Agency data, except (1) in response to service or technical issues, (2) in providing services to the Agency, or (3) at the Agency's written request.

Agency data includes data associated with employee accounts, such as data stored in an employee cloud drive, an employee's email account, or any data associated or accessible by an employee's account. Agencies may inspect or review data associated with an employee's personal drive or email account at any time.

Request for Litigation Holds, Discovery or Information

Should the Agency receive a request for a legal hold of data as a result of pending or expected litigation, the agency must follow the process prescribed by WVOT to secure the data at issue

Should the Agency receive a request for information that is held or accessible by the WVOT, the agency must follow the process prescribed by WVOT to provide authorization for the information to be extracted, compiled or released.

It is the responsibility of the Agency to determine if the agency-owned data requested contains sensitive information, such as personally identifiable information (PII) that may be protected by federal and state privacy laws, if the information would be exempt from disclosure otherwise, or is outside the scope of the request. The WVOT

1

has no duty to classify the data contained in a request or make determinations on whether it should be disclosed as a result of a request under FOIA, pursuant to discovery or otherwise.

Signed:

_____

Department of Homeland Security

Cabinet Secretary

**Title**

11/2/21

**Date**

2

## APPENDIX C

This agreement between the West Virginia Office of Technology ("WVOT") and the Department of Homeland Security ("Department") outlines the duties and responsibilities of the parties related to Critical Site/Infrastructure ("Critical Site") designation requests and services as described in Section 4.7 of the MOU.

This agreement relates to sites that because of their nature, are 24-hours-per-day, 7-days-per-week, 365-days-per-year sites. It is not intended to encompass sites that may temporarily be designated as a critical site as a result of a declared State of Emergency. The WVOT must be made aware by Department leadership of these temporary critical sites immediately to provide adequate support of those sites or operations.

It is the responsibility of the Department to provide WVOT with the sites that should be designated Critical Sites, including any applications, infrastructure, programs or systems that support critical operations.  Requests for services and support not related to critical operations of the facility will be handled during normal business hours.

Normal support will be provided by WVOT to the Critical Site during regular business hours. Critical Site services and support will be billed to the Department at the regular rate for those services published in the WVOT Service Rates Catalog regardless of whether the services are provided during normal business hours or outside of normal business hours.

Name/Location of Critical Site/Infrastructure
(1) WV Intelligence Fusion Center
   1900 Kanawha Boulevard, Building 1, West Wing, Suite W-400, Charleston, WV 25305

(2) WV Division of Emergency Management
   2403 Fairlawn Avenue, Dunbar, WV 25604

(3) WV Division of Justice & Community Services
   1124 Smith Street, Suite 3100, Charleston, WV 25301-1323

(4) Division of Corrections and Rehabilitation
   1409 Greenbrier Street, Charleston, WV 25311
   Prisons and Jails
      ● Central Regional Jail and Correctional Facility
         ▪ 1255 Dyer Hill Road, Sutton, WV 26601
      ● Denmar Correctional Center and Jail
         ▪ 4319 Denmar Road, Hillsboro, WV 24946
      ● Eastern Regional Jail and Corrections Facility
         ▪ 94 Grapevine Road, Martinsburg, WV 25405

1

- Huttonsville Correctional Center and Jail/Huttonsville Work Camp
  - P.O. Box 1, Huttonsville, WV 26273
- Lakin Correctional Center and Jail
  - 11264 Ohio River Road, West Columbia, WV 25287
- Martinsburg Correctional Center and Jail
  - 38 Grapevine Road, Martinsburg, WV 25401
- Stevens Correctional Center/McDowell County Corrections
  - 795 Virginia Avenue, Welch, WV 24801
- Mount Olive Correctional Complex and Jail/Slayton Work Camp
  - 1 Mountainside Way, Mt. Olive, WV 25185
- North Central Regional Jail and Correctional Facility
  - 1 Lois Lane, Greenwood, WV 26415
- Northern Correctional Facility
  - 112 Northern Regional Correction Drive, Moundsville, WV 26041
- Northern Regional Jail
  - 112 Northern Regional Correction Drive, Moundsville, WV 26401
- Ohio County Correctional Center and Jail
  - 1501 Eoff Street, Wheeling, WV 26003
- Potomac Highlands Regional Jail and Correctional Facility
  - 355 Dolan Drive, Augusta, WV 26704
- Pruntytown Correctional Center and Jail
  - 2006 Trap Springs Road, Grafton, WV 26354
- Saint Marys Correctional Center and Jail
  - 2880 N. Pleasants Highway, St. Marys, WV 26170
- Salem Correctional Center and Jail
  - 7 Industrial Blvd., Industrial, WV 26426
- South Central Regional Jail and Correctional Facility
  - 1001 Centre Way, Charleston, WV 25309
- Southern Regional Jail and Correctional Facility
  - 1200 Airport Road, Beaver, WV 25813
- Southwestern Regional Jail and Correctional Facility
  - Earl Ray Tomblin Industrial Park, 1300 Gaston Caperton Dr., Holden, WV 25625
- Tygart Valley Regional Jail and Correctional Facility
  - 400 Abbey Road, Belington, WV 26250
- Western Regional Jail and Correctional Facility
  - One O'Hanlon Place, Barboursville, WV 25504

Community Corrections
- Anthony Correctional Center

2

- ▫ 313 Anthony Center Drive, White Sulphur Springs, WV 24986
- ⊕ Beckley Correctional Center and Jail
  - ▫ 111 S. Eisenhower Drive, Beckley, WV 25801
- ⊕ Charleston Correctional Center and Jail
  - ▫ 1356 Hansford St., Charleston, WV 25301
- ⊕ Parkersburg Correctional Center and Jail
  - ▫ 225 Holiday Hills Drive, Parkersburg, WV 26104

Juvenile Facilities and Reporting Centers
- ⊕ Donald R. Kuhn Juvenile Center
  - ▫ One Lory Place, Julian, WV 25529
- ⊕ Gene Spadaro Juvenile Center
  - ▫ 106 Martin Drive, Mt. Hope, WV 25880
- ⊕ J.M. "Chick" Buckbee Juvenile Center
  - ▫ 144 Jerry Lane, Augusta, WV 26704
- ⊕ Kenneth "Honey" Rubenstein Juvenile Center
  - ▫ 141 Forestry Camp Road, Davis, WV 26260
- ⊕ Lorrie Yeager Jr. Juvenile Center
  - ▫ 907 Mission Drive, Parkersburg, WV 26101
- ⊕ Robert L. Shell Juvenile Diagnostic and Intake Center
  - ▫ Two O' Hanlon Place Barboursville, WV 25504
- ⊕ Ronald C. Mulholland Juvenile Center
  - ▫ P.O. Box 6041, Wheeling, WV 26003
- ⊕ Sam Perdue Juvenile Center
  - ▫ 843 Shelter Road, Princeton, WV 24739
- ⊕ James H. "Tiger" Morton Juvenile Center
  - ▫ 60 Manfred Holland Way, Dunbar, WV 25064
- ⊕ Vicki V. Douglas Juvenile Center
  - ▫ 900 Emmett Rousch Drive, Martinsburg, WV 25401

Youth Reporting Centers
- ⊕ Boone Logan County Youth Reporting Center
  - ▫ 467 Main Street, Suite 401, Madison, WV 25130
- ⊕ Brooke/Hancock County Youth Reporting Center
  - ▫ 3549 Main Street, Weirton, WV 26062
- ⊕ Cabell County
  - ▫ 2850 5th Avenue, Huntington, WV 25702
- ⊕ Fayette County Youth Reporting Center
  - ▫ 140 School Street, Oak Hills, WV 25901
- ⊕ Greenbrier County Youth Reporting Center

- 316 Maplewood Avenue, Suite 4, Lewisburg, WV 25901
- Harrison County Youth Reporting Center
  - 408 EB Saunders Way, Clarksburg, WV 26301
- Jefferson County Youth Reporting Center
  - 1186 North Mildred Street, Suite 101 and 102, Ranson, WV 25438
- Kanawha County Youth Reporting Center
  - 1200 Quarrier St, Charleston, WV 25302
- Lincoln County Youth Reporting Center
  - 81 Lincoln Panther Way, Hamlin, WV 25523
- Marion County Youth Reporting Center
  - 1385 Locust Avenue, Fairmont, WV 26554
- Mason County Youth Reporting Center
  - 2 Walden Roush Way, Point Pleasant, WV 25550
- Mercer County Youth Reporting Center
  - 901 Shelter Road, Princeton, WV 24740
- Putnam County Youth Reporting Center
  - 3266 Winfield Road, Winfield, WV 25213
- Raleigh County Youth Reporting Center
  - 113 Randolph Street, Beckley, WV 25801
- STARS Berkeley County Youth Reporting Center
  - 1014 South Raleigh Street, Martinsburg, WV 25401
- Wetzel Tyler County Youth Reporting Center
  - 450 South 1st Avenue, Paden City, WV 26155
- Wood County Youth Reporting Center
  - 1400 12th Street, Vienna, WV 26105

Parole Services Offices
- Beckley Parole Office
  - 3225 Robert C Byrd Dr., Beckley, WV 25801
- Charleston Parole Office
  - 1339 Plaza East, Charleston, WV 25301
- Clarksburg Parole Office
  - 215 West Main St, Clarksburg, WV 26301
- Elkins Parole Office
  - 1513 Harrison Ave. Unit 27, Elkins, WV 26241
- Huntington Parole Office
  - 801 Madison Ave Room 200, Huntington, WV 25704
- Keyser Parole Office
  - 102 North Main St, Keyser, WV 26726

4

- Lewisburg
  - 765 South Jefferson St, Suite C, Lewisburg, WV 24901
- Logan Parole Office
  - 1103 George Kostas Dr, Suite 200, Logan, WV 25601
- Martinsburg
  - 1520 Winchester Ave, Martinsburg, WV 25405
- Parkersburg
  - 225 Holiday Hills Dr, Suite 1, Parkersburg, WV 26104
- Princeton Parole Office
  - 159 Davis St, Princeton, WV 24739
- Welch Parole Office
  - 110 Park Ave, Suite 111, Welch, WV 24801
- Wheeling Parole Office
  - 1025 Main St – 414 Mull Center, Wheeling, WV 26003

(5) West Virginia Parole Board
     1356 Hansford Street, Suite B, Charleston, WV 25301

<u>Applications/Infrastructure/Programs/Systems that support critical operations</u>

**APPENDIX D**

This Technology Services Agreement between the West Virginia Office of Technology ("WVOT") and the Department of Homeland Security Emergency Management Division ("Division") outlines the duties and responsibilities of the parties related to additional WVOT technical support personnel assigned to the Emergency Management Division. The term of the agreement is July 1, 2021 through July 1, 2022.

Based upon the analysis of service by the original Technology Services agreement dated January 20, 2021, WVOT has made a determination that the Emergency Management Division does not require a fully-dedicated onsite support technician.

In Support of this Agreement, WVOT agrees to:

1. The technician will continue to be physically located in the Division's primary location, the Dunbar Office. The technician will begin each day onsite at that location and ensure there are no major issues before planning and working incidents for the Kanawha Field Support group. The technician may leave the site to work on other WVOT projects as required.

2. Where possible, any change in the assigned technician will be discussed with EMD and the new technician will be cross trained to ensure no loss in service.

3. The technician is subject to WVOT human resources policies and will be managed by WVOT staff.

4. WVOT will not charge any additional support rates for the technician placed at the Division's location. WVOT will continue to charge the regular technical support rate that all executive agencies pay for WVOT support.

5. In any instance where the embedded technician is not available, a technician with the closest skill set will be dispatched to the location in accordance with support provided through the MOU.

6. In the event any technology issues arise at the Division's satellite offices, WVOT will coordinate with regional technicians to handle any issues.

7. During normal operations, onsite technical support through the assigned technician or otherwise will be available during normal business hours. The Division shall make requests for service by either emailing or calling the Service Desk. If after hours support is required, the Division will utilize the service desk by calling or emailing for entry of incidents. Incidents can be entered by the technician on occasions where the technician is onsite at that time.

1

8. In emergency situations or for training/exercises, the Division may request a dedicated technician be onsite to support or assist with technical work. The Division will provide WVOT advanced notification to support training/exercise events requiring dedicated support. If other considerations are needed, the Division may contact its Intergovernmental Relationship Manager (IRM) to discuss additional support as needed.

9. During the time the Division is mobilized and moved to a 24X7 stance, all incidents for the Division may be entered by a technician and escalated by the IRM or Director of Client Services.

10. WVOT will provide administrative rights for purposes of providing on-site support to Division technology employees who have received WVOT-provided training to obtain administrative rights. The Division will provide the names of the designated technology staff to receive the training.

11. The Division will ensure that any Division employees who have been granted administrative rights abide by all WVOT policies and procedures.

12. Former Division technicians will have the proper role-based access to work on EMD-unique, operational hardware and software.

In support of the Agreement, the Division will:

13. The Division must provide workspace and necessary supplies or services such as connectivity to WVOT employees assigned to the Division's location.

The Parties Agree to:

14. This agreement will be renewed annually and may be modified at the commencement of the renewal.

15. At any time, the parties can reevaluate or modify this agreement at the request of either party.

16. At any time during this agreement, both parties reserve the right to terminate the agreement with 30 days' notice.

AGREED TO BY:

_____

**WV Office of Technology**

**Chief Information Officer**
_____

**Title:**

11/08/2021
_____

**Date:**

_____

**Emergency Management Division**

Director
_____

**Title:**

11/05/2021
_____

**Date:**

3

APPENDIX E
SPECIAL SUPPORT

This Technology Services Agreement between the West Virginia Office of Technology ("WVOT") and the Department of Homeland Security Division of Corrections and Rehabilitation ("Division") outlines the duties and responsibilities of the parties related to additional WVOT technical resources in support of the annual mock riot training exercise ("Mock Riot") organized and hosted by the Division.

In support of the Agreement, WVOT will:

1. The WVOT field personnel will assist in the initial walk-through of the facility at least one month prior to the Mock Riot to assess all hardware and software requirements for both the private and public network and infrastructure.

2. WVOT will provide support of any new installations, technical support and maintenance of the network infrastructure as well as the hardware and software used for the facility.

3. During the Mock Riot, WVOT will provide onsite support such as running and terminating cable, assisting with conference room and training room technology set up, assisting instructors with presentations, assisting with registration software and hardware issues.

4. WVOT is responsible for daily back up of the internal camera system recordings data.

5. WVOT will provide all services for a flat rate of $9,360. WVOT will provide the Division with an invoice no more than 30 days after the close of the Mock Riot.

In support of the Agreement, the Division will:

6. The Division is responsible for the installation and maintenance of internal camera system within the facility, including DVRs used to monitor the Mock Riot.

1

AGREED TO BY:

WV Office of Technology
**Chief Information Officer**

**Title:**

11/08/2021

**Date:**

Division of Corrections and Rehabilitation

Commissioner

**Title:**

11-8-21

**Date:**

2