IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**MICHAEL D. ROSE, *ET AL*.,**

        **Plaintiffs,**

vs.                          Civil Action No. 5:22-cv-00405

**JEFF S. SANDY, individually and
in his official capacity as the Cabinet Secretary of the
West Virginia Department of Homeland Security, *ET AL*.,**

        **Defendants.**

**ORDER**

On October 23, 2023, the parties came before the undersigned for hearing regarding the ***Plaintiffs' Expedited Motion to Compel Appearance and Testimony of Governor James C. Justice and Brian Abraham at Depositions and to Produce Documents*** (ECF No. 717) filed on October 16, 2023, and the ***Motion to Quash by James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor*** (ECF No. 720) filed on October 17, 2023.[1]

For the reasons stated *infra*, the Court hereby **GRANTS in PART and DENIES in PART** both ***Motions***:

**ARGUMENTS**

The Plaintiffs contend that both the Governor and his Chief of Staff must be compelled to sit for their depositions and to produce no less than five days prior to their depositions the materials requested in the subpoenas duces tecum (See ECF Nos. 629, 630, 632-1, 632-2). The reason is

---

[1] The undersigned hosted an informal TEAMS meeting on these Motions on October 18, 2023 because the depositions are scheduled for Tuesday, October 24, 2023. The parties were unable to resolve their differences, accordingly, the undersigned scheduled a hearing on the matter.

1

simple: Defendant Jeff Sandy has previously testified that for several years his department requested of the Governor's office funding to address pervasive overcrowding, pervasive understaffing, over two hundred million dollars in deferred maintenance. These issues go to the heart of the Plaintiffs' claims in this action. Additionally, Defendant Sandy also testified that the Chief of Staff tasked the Secretary of Homeland Security to personally drive to Beaver, West Virginia and investigate the situation at Southern Regional Jail (SRJ), specifically, issues concerning toilet paper, water, and mattresses.

In opposition to the Plaintiffs' motion, the Governor and his Chief of Staff, point out that they are merely interested parties in this action, are both high-ranking state government officials, and have no information that would provide value in this litigation that the Plaintiffs already possess, or could obtain from actual parties in this action. They note that the Plaintiffs seek the following from them:

1. Any and all emails in possession, custody, and/or control of this witness in accordance with the ESI search protocol attached hereto.[2]

2. Any and all text messages sent or received on your state issued cell phone in accordance with the ESI search protocol.[3]

3. All documents having in any way to do with request[s] for use of or expenditure concerning CARES Act funding as it relates to corrections in West Virginia, and specifically, Southern Regional Jail.

4. Any and all documentary evidence which causes you, as Governor [Chief of Staff], to

---

[2] During the informal conference, Counsel for the Interested Parties advised that this information had been gathered, and pending screening for privilege, will be produced to Counsel for the Plaintiffs by October 19, 2023. Counsel for the Interested Parties represented that the privilege log will be filed as well.

[3] Neither the Governor nor his Chief of Staff have a state-issued cell phone.

question the validity of Plaintiff's claims.

5. The reports of Cabinet Secretary Sandy which were required to be sent to you pursuant to Article VII section 18 of the West Virginia Constitution, including but not limited to, any information in writing under oath that you ever requested from officers of WVDMAPS/WVDHS; WVDCR/West Virginia Regional Jail Authority, relating to the condition, management, and/or expenses of, or having any way to do with [the] Southern Regional Jail, as it relates to the allegations in Plaintiffs' Complaint.

The Interested Parties further contend that the Plaintiffs' position is precarious because they are high-ranking officials of a sovereign State – there must be very compelling and extraordinary circumstances for a federal court to command their depositions without disrupting federalism. The Interested Parties oversee numerous cabinet secretaries in this State – to subject them to depositions in every case involving one of these departments or divisions poses an incredible burden upon them, and jeopardizes their ability to govern. The Interested Parties cite scores of decisions from numerous Circuits and the Supreme Court of the United States that have uniformly held that unless a party can demonstrate extraordinary circumstances, high-ranking officials cannot be compelled to sit for a deposition. The Interested Parties assert none exist here: neither of these parties are accused of any misconduct or bad faith; the information sought by the Plaintiffs, *supra*, are not necessary or essential to their claims; and the Plaintiffs have not demonstrated a need for their depositions that is not already within the record. Indeed, the Plaintiffs have the deposition transcripts from Defendants Sandy, Jividen, and Douglas about their actions surrounding CARES Act money. Moreover, there is already a public record available to the Plaintiffs regarding the decisions of the Governor's Office about the CARES Act money during the hearing before the State Senate Finance Committee on the Senate website.

The Interested Parties further argue that state sovereign immunity conferred by the 11th Amendment also affords them immunity from suit, which includes discovery. As a high-ranking member of an executive's principal staff, a government decision-maker, Chief of Staff Abraham cannot be compelled to testify about their mental process in reaching a decision absent extraordinary circumstances. Because the Plaintiffs intend to question him on his official government duties, this necessarily is an inquiry into the deliberative process of the executive, the Governor, itself.

In opposition to the Interested Parties' motion to quash, the Plaintiffs argue that the issuance of a subpoena to a state official is not prohibited by sovereign immunity under the 11th Amendment, as found by numerous district courts nationwide – it is not that the Plaintiffs seek relief against the State itself, just its officials. Additionally, the Plaintiffs contend that the Interested Parties' reliance on the deliberative process privilege conveys them a qualified privilege is inapplicable here, and the proportionality requirement is satisfied: the WVDCR Defendants in this action have consistently claimed they were unable to carry out their duties due to lack of funds caused by the inactions of the Governor and State Legislature. The Plaintiffs have to prove as part of this cause of action that the Defendants acted with deliberate indifference to the health and/or safety of the Plaintiffs. Defendants Sandy, Douglas, and Jividen have testified in depositions that they were tasked to submit a budget to the Governor's office with proposals as to how to correct the overcrowding, understaffing and deferred maintenance within the State's jail facilities. These Defendants Jividen and Sandy had meetings at the Governor's office with the Chief of Staff about these issues as well.

The Defendants' deposition testimony does not further the Plaintiffs' claim of deliberate indifference – this is why the depositions of the Interested Parties is important – this evidence

needs to be corroborated or not – and this evidence is relevant to the Plaintiffs' claims. There are outstanding questions concerning where CARES Act funding went, that can only be answered by the Interested Parties because the WVDCR Defendants could not answer, and who have contended there was no money available to them for the facilities. Further, the Plaintiffs contend there are no alternative evidence sources the shed light on the actions or inactions of the Interested Parties. The Interested Parties are not strangers to this action, either, which is underscored by the Governor's declaration on August 1, 2022 of a state of emergency as it pertains to the staffing levels at juvenile and adult detention and correctional facilities; in short, the Interested Parties are intimately aware of the concerns related to understaffing.

The Plaintiffs also point out that contrary to the Interested Parties' request for complete relief from the production of documents and their deposition testimony, this Court is unable to determine whether disclosure would harm open and frank discussion. The Plaintiffs also contend that the requirements establishing exceptional circumstances have been met in this case: the Interested Parties are the only ones with knowledge about why budget surpluses were not used to alleviate overcrowding, understaffing and deferred maintenance for the SRJ. The Plaintiffs also argue that the Interested Parties' motion is untimely – they only filed their motion close to the time to the date of return.

The Plaintiffs request this Court compelling the Interested Parties to sit for their depositions and to produce all documents responsive to the Notices for same. The Plaintiffs further will agree to limit their deposition of Brian Abraham, Chief of Staff, to three issues: the inspection of SRJ he dispatched Defendant Sandy to do on March 30, 2023; his knowledge or involvement in Defendant Jividen's dismissal; and his involvement or knowledge of ESI preservation.

**Relevant Law**

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is . . . the foundation for any request for production, regardless of the individual to whom a request is made." Cook v. Howard, 484 Fed. App'x. 802, 812 (4th Cir. 2012). This Rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." Lynn v. Monarch Recovery Management, Inc., 285 F.R.D. 350, 355 (D. Md. 2012) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 523 (D. Md. 2010)). To ensure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). "[I]t remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.' " In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation, Nos. 2:14-cv-11870, 2:14-cv-28142, 2016 WL 4411506, at *2 (S.D. W.Va. Aug. 17, 2016) (Eifert, M.J.) (quoting Amick v. Ohio Power Co., No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D. W.Va. Dec. 18, 2013)).

Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, a court is required, on motion or on its own, to limit the frequency and extent of discovery, when:

(1) the discovery sought is unreasonably cumulative or duplicative;

(2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(3) the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action; or

(4) the burden or expense of the proposed discovery outweighs its likely benefit,

considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

A "party must demonstrate exceptional circumstances justifying the deposition" of a high-ranking government official. Lederman v. New York City Dep't of Parks & Recreation, 731 F.3d 199, 203 (2d Cir. 2013) (citing United States v. Morgan, 313 U.S. 409, 422 (1941)); see also In re McCarthy, 636 Fed. Appx. 142, 143 (4th Cir. 2015); Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 211 (4th Cir. 1991); Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007); In re United States (Holder), 197 F.3d 310, 313-14 (8th Cir. 1999); In re FDIC, 58 F.3d 1055, 1060 (5th Cir. 1995); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993); Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985). "High-ranking government officials are generally shielded from depositions because they have 'greater duties and time constraints than other witnesses.'" Lederman, 731 F.3d at 203 (quoting Kessler, 985 F.2d at 512). "If courts did not limit these depositions, such officials would spend 'an inordinate amount of time tending to pending litigation'" to the impairment of their official responsibilities. Id. (quoting Bogan, 489 F.3d at 423). Accordingly, high-ranking government officials "are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." Hankins v. City of Philadelphia, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996). The doctrine applies to testimony sought from both current and former high-ranking government officials, in connection with matters both related and unrelated to their official duties. See, e.g., Moriah v. Bank of China Ltd., 72 F.Supp.3d 437, 440 (S.D.N.Y. 2014); Lederman, 731 F.3d at 204.

To establish "exceptional circumstances" are present, a party seeking to depose a non-party high-ranking government official must satisfy three conditions: (1) the party must "make an actual

showing that the [government official] 'possesses personal knowledge relevant to the litigation' "; (2) the deposition must be "essential to that party's case"; and (3) the evidence the deposition will elicit "is not available through any alternative source or less burdensome means." Brennan v. City of Philadelphia, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019) (quoting Robinson v. City of Philadelphia, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006)); see also, In re Dept. of Educ., 25 F.4th 692, 702 (9th Cir. 2022) (writ of mandamus issued to halt deposition of Secretary of Education). Courts decline to force high-ranking government officials to testify even in the face of press reports that describe conduct relevant to the violations alleged in the case. See, e.g., Moriah, 72 F.Supp.3d at 440; United States v. Wal-Mart Stores, Inc., 2002 WL 562301, at *4 (D. Md. Mar. 29, 2002); Gibson v. Carmody, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991).

"It is well established that high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.' " In re McCarthy, 636 Fed. Appx. at 143. "Only where there is a clear showing of misconduct or wrongdoing is any departure from this rule [that the judiciary may not probe the mental processes of an executive or administrative officer] permitted." Id. at 144. "[F]ederal courts have consistently held that, absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the manner and extent of his study of the record and his consultations with subordinates.' " Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 211 (4th Cir. 1991). See also, Russell v. Jones, 49 F.4th 507 (5th Cir. 2022)(State sovereign immunity bars third-party subpoenas).

## Discussion

As an initial matter, there is no dispute that: the Interested Parties, the Governor and his Chief of Staff, are high-ranking government officials; the Governor and his Chief of Staff were

involved in the decision-making process concerning the allocation of CARES Act monies; the Governor and his Chief of Staff were involved in the decision-making process concerning the allocation of monies to the SRJ (or any jail or prison under the WVDRC/WVDHS authority) for improvements to infrastructure, salaries for staff, additional staff members, etc.; and these decision-making processes fall under the deliberative and decision making privilege.[4] "The purpose of the deliberative process privilege is to encourage open and candid discussions of legal and policy matters 'within the government by insulating government employees from the chilling effect likely to occur were the process to be opened up to public scrutiny and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action.' " Crosby infra, fn4. The circumstances presented here indicate that there is very little variance with what the Plaintiffs seek from the Interested Parties from those presented in Rogers v. United States Department of Health and Human Services, 2021 WL 11747920 (D.S.C. Nov. 4, 2021).

    During the hearing, Counsel for the Interested Parties advised that they had produced responsive documents to the Plaintiffs' subpoena, subject to a privilege log that will be filed with the Court. The undersigned notes that the deposition testimonies provided by the WVDCR Defendants supported the Plaintiffs' arguments to the extent that their complaints concerning overcrowding, understaffing, and deferred maintenance for the SRJ were not rectified. While the Plaintiffs maintain that they cannot prove their claims of deliberate indifference to their complaints without the deposition testimonies of the Governor and his Chief of Staff, this Court cannot ignore

---

[4] "The deliberative process privilege, sometimes called the executive privilege, is an evidentiary privilege sometimes accorded to the government to protect documents from discovery that are involved in the government's deliberative decision-making functions." Crosby v. United State, 2009 WL 10678825, at *2 (D.S.C. Mar. 24, 2009); see also, N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 149–150 (1975).

the glaring, yet overwhelming, testimonial evidence supporting the Plaintiffs' argument that the WVDCR Defendants herein did nothing to prevent the spoliation of evidence, despite their own protocols against same.[5] This is very concerning to this Court, given that these individuals are or were state employees for the agencies vested with responsibilities or accountability for the Plaintiffs, and others similarly situated.

In sum, while the undersigned appreciates the Plaintiffs' desire to depose the Governor and his Chief of Staff regarding the failures to allocate monies for the staffing and maintenance and other concerns surrounding the conditions of the SRJ, prevailing jurisprudence does not permit that, especially where the Plaintiffs have already the fruits of that pursuit. However, given that the Interested Parties have since provided the Plaintiffs responsive documents to their subpoena duces tecum (subject to a privilege log to be filed), it would appear to the Court that the Governor and his Chief of Staff have made appropriate accommodations to the requests pursuant to the Plaintiffs' subpoena without interfering with their immunities endorsed under the prevailing jurisprudence. Accordingly, the undersigned FINDS that the ***Plaintiffs' Expedited Motion to Compel Appearance and Testimony of Governor James C. Justice and Brian Abraham at Depositions and to Produce Documents*** (ECF No. 717) is **GRANTED** to the extent that the Interested Parties, James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor, be compelled to produced responsive documentation to the Plaintiffs' subpoena duces tecum, and **DENIED** to the extent that these Interested Parties be compelled to sit for their depositions concerning queries as to how or why monies were or were not allocated to the SRJ, the dismissal of the Defendant Jividen, or knowledge regarding ESI preservation.

---

[5] This is more concerning given the recent discovery produced by the Chief of Staff to the Governor that ESI in this matter be preserved, rather than destroyed. (See ECF No. 752-1).

The ***Motion to Quash by James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor*** (ECF No. 720) is **GRANTED** to the extent that neither should be compelled to sit for deposition, but **DENIED** to the extent that they can avoid disclosing any and all documentation concerning: the dismissal of the Defendant Jividen; the dispatch of the Defendant Sandy to inspect the SRJ on March 30, 2023; and either Interested Party's involvement or knowledge of ESI preservation.

Because of the imminent discovery deadline (November 17, 2023) pursuant to the scheduling Order (ECF No. 225), and in the event that the parties intend to object to the undersigned's ruling on this particular issue, the undersigned finds that an expedited timeframe for filing objections is necessary pursuant to Rule 72(a) of the Federal Rules of Civil Procedure governing rulings on non-dispositive motions.[6] Accordingly, this ruling may be contested by filing, no later than **November 3, 2023,**[7] any objections to this Order with District Judge Frank W. Volk. If objections are filed, the District Judge will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: October 30, 2023.**



Omar J. Aboulhosn
United States Magistrate Judge

---

[6] Objections to rulings on non-dispositive motions typically are to be filed within 14 days.

[7] Responses to any objection must be filed no later than November 6, 2023, and any reply filed no later than November 8, 2023.