IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | | |
|---|---|---|
| **MICHAEL D. ROSE** and **EDWARD HARMON**, on their own behalf and on behalf of all others similarly situated, et al. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 5:22-cv-00405 (Judge Volk) |
| **JEFF S. SANDY, et at.,** | ) ) | |
| Defendants. | ) ) ) | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO OJBECTION [SIC] BY NONPARTIES GOVERNOR JAMES C. JUSTICE, II, AND BRIAN ABRAHAM, CHIEF OF STAFF TO THE GOVERNOR, IN THEIR OFFICIAL CAPACITIES, TO DISCOVERY ORDER

COME NOW Plaintiffs on their own behalf and on behalf of all other similarly situated, by counsel, and respectfully request that this Court reject the *Ojbection [sic] by Nonparties Governor James C. Justice, II, And Brian Abraham, Chief of Staff to the Governor, in their Official Capacities, to Discovery Order* ("*Objection*") [ECF 784] and in support of this request Plaintiffs hereby state as follows:

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

James C. Justice, II, Governor ("Governor Justice") and Brian Abraham, Chief of Staff ("Chief of Staff Abraham")(or collectively "Witnesses") were served with their respective *Amended Notice of Videotaped Deposition Duces Tecum* ("*Notices*") [ECF 629 and 630] at issue by electronic mail on September 15, 2023 upon their counsel. The subpoenas at issue were also served on that date. [ECF 632-1 and 632-2]. On October 6, 2023, Counsel for Governor Justice and Chief of Staff Abraham informed Plaintiffs' counsel, for the first time, that counsel intended

to move to quash the *Notices*. Plaintiffs filed an *Expedited Motion to Compel Appearance and Testimony of Governor James C. Justice and Brian Abraham at Depositions and to Produce Documents* ("*Expedited Motion*") [ECF 717] on October 6, 2023 and Governor Justice and Chief of Staff Abraham filed a *Motion to Quash by James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor* [ECF 720] on October 17, 2023, one week before the date of the depositions and one month before the close of discovery in this case. The Witnesses also filed a *Supplemental Memorandum in Further Support of Motion to Quash by James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor* ("*Supp.Memo.*") [ECF 736] on October 19, 2023 asserting a claim for sovereign immunity.

Plaintiffs filed *Plaintiffs' Response in Opposition to Motion to Quash By James C. Justice, Ii, Governor, and Brian Abraham, Chief of Staff to the Governor and Supplemental Memorandum in Further Support of Motion To Quash and Plaintiffs' Supplemental Motion to Compel Appearance and Testimony of Governor James C. Justice and Brian Abraham at Depositions and to Produce Documents* [ECF 741] on October 23, 2023.

On October 23, 2023, the Honorable Magistrate Judge Omar J. Aboulhson held a hearing regarding the *Expedited Motion* and the *Motion to Quash* and entered an *Order* [772] on the same day. The *Order* granted the *Motion to Quash* to the extent that neither Witness was to be compelled to sit for deposition, but denied the *Motion to Quash* to the extent that they can avoid disclosing any and all documentation concerning: the dismissal of the Defendant Jividen; the dispatch of the Defendant Sandy to inspect the SRJ on March 30, 2023; and either Interested Party's involvement or knowledge of ESI preservation.

The Governor and Chief of Staff filed their *Objection* [ECF 784] to the *Order* on November 3, 2023 and Plaintiffs are submitting this *Response in Opposition*.

**LAW AND ARGUMENT**

    **I.    The Discovery Order is not contrary to law because it did not analyze the motion to quash under the wrong legal standard.**

The Governor and Chief of Staff contend that the Magistrate Judge failed to "mention or apply" Rule 45, which they argue is contrary to law. This contention is incorrect. The Plaintiffs filed an Amended Notice of Videotaped Deposition Duces Tecum of James C. Justice III [ECF 629] and an Amended Notice of Videotaped Deposition Duces Tecum of Brian Abraham [ECF 630], which prompted the Witnesses to file their *Motion to Quash* [ECF 720]. Plaintiffs seek discovery from these Witnesses and "[i]n the context of discovery, 'Rule 45 adopts the standards codified in Rule 26.'" *Hall v. Putnam Cty. Comm'n*, No. 3:22-cv-00277, 2023 U.S. Dist. LEXIS 114957, at *4 (S.D. W. Va. July 5, 2023) (*quoting,* Schaaf *v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)). The scope of discovery under Rule 26 and Rule 45 are the same. *Id*. at *5 (*citing*, *HDSherer LLC v. Nat. Molecular Testing Corp*., 292 F.R.D. 305, 308, (D.S.C. 2013); *Singletary v. Sterling Transport Co.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012). "In other words, '[a]lthough Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.'" *Id*. (citing, *Cook v. Howard*, 484 Fed. Appx. 805, 812 (4th Cir. 2012); *Barber v. Sedgwick Claims Mgmt. Servs.*, No. 3:14-cv-27349, 2015 U.S. Dist. LEXIS 140860, 2015 WL 6126841, at *5 (S.D.W. Va. Oct. 16, 2015) (citing *Cook*, 484 Fed. Appx. at 812)). All discovery, whether sought from parties or nonparties, is limited by the fundamental requirements of relevance and proportionality under Rule 26(b)(1). *Virginia Dept. of Corr. v. Jordan*, 921 F.3d 180, 188-189 (4th Cir. 2019); *See also*, *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-CV-10203, 2018 U.S. Dist. LEXIS 32189, at *5 (S.D. W. Va. Feb. 28, 2018) (citation omitted) ("All permissible discovery is subject to the requirement of

proportionality."). The *Jordan* Court also stated that a court must give "special weight" to a nonparty who receives a subpoena recipient and conduct a "more 'demanding and sensitive' inquiry." *Id*. at 189 (*citing*, *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998)).

### A. The subpoenas as modified by the Discovery Order do not impose an undue burden.

The Witnesses contend that the Magistrate Judge did not conduct a proportionality analysis under Rule 45. *See*, *Objection* [ECF 784], at p.9. While the Magistrate Judge did not specifically cite Rule 45 in the *Order* [ECF 772], he did apply the exceptional circumstances test to the Plaintiffs' requests and applied the deliberative and decision making privilege. *See*, *Id*. at pp. 7-9.

The Witnesses appear to contend that the Magistrate Judge did not consider whether relevant "material is essential to the case and cannot be obtained elsewhere." *See*, *Objection* [ECF 784], at p. 7. The *Order* does address those considerations and reaches a decision favorable to the Witnesses:

> the Plaintiffs' desire to depose the Governor and his Chief of Staff regarding the failures to allocate monies for the staffing and maintenance and other concerns surrounding the conditions of the SRJ, prevailing jurisprudence does not permit that, especially where the Plaintiffs have already the fruits of that pursuit.

*See*, *Order* [ECF 772], at p. 10.

The Witnesses next contention is that the Magistrate Judge's *Order* [ECF 772] does not take into account sovereign immunity and the burdens placed upon the executive office. *See*, *Objection* [ECF 784], at p. 7-8. These arguments were addressed as follows:

> However, given that the Interested Parties have since provided the Plaintiffs responsive documents to their subpoena duces tecum (subject to a privilege log to be filed), it would appear to the Court that the Governor and his Chief of Staff have made appropriate accommodations to the requests pursuant to the Plaintiffs' subpoena without interfering with their immunities endorsed under the prevailing jurisprudence.

4

*See*, *Order* [ECF 772], at p. 10.

The Magistrate Judge appropriately determined that the Witnesses concluded that the requested documents could be provided, subject to a privilege log, without interfering with their immunities. In other words, the Witnesses set the standard and the Magistrate Judge adopted that standard. They cannot now seek a determination that they, not the Magistrate Judge, acted incorrectly. In fact, they originally requested that "the Court limit the enforcement of Plaintiffs' subpoena to require the production of only those documents that are necessary for Plaintiffs' claims and that cannot be obtained elsewhere." *See*, *Motion to Quash* [ECF 720], at p. 4.

Moreover, despite the repeated claims of privilege, the Witnesses, through counsel, offer information that could conceivably be considered to fall under the privilege protection. For example, the Witnesses state that "[t]he Governor's Office learned of certain complaints and accusations at SRJ and solicited information to help determine what actions to take." *See*, *Objection* [ECF 784], at p. 11. This statement discloses that the investigation supposedly was done in response to complaints and accusations as opposed to any other reason. A justification is also offered for the statement by Chief of Staff Abraham as to why former Commission Sandy's email account is still active. *See*, *Objection* [ECF 784], at p. 12, n. 6. Thus, while these Witnesses claim a privilege, they have no problem disclosing certain information as to their decision-making.

The Witnesses next argue that the Magistrate Judge made no findings with respect to Plaintiffs' need for the material or the burden on the Governor's Office.[1] *See*, *Objection* [ECF 784], at p. 9. The Magistrate Judge fully summarized Plaintiffs' and the Witnesses' respective arguments. With respect to the departure of former Commissioner Jividen, whether or not she

---

[1] Although unnecessary, perhaps the Magistrate Judge's Order would have been more detailed had the Witnesses not filed their *Motion to Quash* so close to the return date of the subpoenas.

was asked to depart because of the rampant problems at SRJ is relevant to whether the Defendants had knowledge of the substantial risk of harm presented to the inmates. This is a narrow issue confined to the period of time when the former Commissioner left, thus, not imposing a substantial burden upon the Governor's Office. The same reasoning applies to the decision to dispatch Sandy to investigate some of the conditions at SRJ.

With respect to the determination of any involvement in the failure to preserve ESI information, the email indicating that Sandy's email account is to remain active raises a question, despite counsel's explanation, as to amount of control the Governor's Office had over the ESI information related to WVDOCR/WVDHS. The Magistrate Judge, having determined that the evidence was destroyed, reasonably concluded that this was a proper area of inquiry. If, as counsel represents, the Governor's Office had no involvement, then a simple response is "no such documents exist."

Finally, to the extent that the Witnesses rely upon the argument that the Magistrate Judge recommendation that default judgment be entered in this case rendered "the documents subject to the court's modified subpoenas can have no value to resolving Plaintiffs' claims," Plaintiffs would agree if the Governor in his official capacity representing the state of West Virginia agree to an entry of default judgment. *See*, *Objection* [ECF 784], at p. 9. After all, the state of West Virginia is the real party in interest in this litigation. "The United States Supreme Court has held that the real party in interest in a civil rights case against state officials in their official capacity is the state. *W. Virginians for Life v. Smith*, 952 F. Supp. 342, 348 (S.D. W. Va. 1996) (internal citations omitted).

Thus, the Witnesses' expansive policy arguments regarding the burdening of the Governor's Office by the provision of the documents is undermined where the State the real

party in interest in the litigation. The issues in this case are not tangential to the Governor's Office and the burden can be characterized as substantial.

The Magistrate Judge has wide discretion with respect to discovery matters. In the case *sub judice*, the Magistrate Judge determined that the Witnesses could not be deposed, but they would be required to produce certain documents. The Magistrate Judge considered the relevant law as set forth in the *Order* [ECF 772], including the law related to protective orders. The Magistrate Judge correctly decided to modify the subpoena, relying in part upon the Witnesses' actions in providing documents, and limited the production of documents to three narrowly defined areas. Apparently, only two of these areas will produce any documents as the Witnesses contend they have no knowledge of the failure to preserve ESI.

The arguments set forth in the *Objection* [ECF 784] are essentially one of form over substance. The Magistrate Judge did not specifically cite Rule 45, but applied the exceptional circumstances test in making his decision, thus recognizing the more stringent standards for third-party discovery. Therefore, the Witnesses' argument that the Magistrate Judge applied the wrong legal standard and that the modified subpoenas impose an undue burden should be rejected.

B. **Executive privilege does not bar an order compelling the production of internal documents from the Governor's Office regarding the alleged "dismissal" of then- Commissioner Jividen and the "dispatch" of then- Secretary Sandy to "investigate" the SRJ.**

The first flaw in the Witnesses' argument regarding the deliberate process privilege is the failure to distinguish between those documents, or portions of documents, which contain factual information which is not protected by the deliberate process privilege. "A party is generally unable to determine what a discovery request will reveal until the documents are produced." *McGhee v. Fla. Dep't of Corr.*, No. 4-18mc04-MW-CAS, 2019 U.S. Dist. LEXIS 50781, *18

7

(N.D. Fla. Feb. 5, 2019); *See also*, *Schomburg v. Bologna*, 298 F.R.D. 138 (S.D.N.Y. 2014) (Noting that the privilege does not apply to factual matters and allowing a review of a sealed investigative file by the District Attorney to determine whether to assert the deliberative process privilege). Thus, decisions regarding whether the deliberate process privilege "should not be based on a psychic presumption of documents." *McGhee*, at *18 (citation omitted) (addressing the determination of relevancy).

The Witnesses did provide a privilege log with respect to some of the documents responsive to the *Subpoenas*. *See*, Exhibit A. However, the content of the documents which the Witnesses seek to protect in their *Objection* [ECF 784] are unidentified and unknown. Therefore, no determination can be made as to whether the deliberative process privilege is applicable to all or part of the documents and the Witnesses have failed to support their objection on this basis alone.

A case from the United States District Court for the Eastern District of California alleging prison overcrowding is instructive. *See*, *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P,, C01-1351 TEH, 2008 U.S. Dist. LEXIS 70224 (E.D. Cal. Sep. 15, 2008). In *Coleman*, the plaintiffs alleged that overcrowding in California's prisons was the primary cause of the failure to provide medical and mental health care that satisfied constitutional standards. *Id.* at *17. A Three-Judge Court was convened under the Prison Litigation Reform Act (PLRA) with authority to issue a "prisoner release order" should the statutory requirements of 18 U.S.C. § 3626 found to be satisfied. *Id*. at *18. Plaintiffs sought to depose the Governor, his Chief of Staff, and the Deputy Cabinet Secretary. *Id.* The District Court permitted only the deposition of the Deputy Cabinet Secretary. *Id*. at *31. The District Court also noted that if the Deputy Cabinet Secretary asserted a "the deliberative process privilege as to specific questions [. . . he] must lay

a specific foundation on the record for such assertions." *Id*. at *32. The District stated that the magistrate judge will have "a more adequate basis for considering whether the deliberative process privilege applies." *Id*. Specifically, the magistrate judge could better determine whether plaintiffs' need for the [information] and the need for accurate fact-finding override the government's interest in non-disclosure. *Id*. (citation and internal quotation marks omitted).

The Magistrate Judge in the case *sub judice* made the determination that the Plaintiffs' need for the information and accurate fact-finding overrode the Witnesses' interest in non-disclosure. The Magistrate Judge expressed his justifiable concern regarding the failure to preserve evidence. *See, Order* [ECF 772], at pp. 9-10. In fact, the Magistrate Judge noted that this failure "is more concerning given the recent discovery produced by the Chief of Staff to the Governor that ESI in this matter be preserved, rather than destroyed. (See ECF No. 752-1)." *Id.*, at p. 10, n. 5. The circumstances surrounding the mass exodus of WVDOCR personnel, including former Commissioner Jividen, former Superintendent Francis, and former Major Warden, not long after the investigation conducted by former Secretary Sandy and just prior to the filing of the original complaint in this matter and the failure to preserve their email accounts and phones all lead to the conclusion that the documents sought are not subject to the deliberative process privilege. Such actions are not indicative of a deliberative process, but rather, a highly unusual set of circumstances that warrants investigation through discovery. Thus, the Witnesses lack a sound factual and legal basis for their objections to the disclosure.

## II. SOVEREIGN IMMUNITY IS NOT APPLICABLE TO THE ISSUANCE OF A SUBPOENA

The Witnesses continue to assert their argument for immunity under the *Eleventh Amendment* for the subpoenas. As the Fourth Circuit Court of Appeals stated, "this immunity is not [. . . an] Article III limitation on subject-matter jurisdiction." *Constantine v. Rectors &*

9

*Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005). The Court further stated that the immunity is "like qualified immunity for state officials" and requires that the immunity issue be resolved "at the earliest possible stage in litigation." *Id*. Thus, unlike a lack of subject matter jurisdiction, which prevents a court from acting at all, sovereign immunity only acts to require a court to determine whether immunity is applicable as early as possible. As with any statutory or common law immunity, a court must determine whether a defendant or third person is entitled to claim the immunity or whether the defendant's or third person's acts fall outside of the protection of immunity. A Court is not automatically required to quash a subpoenabased solely unon the identification of the witness as a state official.

The Witnesses also continue to disregard the numerous courts that determined that sovereign immunity is inapplicable to subpoenas. The United States District Court for the District of South Carolina held that a third-party subpoena could be enforced against the third party South Carolina State Ports Authority, a state agency. *Waterkeeper v. Frontier Logistics, L.P*., 488 F. Supp. 3d 240, 245 (D.S.C. 2020).

The United States District Court for the Eastern District of California also concluded that the issuance of a subpoena to a state agency is not prohibited by sovereign immunity. *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1080 (E.D. Cal. 2008). The District Court looked to the language of the *Eleventh Amendment* for guidance and noting the intent is to "prevent federal court judgments that would have to be paid out of a State's treasury" and that "the vulnerability of the State's purse is the most salient factor in Eleventh Amendment determinations." *Id*. at 1076 (citations and internal quotation marks omitted). Moreover, "immunity depends on the State's potential legal liability." *Id*. (citations omitted). The District Court went on to consider whether a subpoena can qualify as a "suit in law or equity" and concluded that a suit is a proceeding in

which one seeks a remedy for a wrong and a subpoena does not fall into this definition. *Id*. at 1078-1079. Finally, the *Allen* Court reasoned that if a plaintiff in a §1983 action were prohibited from issuing subpoenas, a plaintiff "will never be able to prove his or her case." *Id*. at 1079.

The United States District Court for the Western District of Virginia followed the same line of reasoning finding that the doctrine of sovereign immunity was inapplicable to a subpoena directed to Virginia Tech, which the Court assumed was an arm of the state. *Arista Records LLC. v. Does*, Civil Action No. 7:08cv00205, 2008 U.S. Dist. LEXIS 102974, at **11*12 (W.D. Va. Dec. 22, 2008).

Relying upon *Allen* and similar decisions, the United States District Court for the District of Massachusetts also determined that "nonparty discovery does not constitute a 'suit' for purposes of the *Eleventh Amendment*." *United States ex rel. Willette v. Univ. of Mass.*, 167 F. Supp. 3d 221, 223-224 (D. Mass. 2016).[2]

The First Circuit Court of Appeals, also relying in part on *Allen*, a district court judgment ordering compliance with an administrative subpoena issued to the Program Manager for New Hampshire's Prescription Drug Monitoring Program (the "PDMP") by the United States Drug Enforcement Administration ("DEA") to produce the PDMP-kept prescription drug records of an individual. *United States DOJ v. Ricco Jonas*, 24 F.4th 718, 721 (1st Cir. 2022), *certiorari denied*

---

[2] The District Court relied upon the following cases: "*Barnes v. Black,* 544 F.3d 807, 812 (7th Cir. 2008) ('[A]n order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case' does not violate the *Eleventh Amendment* 'because [it does] not compromise state sovereignty to a significant degree'); *In re Missouri Dep't of Nat. Res.,* 105 F.3d 434, 436 (8th Cir. 1997*)* ('There is simply no authority for the position that the *Eleventh Amendment* shields government entities from discovery in federal court.'); *Ali v. Carnegie Inst. of Washington,* 306 F.R.D. 20, 30 n.8 (D.D.C. 2014) (noting hypothetically that the *Eleventh Amendment* would 'not completely shield [the University of Massachusetts] from certain non-party discovery requests" if it were not joined as a party); *Arista Records LLC v. Does 1-14,* No. 7:08CV00205, 2008 U.S. Dist. LEXIS 102974, 2008 WL 5350246, at *1-*3 (W.D. Va. Dec. 22, 2008) (nonparty state university's motion to quash subpoenas was denied on the grounds that the doctrine of sovereign immunity did not apply to third-party subpoena requests); *Laxalt v. McClatchy,* 109 F.R.D. 632, 634 (D. Nev. 1986) (affirming magistrate's denial of nonparty state agency's motion to dismiss discovery subpoena and notice of deposition; rejecting agency's argument for *Eleventh Amendment* immunity)."

by *Program v. Dep't of Justice*, 2022 U.S. LEXIS 3601 (U.S., Oct. 3, 2022). The Court of Appeals recognized that "courts have concluded that '[t]he service of a federal subpoena on an employee of an entity [that is protected by sovereign immunity]," such as the State of New Hampshire, 'is neither a suit, nor one against [the entity].'" *Id.* at 727 (*quoting*, *United States v. Juvenile Male 1,* 431 F. Supp. 2d 1012, 1016 (D. Az. 2006) and *citing*, *Allen v. Woodford,* 544 F. Supp. 2d 1074, 1078-79 (E.D. Cal. 2008). The Court of Appeals found persuasive the reasoning in *Allen* that no judgment would be issued against the state that could have an effect on the state treasury. *Id*. The Court of Appeals also noted that only the witness "not the State, may be found to be in contempt of court for failing to comply with a court order enforcing the subpoena." *Id*.

The United States District Court for the Northern District of Florida also found the reasoning and conclusion in *Allen* to be sound. *See*, *McGhee v. Fla. Dep't of Corr*., No. 4:18mc04-MW/CAS, 2019 U.S. Dist. LEXIS 50781 (N.D. Fla. Feb. 5, 2019). The District Court also relied upon the reasoning and decision in an admiralty in rem action. *Id.* at **7-8 (*citing*, *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 676, 102 S. Ct. 3304, 3310, 73 L. Ed. 2d 1057 (1982)). Treasure Salvors filed an admiralty complaint in a federal court seeking possession of property recovered from a 17th-century Spanish galleon discovered on the ocean floor and some of the artifacts were held by state officials at the Division of Archives in Tallahassee. *Id.* at *7. The District Court issued a warrant directing the U.S. Marshal to take custody of the artifacts held by the officials in Tallahassee and bring them within the jurisdiction of the Southern District of Florida. *Id*. at *8. ""The question presented [was] whether the *Eleventh Amendment* immunized the property from the federal court's process." *Id*. (citations and internal quotation marks omitted). In reviewing *Treasure Salvos*, the District Court quoted the following conclusion by the United States Supreme Court regarding the applicability of the

12

*Eleventh Amendment* to the subpoena:

> the Court noted that the warrant to take possession of the property was 'directed only at state officials and not at the State itself or any agency of the State' and concluded that it was 'not barred by the *Eleventh Amendment* as a direct action against the State.' *Id*. at 691-92, 102 S. Ct. at 3318.

*Id*.

The Florida District Court also concluded that a subpoena was not a suit in law or equity that seeks to remedy a wrong. *Id*. at *9. The District Court further concluded that a subpoena does not seek any kind of judgment or relief and "does not interfere with a state's dignity or respect. *Id*. at * 10; *See also*, *Wilson v. Venture Fin. Grp., Inc*., No. C09-5768BHS, 2010 U.S. Dist. LEXIS 121861 (W.D. Wash. Nov. 2, 2010) (*quoting*, *Allen*) ("Furthermore, courts have rejected as irrelevant the State's argument for applying a state's sovereign immunity because 'no judgment or other relief of any kind is sought against' the state, which would invoke *Eleventh Amendment* protections.").

In line with *Treasure Salvos*, the Tenth Circuit, in dicta, with respect to tribal immunity reasoned that:

> If a subpoena were served on a tribal official, rather than the Tribe, however, neither Dugan nor Larson would be triggered, as '[t]he Ex parte Young exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity.' Crowe & Dunlevy, 640 F.3d at 1154 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).

*Bonnet v. Harvest (US) Holdings, Inc.,* 741 F.3d 1155, 1162 n.1 (10th Cir. 2014).

The Fifth Circuit case relied upon by the Witnesses incorrectly concluded that "sovereign immunity also applies to state officials as third parties, not just as defendants." *See*, *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022). This holding directly contravenes the holding in *Treasure Salvos* that an order from a federal court compelling a state official to do an act is not

13

prohibited under the *Eleventh Amendment*.

The *Russell* Court also disregards United States Supreme Court precedent a second time. Qualified immunity is often described as "an immunity from suit, not just liability. *Russell* at 514 (*citing*, *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)). However, the *Mitchell* Court's statement is: The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell* at 526. The *Mitchell* Court made this statement in determining whether the denial of qualified immunity was immediately appealable. Further, in the paragraph prior to that statement, the *Mitchell* Court discussed that defendants claiming immunity are protected from insubstantial claims by the grant of a motion to dismiss or summary judgment, the latter contemplating discovery for resolution of the motion. Thus, *Mitchell* does not provide the support the *Russell* Court seeks.

The decision in *Russell* carries the doctrine of state sovereign immunity too far. A subpoena is not a suit against the state; nor does a subpoena seek judgment against a state. A subpoena may or may not affect public administration; however, the extent of the effect can be determined under the proportionality requirement as can the expense or public fisc related to a subpoena. Finally, despite the Witnesses' protestations to the contrary, application of the *Russell* decision will severely limit a § 1983 plaintiff from obtaining evidence to support their allegations as all subpoenas issued to a state official or a state agency will be quashed without a consideration or balancing of common law sovereign immunity and an individual's protected constitution rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reject

MICHAEL D. ROSE, on his own behalf and on behalf of all those similarly situated,

By Counsel,

/s/ Stephen P. New
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB No. 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com


Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

| | |
|---|---|
| **MICHAEL D. ROSE** on his own behalf and on behalf of all others similarly situated, et al. ) ) ) ) **Plaintiffs,** ) ) v. ) ) **JEFF S. SANDY, et at.,** ) ) **Defendants.** ) ) | Civil Action No. 5:22-cv-00405 (Judge Volk) |

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that a true and correct copy of the foregoing *Plaintiffs' Response in Opposition to Motion to Quash by James C. Justice, II, Governor, and Brian Abraham, Chief of Staff to the Governor and Supplemental Memorandum in Further Support of Motion to Quash and Plaintiffs' Supplemental Motion to Compel Appearance and Testimony of Governor James C. Justice and Brian Abraham at Depositions and to Produce Documents* was filed with the clerk on November 6, 2023 via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

    /s/ Stephen P. New
Stephen P. New (WVSB No. 7756)