IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTIRCT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| MICHAEL D. ROSE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 5:22-cv-405 |
| | ) |
| | ) |
| JEFF S. SANDY, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY BY NONPARTIES GOVERNOR JAMES C. JUSTICE, II, AND BRIAN ABRAHAM, CHIEF OF STAFF TO THE GOVERNOR, IN THEIR OFFICIAL CAPACITIES, SUPPORTING THEIR OBJECTION TO THE DISCOVERY ORDER**

The Governor and Mr. Abraham objected to the Discovery Order on the grounds that the Magistrate Judge failed to apply the correct legal standard, did not address the Governor and Mr. Abraham's dispositive sovereign immunity argument, and broadened the scope of the subpoena to seek unduly burdensome, irrelevant, and otherwise privileged information. Plaintiffs responded, advancing three arguments: that the court applied the correct legal standard — Rule 26 — to assess nonparty discovery; that the deliberative process privilege does not apply to the documents compelled by the court (or at the very least warrants *in camera* review); and that state sovereign immunity does not bar the enforcement of a third-party subpoena against a state official. None of the responses withstand scrutiny.

For the reasons set forth in the Objection and below, the Discovery Order should be set aside to the extent it denied the Governor and Mr. Abraham's motion to quash, which the court should have granted in full.[1]

## ARGUMENT

I. **The Discovery Order failed to address Rule 45 or to conduct the heightened proportionality analysis required for nonparty discovery under Fourth Circuit precedent.**

Plaintiffs argue that the Magistrate Judge was correct to adjudicate the Governor and Mr. Abraham's motion to quash under Rule 26. Despite recognizing that the Fourth Circuit has held that *Rule 45* requires a court of conduct a "more 'demanding and sensitive' inquiry" into the propriety of a nonparty subpoena, Plaintiffs nonetheless claim that "[t]he scope of discovery under Rule 26 and Rule 45 are the same." ECF 792 at 3-4. Not so. Plaintiffs' contentions — based solely upon unpublished district court opinions — contravene binding Fourth Circuit authority. As our court of appeals has explained, "[w]hen discovery is sought from nonparties . . . *its scope must be limited even more*" than the scope of party discovery. *Va. Dept. of Corr. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) (emphasis added).

---

[1] On November 7, the parties represented to this Court that they have reached a resolution in this matter, rendering the information sought by the modified subpoena irrelevant to this litigation. ECF 807 at 1. Enforcement of the subpoena should thus be stayed until a final settlement is ascertained. And if the court approves the parties' settlement, or if the plaintiffs' claims are otherwise dismissed, then the Discovery Order should be set aside as moot. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950)).

According to the Fourth Circuit, a court assessing a motion to quash a nonparty subpoena must weigh the potential litigation value of the information sought against the burden imposed upon the subpoena recipient — giving their nonparty status "special weight." *Jordan*, 921 F.3d at 189. The Rule 45 standard is provided in detail in the Objection. The upshot is that for a court to enforce a nonparty subpoena, it must determine that the information sought will "likely" have litigation value "over and above" what the requesting party already has, and that the same or similar information cannot also be obtained "from one of the parties to the litigation — or, in appropriate cases, from other third parties that would be more logical targets for a subpoena." *Id.* Once the court has made that determination, it must assess whether the value of the information sought outweighs all cognizable burdens on the nonparties. *Id.* The Discovery Order does not even purport to engage in the required analysis.

### A. Applying Rule 45, the modified subpoenas impose an undue burden on the nonparties and require the production of privileged information.

Plaintiffs contend that by conducting the "extraordinary circumstances" test to deny the depositions of the Governor and Mr. Abraham, the Magistrate Judge "recogniz[ed] the stringent standards for third-party discovery." ECF 792 at 7. But the "extraordinary circumstances" test does not speak to third-party document discovery — it only addresses whether a high-ranking government official can be compelled to *deposition*. Indeed, in most cases involving the "extraordinary circumstances" test, the party seeks to depose a government official *who is named as a party*.

In this case, the court concluded that Plaintiffs already possess documents and testimony supporting their arguments that "complaints concerning overcrowding, understaffing, and deferred maintenance for the SRJ were not rectified" such that the depositions of the Governor and Mr. Abraham were not necessary. Nonetheless, and somewhat contrarily, the Discovery Order *granted* Plaintiffs' motion to compel "to the extent that [the Governor and Mr. Abraham] be compelled to produce[] responsive documentation to the Plaintiffs' subpoena duces tecum." ECF 772 at 10. Considering that the documents requested in the nonparty subpoenas *as served by Plaintiffs* requested only documents regarding conditions at the SRJ and the funding decisions of the Governor's Office, the court's decision on the motion to compel flies in the face of Rule 45.

But the Discovery Order went on to deny the Nonparties' Motion to Quash "to the extent that they can avoid disclosing *any and all* documentation concerning: the dismissal of the Defendant Jividen; the dispatch of the Defendant Sandy to inspect the SRJ on March 30, 202[2]; and either [Nonparty's] involvement or knowledge of ESI preservation." ECF 772 at 11. In so broadening the scope of the nonparty subpoena, the court undertook no findings or analysis concerning the litigation value of those requested documents, no assessment as to their privilege, and no assessment as to the burden imposed upon the nonparties. And indeed, the burden imposed upon the nonparties outweighs any value those requested documents can have in this litigation.

4

Any information regarding the alleged "dismissal" of Ms. Jividen can be obtained from parties to this litigation and would be subject to the deliberative process privilege. Plaintiffs argue that "whether or not [Ms. Jividen] was asked to depart because of the rampant problems at SRJ is relevant to whether the Defendants had knowledge of the substantial risk of harm presented to the inmates." ECF 792 at 5-6. But neither the Governor nor Mr. Abraham is a defendant in this matter. Any involvement by Mr. Abraham in Ms. Jividen's departure in no way indicates the level of *her knowledge* of the conditions at SRJ.

What is more, Plaintiffs have had ample opportunity to ask both Ms. Jividen and Mr. Sandy about Ms. Jividen's departure. Ms. Jividen testified that Mr. Sandy told her that Mr. Abraham told him that he needed "to go over the incident with Secretary Wriston's nephew." ECF 741-3 at 1. Plaintiffs can ask Mr. Sandy about this conversation and seek documentation from WVDHS about Ms. Jividen's departure — both of which will lead to the information sought through the modified subpoenas.

Further, any communications or documents created for Mr. Abraham prior to Ms. Jividen's departure from WVDCR would be protected by the executive privilege. Plaintiffs argue that such a determination should only be made after the nonparties produce a privilege log of documents responsive to the modified subpoena. But in the event that the very subject matter or nature of a document request seeks privileged information, the request should be quashed without further inquiries.

5

Either way, forcing the nonparties to litigate issues of privilege and responsiveness of documents easily obtainable elsewhere imposes a substantial burden.

As to the Magistrate Judge's order for documents concerning the "dispatch" of Mr. Sandy to investigate the SRJ, the same or comparable information is available from the parties to this litigation and from the public record. Indeed, Plaintiffs filed *with this court* the report generated by Mr. Sandy setting forth his investigative findings. That report stated the reason he was "dispatched" to investigate the SRJ and what he was told to investigate. Again, Plaintiffs have had ample time to depose Mr. Sandy about that investigation and to seek document discovery from him. Any discussions between Mr. Abraham and other members of the Governor's Office about how to respond to certain complaints and issues would be inherently deliberative and pre-decisional and therefore privileged.[2]

Finally, the Discovery Order's directive to produce "any and all documentation concerning . . . either [nonparty's] involvement or knowledge of ESI preservation" is overly broad, unduly burdensome, of no litigation value, and likely privileged. As an initial matter, the information sought has no value to the litigation. Notably, Plaintiffs offer no argument to the contrary. There is no

---

[2] Plaintiffs argue that the nonparties revealed privileged information in their Objections to the Discovery Order by revealing that "[t]he Governor's Office learned of certain complaints and accusations at SRJ and solicited information to help determine what actions to take." ECF 792 at 5. This is incorrect. To the contrary, that information is available *on the face of Mr. Sandy's report*, which states that he is investigating "by order of Jim Justice, Governor . . . to determine if the allegations being placed by former and current employees, current and former inmates, and family members of inmates have merit." ECF 7-1 at 1.

6

assertion that either the Governor or Mr. Abraham was involved in WVDCR's failure to preserve documents.[3] The sanctions issue has been litigated and findings have been made. There is no value to this litigation in the information sought. And considering the broad scope of the request, the burden on the nonparties is great. The request is not limited to ESI preservation by WVDHS or WVDCR. It could likewise call for documents reflecting the development of policies, information that would be subject to the executive privilege. Accordingly, any claimed need on the part of Plaintiffs for the information could not possibly outweigh the burden imposed upon the nonparties.

II.     **Sovereign immunity bars the enforcement of this subpoena.**

When a state official is barred by sovereign immunity from being named a defendant in a lawsuit, it is only logical that he cannot then be subject to discovery in that lawsuit. *Russell v. Jones*, 49 F.4th 507, 515 (5th Cir. 2022) ("Plaintiffs may not obtain by third-party subpoena what they could not obtain from [state officials] as defendants."). As the Supreme Court has long held, state sovereign immunity blocks states from being "subjected to *legal proceedings*" without their consent. *The Siren*, 74 U.S. (7 Wall.) 152, 154 (1868). Any legal proceeding implicates sovereign immunity "if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963).

---

[3] Contrary to Plaintiffs' contention, the footer attached to Mr. Sandy's email does not indicate any involvement in the ESI preservation of WVDHS. It simply reflects the undisputed fact that the Office of Technology *can* preserve an email account.

7

Despite Plaintiffs' arguments to the contrary, the doctrine of state sovereign immunity extends beyond the sovereign-as-defendant scenario. The circuits are clear on that principle. The Fourth Circuit has held that federal sovereign immunity can protect against third party subpoenas where the sovereign is otherwise immune from suit. *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989). And every circuit to address the issue has recognized the same. *Russell v. Jones*, 49 F.4th 507, 516-17 (5th Cir.) (collecting cases) (9th, 7th 2d, and 4th Circuits). Courts of appeal have likewise held that tribal sovereign immunity protects against third party subpoenas. *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1159-60 (10th Cir. 2014) (declining to enforce subpoena on tribal immunity grounds); *Alltel Comms., LLC v. DeJordy*, 675 F.3d 1100 at 1105-06 (8th Cir. 2011) (same).

Indeed, the Supreme Court addressed the limits of state sovereign immunity in an admiralty *in rem* action seeking to bring property held by two state officials within the jurisdiction of the court. *Fl. Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982). The question considered by the court was whether a State could use the doctrine of sovereign immunity to "resist[] attachment of property." *Id.* at 683. The high court concluded that the seizure of the property from the state officials was not barred by sovereign immunity because the officials were holding the property without any authority and thus acting "beyond [their] statutory authority." *Id.* at 696. In a conclusion that "follows inevitably from *Ex Parte Young*," the court concluded that because specific relief against the state officers holding the

8

property would not be barred by the Eleventh Amendment, then the seizure of the property was also not barred. *Id.* at 696-97. Indeed, it was precisely *because* the officials were not acting in their official capacity that the Supreme Court allowed the property to be seized. Here, there is no dispute that the documents are being sought from the nonparties in their official capacities concerning their official duties.

Plaintiffs attempt to rely on *Treasure Salvors* to undermine the Fifth Circuit's conclusion in *Russell* that state sovereign immunity bars the enforcement of third party subpoenas against state officials. But that case, though distinguishable, simply reinforces *Russell's* conclusion. Certainly, had the plaintiffs in *Treasure Salvors* sought an order seizing property held by state officials acting in their official capacity, the court would have concluded that the suit was barred by sovereign immunity.

The same is true here. The Governor and Mr. Abraham do not argue that a third-party subpoena can never be enforced against a state official. Rather, state sovereign immunity should bar enforcement of nonparty subpoenas against state officials where sovereign immunity would otherwise preclude them from being named as defendants. Without any argument that either the Governor or Mr. Abraham could be named as a defendant, Plaintiffs seek to compel them to act through a nonparty subpoena. Sovereign immunity does not permit that approach.

9

## CONCLUSION

For the foregoing reasons, this Court should set aside the Discovery Order only to the extent that it denied the motion to quash, which should have been granted in full.

**James C. Justice, II, Governor, and Brian Abraham, Chief of Staff**

**By Counsel.**

/s/ Michael B. Hissam
Michael B. Hissam (WVSB # 11526)
Maureen F. Gleason (WVSB #14452)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
304-982-8056 *fax*
mhissam@hfdrlaw.com
mgleason@hfdrlaw.com

*Counsel for Governor James C. Justice, II, and Brian Abraham, Chief of Staff to the Governor*

10