IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MICHAEL D. ROSE et al.,**

    **Plaintiffs,**

v.                                                                       Civil Action No. 5:22-cv-00405
                                                                      Honorable Frank W. Volk

**JEFF SANDY, et al.,**

    **Defendants.**

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT WEXFORD HEALTH SOURCES, INC. TO RESPOND FULLY AND ADEQUATELY TO PLAINTIFFS' SECOND SET OF DISCOVERY**

        **NOW COMES** the Defendant, Wexford Health Sources, Inc. (hereinafter "Wexford"), by counsel, Jordan K. Herrick, David E. Schumacher, and the law firm of Bailey & Wyant, PLLC, and hereby responds in opposition to Plaintiffs' Motion to Compel Defendant Wexford Health Sources, Inc. to Respond Fully and Adequately to Plaintiffs' Second Set of Discovery (ECF No. 839), and in support thereof, states as follows:

**I.    ARGUMENT**

        **A.    RPD No. 1**

        RPD No. 1 requests that Wexford produce the medical records for all putative class members from June 26, 2022, to present, i.e. all inmates at Southern Regional Jail since Wexford took over operations. Wexford objected to this request on several grounds. First, no class has been certified at this time. Therefore, Plaintiffs are requesting that the medical records of non-parties be produced to prosecute their claims. The medical records of non-parties have no bearing on whether Wexford provided constitutionally adequate medical care to the Plaintiffs. In fact, Plaintiffs own expert, after

reviewing the medical records of the named Plaintiffs, found that Wexford only deviated the standard of care as to one Plaintiff – William Bohn. *Depo. D. Mathis*, p. 85, lines 22-24, p. 86, lines 1-2, Ex. 1. How the alleged deviation of the standard of care of one individual translates into the need to review thousands of inmates' medical records is unclear.

Plaintiffs argue that they have made a claim against Wexford for deliberate indifference to serious medical needs and that these medical records are "crucial evidence bearing directly on these points, both for the substance of the class claims and for the establishment of class elements, such as commonality and typicality." (EC No. 840, p. 5). However, as it pertains to class elements, class discovery has concluded, and the Motion for Class Certification has been fully briefed. Had Plaintiffs wanted non-party medical records to support their claim for class certification against Wexford, they should have requested this information months ago. They did not. They now seek this information to assist in establishing liability against Wexford. Yet, although they claim it is crucial evidence to establish Wexford's deliberate indifference to the medical need of a purported class of individuals, they do not explain the need for every inmates' medical records. They do not articulate what type of alleged practice, custom, pattern, or policy, they believe will be revealed in reviewing these medical records. It appears they are doing nothing more than fishing for information to establish a viable claim against Wexford. This Court has specifically held that "[d]iscovery is a fishing expedition when it goes beyond the pleadings' allegations to attempt finding additional violations or claims. [internal citations omitted]." *Blankenship v. Fox News Network*, 2020 U.S. Dist. LEXIS 254998, *46 (S.D.W. Va. Sept. 21, 2020) (M.J. Aboulhosn). Therefore, without articulating a particular need for these medical records, they are not reasonably calculated to lead to the discovery of admissible evidence and Plaintiffs are simply undertaking a fishing expedition.

Additionally, Plaintiffs rely on the fact that numerous courts have allowed pre-certification

discovery of putative class members' confidential information without requiring prior notice to class members, to support their claim that all medical records should be produced. However, as previously discussed, we are not in pre-certification discovery. Although a class has not been certified yet, the discovery currently being conducted is that for liability purposes. Even if the discovery request was made timely during class certification discovery, the request for ***all*** inmates' medical records is unwarranted.

In *Renfro v. Smith*, 2018 U.S. Dist. LEXIS 153307 (D. Colo., Sept. 9, 2018), the District of Colorado was confronted with a functionally identical putative class action to this one, as it pertains to Wexford. Much like this matter, *Renfro* dealt with a proposed class of pretrial detainees who the plaintiff therein claimed to have been denied constitutionally adequate medical care during their jailing in Mesa County, Colorado. Also like this case, the alleged class contained potentially thousands of members, and the plaintiff's pre-certification discovery sought the medical files of all potential class members. Producing all those files was determined to be unduly burdensome, and so the *Renfro* Court reasoned as follows:

> As set forth above, Plaintiff believes that the class(es) he purports exist number in the hundreds if not thousands of individuals. Mathematics tells us the following: If 200 people (5% of the population of 4000) fit within the identified class, and if we survey 200 randomly selected people from the population of 4000, we can say with 95% confidence that between 4 (2.08%) and 16 (7.96%) class members will be identified. This means that reviewing one out of every twenty individual records, randomly selected, will garner the results set forth above. Thus, reviewing the entirety of the records is not necessary to find what Plaintiff seeks-or at least to sufficiently satisfy the Court that Plaintiff has been afforded a fair opportunity to identify the class he believes to be in the "hundreds if not thousands of individuals." Reviewing an additional 3800 of 4000 records to close the gap between 95% and 100% would be unduly burdensome on Defendants.

*Renfro* at *7-*8. Based on the above reasoning, the *Renfro* Court ordered the applicable defendant to produce 200 inmate medical files (approximately 5% of the total population), randomly selected

3

and redacted of personally-identifying information.[1] See *Id*. at *8.

In this case, Wexford has explained in an Affidavit of Mary Stone why producing medical records for all inmates is overly broad and unduly burdensome. See *Affidavit of Mary Stone*, Ex. 2. In particular, she states:

- Our statistics indicate that there were 5,689 intakes at Southern Regional Jail from July 1, 2022, until August 31, 2023.

- To accommodate this request, it would require that all 5,689 individuals' medical records be accessed and put in a proper format for production.

- Even if three (3) employees ceased with regular operations involving patient care to work entirely on this task, it would take at least three weeks to accomplish.

Ex. 2. Therefore, just like in *Renfro* where the Court found that production of 4,000 inmates' medical records was overly broad and unduly burdensome, production of over 5,689 inmates' medical records is overly broad and unduly burdensome. Thus, even if the medical records were discoverable, which Wexford contends they are not as the case stands, production of all inmates' medical records is unwarranted.

Last, Plaintiffs argue that by virtue of the entry of the Stipulated HIPAA Qualified Protective Order Regarding Production of Protected Health Information, the medical records should be produced. However, the Protective Order is merely one step in the hurdle to production of a non-party's private health information. The entry of the Protective Order merely protects the parties from accusations of a violation of HIPAA should the medical records be produced. It does not necessarily mean the medical records are discoverable pursuant to Rule 26. Further, the fact that Wexford produced grievance logs does not undercut its position regarding the production of the medical records as the actual grievances were previously produced by the WVDCR Defendants.

---

[1] The Court ordered that the corresponding identifying information be indexed to individual records so it could be produced later if necessary and proper.

Additionally, the fact that Wexford produced unredacted information after entry of the Protective Order does not undercut its position as the information requested which was previously redacted was deemed appropriate for discovery pursuant to Rule 26. Here, as stated above, the medical records for all inmates at Southern Regional Jail from June 26, 2022, to present are not discoverable. Therefore, this Motion as it pertains to RPD No. 1 should be **DENIED.**

    **B.**    **RPD No. 3**

RPD No. 3 requests the "complete audit log(s), audit trail(s), and all audit records for all putative class members' electronic medical records from June 26, 2022, to present, sorted chronologically by the date and time of the event." By way of supplement on November 28, 2023, Wexford made it clear that this request is overly broad and unduly burdensome. See *Third Supplemental Responses*, Ex. 3. In support of this, Wexford attached an Affidavit of Wanda Melocchi, the EMR, Clinical Services, Operations, and Telehealth Project Director. See *Affidavit of Wanda Melocchi*, Ex. 4. In this Affidavit, Ms. Melocchi explained why this request is overly broad and unduly burdensome. Specifically, she stated:

- The request is asking for all users who accessed the Southern Regional Jail facility for any reason and for any patient in CorEMR (the electronic medical records system utilized by Wexford Health Sources, Inc.) within a 17-month timeframe. Because that would request would require a large amount of data output, there is no efficient way to produce this information in an electronic format.

- We attempted to run a query by month, but the output was so large that it could not be saved.

- We attempted to run a query for two-week timeframes, but again, the data could not be saved.

- Given that the timeframe requested is for 17 months, the output would total over 266,000 pages.

- The output can only be formatted in a .pdf document.

- This would require considerable time and effort by Wexford employees to undertake. I estimate that it would take weeks, if not months to complete.

Ex. 4. This Court has previously held:

> In determining whether a request is overly broad or unduly burdensome, the Court will balance the burden on the objecting party against the benefit to the discovering party of having the information. *Hoffman*, 117 F.R.D. at 438. "An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectional." *Allstate Insurance Company v. Gaughan*, 220 W.Va. 113, 640 S.E.2d 176 (2006) cited *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370 (D.Neb 2004). "Mere recitation of the familiar litany that an interrogatory or a document production request is "overly broad, burdensome, oppressive and irrelevant" will not suffice. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).

*JAK Prods. v. Bayer*, 2015 U.S. Dist. LEXIS 66935, *20 (S.D.W. Va. May 22, 2025) (M.J. Tinsley).

As previously stated, this objection was not boilerplate. Wexford provided an affidavit specifying the burdensomeness of obtaining the information requested. In balancing the burden it would take to obtain the information versus Plaintiffs' need for it, it is clear that the objection should be sustained. First, Plaintiffs have not set forth any basis for *why* the audit logs are needed. Plaintiffs assert that the medical care rendered by Wexford rose to the level of deliberate indifference so as to violate their constitutional rights. Plaintiffs request the audit logs and audit trails with the following information: (1) Date and time of event, including the exact date and time of the access event and the exit event; (2) User identification; (3) Access device identifying all on-site terminals and remote work stations or devices from which the user obtained access; (4) Type of action performed (additions, deletions, changes, queries, print, copy), specific inquiry, any changes made (with reference to original data) and a delete specification (with reference to deleted information); (5) Identification of the patient data that is accessed; (6) Source of access, please identify the application through which the access occurred; (7) Reason for access; (8) Any alarms, alerts, reminders, notifications and/or warnings messages and identify who was notified of the same; and, (9) Every

6

actual or attempted print, transmit, or delete activity by any user at any time between June 26, 2022, to the present. It is unclear as to how having access to the information requested will aid in this journey. Plaintiffs contend that "the timing and editing of medical record entries is both discoverable and relevant in this action given the nature of the allegations and the evidence of undue delay in providing medical treatment to inmates." (ECF No. 840, p. 7). However, Wexford produced detailed statistics that provides this information including: (1) the number of nurse sick calls during the month; (2) the number of nurse sick calls triaged within 24 hours; (3) the number of nurse sick calls not triaged with 24 hours; (4) the number of nurse sick calls not seen within 72 hours; (5) number of referred doctor sick calls; and, (6) number of doctor sick calls seen by the doctor in 14 days. See *Bates Stamp WEX008830-008834*, Ex. 5. It is unclear how the information provided is insufficient and necessitates Wexford to expend countless hours and resources to produce more than a quarter of a million pages of documents.

It is readily apparent that this is nothing more than a fishing expedition for Plaintiffs to cherry pick information to try to cast doubt on the medical care rendered by Wexford at Southern Regional Jail. However, as previously stated, "[d]iscovery is a fishing expedition when it goes beyond the pleadings' allegations to attempt finding additional violations or claims. [internal citations omitted]." *Blankenship*, at *46. Without specifying why this information is needed in place of the statistics already provided or narrowly tailoring the discovery request to a specific group of individuals, date/time range, etc., there is no justification to compel Wexford to produce over 266,000 pages of information which would take countless hours and resources to obtain. Therefore, the Motion regarding RPD No. 3 should be **DENIED**.

    **C.**    **RPD No. 4**

RPD No. 4 requests that Wexford produce every sick call form for Southern Regional Jail

7

from June 26, 2022, until present. In response to this, Wexford objected, stating that it was overly broad and unduly burdensome. In support of this objection, Wexford attached an Affidavit of Mary Stone, the Vice President of Operations for West Virginia, explaining why this request is overly broad and unduly burdensome. See *Affidavit of Mary Stone*, Ex. 2. Specifically, Ms. Stone stated:

- To produce all nurse sick call forms, it would require someone to go through each inmate's medical file from June 26, 2022, until the present.

- Our statistics indicate that there were 5,689 intakes at Southern Regional Jail from July 1, 2022, until August 31, 2023. Our statistics indicate that there were 5,748 nurse sick call forms submitted during this timeframe.

- To locate each one of these 5,748 nurse sick call forms, it would require employee(s) to access 5,689 inmate medical files to determine whether that specific inmate had a nurse sick call form and then gather the 5,748 nurse sick call forms to produce.

- Even if three (3) employees ceased with regular operations involving patient care to work entirely on this task, it would take at least three weeks to accomplish.

Ex. 2. As stated *supra*, this Court has previously held:

> In determining whether a request is overly broad or unduly burdensome, the Court will balance the burden on the objecting party against the benefit to the discovering party of having the information. *Hoffman*, 117 F.R.D. at 438. "An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or evidence revealing the nature of the burden and why the discovery is objectional." *Allstate Insurance Company v. Gaughan*, 220 W.Va. 113, 640 S.E.2d 176 (2006) cited *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 370 (D.Neb 2004). "Mere recitation of the familiar litany that an interrogatory or a document production request is "overly broad, burdensome, oppressive and irrelevant" will not suffice. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).

*JAK Prods.* at *20.

Even though Wexford objected based on the reasons set forth in Ms. Stone's Affidavit, it produced statistics regarding the sick calls. As previously discussed, these statistics contain information regarding (1) the number of nurse sick calls during the month; (2) the number of nurse sick calls triaged within 24 hours; (3) the number of nurse sick calls not triaged with 24 hours; (4)

8

the number of nurse sick calls not seen within 72 hours; (5) number of referred doctor sick calls; and, (6) number of doctor sick calls seen by the doctor in 14 days. Ex. 5.

Plaintiffs have failed to set forth a reasonable justification to overcome the burden on time and resources it would take to produce this information. Plaintiffs simply state that the statistics are not sufficient to provide the substance of the information contained within the nurse sick calls. However, Plaintiffs have not set forth the reason *why* they need the substance of the information. If their contention is that there are delays in care, the statistics provide them with the information in that regard. As with the other two discovery requests above, this appears to be nothing more than a fishing expedition in order to cherry pick information to try to cast doubt on the medical care rendered by Wexford at Southern Regional Jail. However, "[d]iscovery is a fishing expedition when it goes beyond the pleadings' allegations to attempt finding additional violations or claims. [internal citations omitted]." *Blankenship*, at *46. Without specifying why this information is needed in place of the statistics already provided or narrowly tailoring the discovery request to a specific group of individuals, date/time range, medical conditions, etc., there is no justification to compel Wexford to expend the resources it would take to produce this information. Therefore, the Motion regarding RPD No. 4 should be **DENIED.**[2]

## II. CONCLUSION

**WHEREFORE**, in light of the foregoing, Defendant Wexford Health Sources, Inc., prays that this Honorable Court **DENY** Plaintiffs' Motion to Compel Defendant Wexford Health Sources, Inc. to Respond Fully and Adequately to Plaintiffs' Second Set of Discovery (ECF No. 839) and further award this Defendant any and all other relief this Honorable Court deems just and proper.

**WEXFORD HEALTH SOURCES, INC.,**

---

[2] Wexford concedes that if the Court grants the Motion pertaining to RPD No. 1, that this issue is moot, as Plaintiffs' counsel would have access to all inmates' medical records which would contain the sick call slips. However, for the reasons set forth above, Wexford believes the Motion regarding RPD No. 1 should be **DENIED.**

                                                    **By Counsel,**

/s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
David E. Schumacher (WV Bar #3304)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
dschumacher@baileywyant.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

**MICHAEL D. ROSE et al.,**

    **Plaintiffs,**

v.                                                                   Civil Action No. 5:22-cv-00405
                                                                     Honorable Frank W. Volk

**JEFF SANDY, et al.,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT WEXFORD HEALTH SOURCES, INC. TO RESPOND FULLY AND ADEQUATELY TO PLAINTIFFS' SECOND SET OF DISCOVERY** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, December 4, 2023:

D. C. Offutt, Jr.
Anne Liles O'Hare
Offutt Simmons Simonton, PLLC
949 Third Avenue, Suite 300
P.O. Box 2868
Huntington, WV  25701
Attorney For: PrimeCare Medical of West Virginia, Inc.

Wendy E. Greve
Benjamin B. Vanston
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
901 Quarrier Street
Charleston, WV  25301
Attorney For: Greenbrier County Commission, Mercer County Commission, Monroe County Commission, Summers County Commission, Wyoming County Commission

Chip E. Williams
Jared C. Underwood
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
252 George St.
Beckley, WV  25801
Attorney For: Michael Francis

J. Victor Flanagan
Daniel J. Burns
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
252 George Street
Beckley, WV 25801
Attorney For: John/Jane Doe Employees of Raleigh County Commission, Raleigh County Commission

Charles R. Bailey
Harrison M. Cyrus
Bailey & Wyant, PLLC
PO Box 3710
Charleston, WV 25337-3710
Attorney For: Fayette County Commission

Robert P. Dunlap
Dunlap & Associates, PLLC
208 Main Street
Beckley, WV 25801
Attorney For: Plaintiffs

Stephen P. New
New, Taylor & Associates
430 Harper Park Drive
PO Box 5516
Beckley, WV 25801
Attorney For: Plaintiffs

Amanda J. Taylor
Taylor, Hinkle & Taylor
115 ½ S. Kanawha Street
Beckley, WV 25801
Attorney For: Plaintiffs

Timothy P. Lupardus
Lupardus Law Office
275 Bearhole Road
PO Box 1680
Pineville, WV 24874
Attorney For: Plaintiffs

Zachary K. Whitten
Whitten Law Office, L.C.
P.O. Box 753
Pineville, WV 24874

Attorney For: Plaintiffs

Michael D. Mullins
Peter J. Raupp
Steptoe & Johnson PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, WV 25326-1588
Attorney For: Betsy Jividen, Brad Douglas, Jeff S. Sandy, William K. Marshall, III

Amy M. Smith
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
Attorney For: Betsy Jividen, Brad Douglas, Jeff S. Sandy, William K. Marshall, III

/s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
David E. Schumacher (WV Bar #3304)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com

dschumacher@baileywyant.com