IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| MICHAEL D. ROSE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 5:22-cv-00405 |
| ) | |
| JEFF SANDY, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT PRIMECARE MEDICAL OF WEST VIRGINIA, INC., TO RESPOND FULLY AND ADEQUATELY TO PLAINTIFFS' SECOND SET AND THIRD SET OF DISCOVERY**

COME NOW Plaintiffs, by undersigned counsel, and in further support of *Plaintiffs' Motion to Compel Defendant PrimeCare Medical of West Virginia, Inc., to Respond Fully and Adequately to Plaintiffs' Second Set and Third Set of Discovery* state as follows:

**FACTUAL AND PROCEDURAL HITORY**

On November 6, 2023, PrimeCare served its responses to *Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents* ["Plaintiffs' Second Set of Discovery"]. The same day, On November 6, 2023, PrimeCare served its responses to *Plaintiffs' Third Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions* ["Plaintiffs' Third Set of Discovery"].

On November 17, 2023, undersigned counsel directed correspondence to counsel for PrimeCare, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Rule 37.1 of the Local Rules, outlining the deficiencies in PrimeCare's responses to Plaintiff's Second Set of Discovery and Plaintiff's' Third Set of Discovery. See November 17, 2023, letters at **Exhibit 1**. On the same

date, counsel engaged in a telephone call to discuss possible resolution of the matters. A follow-up email outlined the phone call. See November 17, 2023, email at **Exhibit 2**.

As to Plaintiffs' Second Set of Discovery, the Parties are unable to reach an agreement, following three supplemental responses by PrimeCare, regarding PrimeCare's responses to Request for Production 1, Request for Production 3, Request for Production 4, Request for Production 7, and Request for Production 11 which state as follows:

> **1.      Produce all medical records for all putative class members from July 1, 2019, to present.**
>
> RESPONSE: PrimeCare objects to this discovery request on the grounds that at this time, it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, as a class has not been certified against PrimeCare. PrimeCare has produced the medical records for the named Plaintiffs previously in discovery. To the extent Plaintiffs wish to obtain the medical records for all individuals who have been incarcerated at Southern Regional Jail from July 1, 2019, to present, that information is irrelevant and not discoverable until a class is certified. Additionally, PrimeCare ceased providing medical services at Southern Regional Jail on June 25, 2022, and does not have possession of medical records that reflect treatment of any inmates after tha time. Additionally, the requested information is overly broad and unduly burdensome. Without waiving this objection, and to resolve this discovery issue without court intervention, to the extent a class is certified regarding claims asserted against PrimeCare, it will agree to produce a reasonable number of individuals' medical records selected on a random bases with the criteria of such randomized process to be agreed upon with counsel for plaintiffs.
>
> **3.      Produce the complete audit log(s), audit trail(s), and all audit records for all putative class members' electronic medical records from July 1, 2019, to present, sorted chronologically by the date and time of the event, showing the following data fields:**
>
> **a.      Date and time of event, including the exact date and time of the access event and the exit event;**
>
> **b.      User identification;**

 c. **Access device identifying all on-site terminals and remote work stations or devices from which the user obtained access; Type of action performed (additions, deletions, changes, queries, print, copy), specific inquiry, any changes made (with reference to original data) and a delete specification (with reference to deleted information);**

 d. **Identification of the patient data that is accessed;**

 e. **Source of access, please identify the application through which the access occurred;**

 f. **Reason for access;**

 g. **Any alarms, alerts, reminders, notifications and/or warnings messages and identify who was notified of the same; and**

 h. **Every actual or attempted print, transmit, or delete activity by any user at any time between June 26, 2022, to the present.**

RESPONSE: PrimeCare objects to this discovery request on the grounds that at this time, it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, as a class has not been certified against PrimeCare. PrimeCare has produced the medical records for the named Plaintiffs previously in discovery. To the extent Plaintiffs wish to obtain the medical records for all individuals who have been incarcerated at Southern Regional Jail from July 1, 2019 to present, that information is irrelevant and not discoverable until a class is certified. Additionally, PrimeCare ceased providing medical services at Southern Regional Jail on June 25, 2022, and does not have possession of medical records that reflect treatment of any inmates after that time. Additionally, the requested information is overly broad and unduly burdensome. Without waiving this objection, PrimeCare does not have the information requested. PrimeCare believes that this information can only be obtained through CorEMR.

**4.** **Produce all Nurse Sick Call forms for Southern Regional Jail from July 1, 2019, to June 25, 2022.**

RESPONSE: This information has been requested and will be supplemented.

**7.** **Produce all staffing schedules for PrimeCare employees at Southern Regional Jail from July 1, 2019, to present.**

RESPONSE: This information has been requested and will be supplemented.

3

**11.    Produce all notes, reports, summaries, correspondence, or other documents generated as a result of any healthcare record review at Southern Regional Jail from July 1, 2019, to present.**

RESPONSE:  This information has been requested and will be supplemented.

*See* PrimeCare's Responses to Plaintiffs' Second Set of Discovery, at **Exhibit 3**.

On November 27, 2023, the last date agreed upon by the parties for supplementation, PrimeCare supplemented its response to Request for Production 4, Request for Production 7, and Request for Production 11 as follows:

**4.    Produce all Nurse Sick Call forms for Southern Regional Jail from July 1, 2019, to June 25, 2022.**

RESPONSE:  This information has been requested and will be supplemented.

SUPPLEMENTAL RESPONSE: Any and all Nurse Sick Call forms are scanned into the individual medical record.

**7.    Produce all staffing schedules for PrimeCare employees at Southern Regional Jail from July 1, 2019, to present.**

RESPONSE:  This information has been requested and will be supplemented.

SUPPLEMENTAL RESPONSE: The individual staffing schedules are not kept on a historical basis.  However, the staffing statistics have been requested and will be provided no later than November 30, 2023.

**11.    Produce all notes, reports, summaries, correspondence, or other documents generated as a result of any healthcare record review at Southern Regional Jail from July 1, 2019, to present.**

RESPONSE:  This information has been requested and will be supplemented.

SUPPLEMENTAL RESPONSE: Defendant has no documents responsive to this request.

*See* PrimeCare's Third Supplemental Response to Plaintiffs' Second Set of Discovery, in relevant part, at **Exhibit 4**.  Despite never lodging an objection to Request for Production 4 and Request for Production 11, and indicating that the records would be supplemented, PrimeCare made no

such production. Ex. 4. Similarly, PrimeCare failed to produce any documents responsive to Interrogatory No. 7 or to offer an explanation as to when and how the staffing schedules were stored or destroyed. Ex. 4. This is true, despite counsel's agreement that an affidavit indicating what happened to responsive documents would accompany any failure to produce records. Ex. 2.

With respect to Requests for Production 1, 3, and 4 PrimeCare's objections are improperly made and, therefore, waived. Further, the medical records and Nurse Sick Call Forms are relevant, discoverable, reasonable in scope, and sufficiently protected by the *Stipulated HIPPA Qualified Protective Order Regarding Production of Protected Health Information* [ECF 735]. The same is true of the audit logs and trails and, which are within PrimeCare's possession, custody, and/or control. Further, with respect to Requests for Production 4, 7, and 11, Plaintiffs note that PrimeCare agreed to supplement, failed to object, and then made no production.

As to Plaintiffs' Third Set of Discovery, PrimeCare lodged objections to each request, provided no substantive information, and indicated that Plaintiffs would need to seek relief from the Court on all matters addressed in Plaintiffs' Rule 37 correspondence. Ex. 1; Ex. 2; *see also* PrimeCare's Responses to Plaintiffs' Third Set of Discovery, at **Exhibit 5**. Generally, these matters include requests for information regarding specific non-class-representative inmates. Ex. 5. Plaintiffs maintain that this information is indicative of a pattern, practice, and routine of deliberate indifference toward inmates that are members of the putative class. PrimeCare objected to each request and made no responsive production. Ex. 5. Following good-faith correspondence from Plaintiff, PrimeCare indicated that a motion with the Court would be necessary to obtain responsive information. Ex. 1; Ex. 2.

## **LEGAL STANDARD**

Rule 26 of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the  . Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. Rule 26. Rule 34 further requires that a responding party "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P., Rule 34.

A party seeking discovery may, after good-faith conferral on the issues, move for an order compelling discovery where they party fails to produce documents or respond to q request for inspection. Fed. R. Civ. P., Rule 37. Evasive or incomplete responses are deemed a failure to respond. Id.

## ARGUMENT

### I. ENTRY OF AN ORDER COMPELLING A RESPONSE TO REQUEST FOR PRODUCTION NO. 1 IS PROPER.

Plaintiff's request for Production No. 1 sought the production of medical records for all putative class members from July 1, 2019, to present. Ex. 3. PrimeCare's response first objected on the basis that the request was irrelevant and not likely to lead to the discovery of admissible evidence. Id. The objection was based on a summary statement that the Court has not yet granted class certification. Id. No further explanation was offered. This objection is not in conformity with the Federal Rules and the jurisprudence of the Southern District.

The United States District Court for the Southern District of West Virginia requires that objections to reasonable interrogatories "explain or demonstrate precisely why or how the party is entitled to withhold from answering." *Mills v. East Gulf Coal Preparation co., LLC*, 259 F.R.D. 118, 131. (S.D.W.Va. 2009). "Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable." *Id*, 259 F.R.D. at 132. Objections conforming with the rules will contain:

6

> (1) a recital of the parties claims and defenses, (2) a summary of the applicable statutory and/or case law upon which the parties claims and defenses are predicated including the elements of each claim or defense, (3) a discussion of Court decisions considering the breadth or scope of discovery and any limitations upon discovery in the same or a similar type of case and (4) a statement respecting how and/or why the request seeks information which is irrelevant or will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or imposed for an improper purpose.

*Id*. "Failure to state objections specifically in conformity with the Rules will be regarded as a **waiver of those objections**. *Id*. (**emphasis** added). Accordingly, Plaintiffs seeking a ruling that the relevance objection was waived for failure to comport with these requirements and compelling a response.

Plaintiffs further take exception to the applicability of the relevance objection. This matter was filed as and remains a putative class action on behalf of all inmates at Southern Regional Jail. With respect to PrimeCare, the request is limited to inmates from July 1, 2019, to present. Allegations against PrimeCare include deliberate indifference to serious medical needs of inmates at Southern Regional Jail. PrimeCare's medical expert relies upon the provision of medical services by Defendant in conformity with the standard of care. The medical records are crucial evidence bearing directly on these points, both for the substance of the class claims and for the establishment of class elements, such as commonality and typicality. See *Austin v. Foodliner, Inc.*, 2018 WL 1168694 at * 1-*2 (N.D. Cal. 2018) (numerous courts have allowed pre-certification discovery of putative class member confidential information subject to a protective order, without requiring prior notice to class members).

Further, on October 19, 2023, the Court entered the *Stipulated HIPPA Qualified Protective Order Regarding Production of Protected Health Information*, agreed upon and submitted jointly by the Parties. The purpose of the Order was to ensure that the Parties' protected the privacy of any inmate whose health information was requested or produced in this matter. Additionally,

PrimeCare's willingness to produce grievance logs and other unredacted document following entry of this Order cuts against its argument that information regarding individuals that are not named class representatives is irrelevant.

PrimeCare next objected on the basis that the requested information was overly broad and unduly burdensome. Ex. 3. PrimeCare produced no affidavit or other supporting information to substantiate its objection. The objection and response are devoid of any analysis of "the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The objection further fails to comply with the requirements set forth in *Mills*, *supra*. Accordingly, Plaintiffs seek a ruling that the insufficient objection is waived and compelling a response.

Plaintiffs further seek an order determining that the production of the putative class members' medical records would not be overly burdensome considering the factors set forth in Rule 26. This is a putative class action asserting constitutional violations based upon failure to provide adequate medical care to all inmates at Southern Regional Jail. Medical records for the putative class members are central to the issues at the heart of this matter and, therefore, the burden or expense would need to be substantial to outweigh the benefit of production. Accordingly, Plaintiffs request entry of an order compelling PrimeCare to produce the putative class members' medical records.

**II.    ENTRY OF AN ORDER COMPELLING A RESPONSE TO REQUEST FOR PRODUCTION NO. 3 IS PROPER.**

Request for Production No. 3 sought audit logs and audit trails for all records sought in Request No. 1. Ex. 3. PrimeCare lodged substantially similar objections and responses as it did to Request No.1. Ex. 3. For the reasons set forth hereinabove, Plaintiffs request that these

objections be deemed waived and/or Defendant be compelled to produce responsive information. Plaintiffs further state that the timing and editing of medical record entries is both discoverable and relevant in this action given the nature of the allegations and the evidence of undue delay in providing medical treatment to inmates. Moreover, Plaintiffs state that PrimeCare's objection that it stopped providing medical care effective June 25, 2022, is not pertinent to the request, inasmuch as PrimeCare was presumably still capable of editing medical records past that date.

PrimeCare further asserted that the requested audit information could only be obtained through its electronic medical records system - CorEMR and that PrimeCare "does not have the information requested." This response does not accurately reflect the proper standard under Rule 34, which requires production of items in a party's "possession, custody, or control." PrimeCare undoubtedly has possession, custody, or control of its own electronic medical records. Nevertheless, following good-faith communication on this matter, PrimeCare has refused to provide a substantive response. Accordingly, Plaintiffs seek entry of an order compelling production.

### III. ENTRY OF AN ORDER COMPELLING A RESPONSE TO REQUEST FOR PRODUCTION NO. 4 IS PROPER.

Request for Production No. 4 sought production of all Nurse Sick Calls for Southern Regional Jail from July 1, 2019, to June 25, 2022. Ex. 3. PrimeCare made no objection to the production of this information. Ex. 3. Rather, PrimeCare indicated that the "information has been requested and will be supplemented." Ex. 3. During conferral, PrimCare advised that the Nurse Sick Call records are contained in the individuals' medical records, and that Plaintiff would need to seek a ruling from the Court. Ex. 2. PrimeCare subsequently supplemented its response to indicate that "[a]ny and all Nurse Sick Call forms are scanned into the individual medial record." Ex. 5. At no point has PrimeCare made any objection regarding why it cannot and has not

9

produced the Nurse Sick Calls regardless of where the records are retained. Accordingly, Plaintiffs maintain that PrimeCare has waived any objection to Request for Production 4 or, in the alternative, that any objection to Request for Production 4 is improper. Plaintiffs seek entry of an order compelling a response to Request for Production 4.

    **IV.    ENTRY OR AN ORDER COMPELLING A RESPONSE TO REQUEST FOR PRODUCTION NO. 7 IS PROPER.**

Request for Production 7 sought the production of all staffing schedules for PrimeCare employees at Southern Regional Jail from July 1, 2019, to present. Ex. 3. As an initial matter, Plaintiffs are willing to limit this request to July 1, 2019, through June 25, 2022. PrimeCare responded that the information had been requested and would be supplemented. Ex. 3. No objection was lodged. Ex. 3. During the good-faith phone call, PrimeCare indicated that it could produce an indicator of the number of staff that should have been on each shift, but that it understood that the schedules reflecting actual staffing were not kept. Ex. 2. Counsel for Plaintiffs requested that either a responsive supplementation or an affidavit indicating when and how any documents were destroyed would be supplemented. Ex. 2.

PrimeCare supplemented only to indicate that "individual staffing schedules are not kept on a historical basis. However, staffing statistics have been requested and will be provided no later than November 30, 2023." Ex. 4. No objection was made, nor was any affidavit provided pursuant to the parties' good-faith communications. Ex. 4. Moreover, no supplementation of the staffing statistics has been made as of the date of this filing. Accordingly, Plaintiffs request entry of an order compelling PrimeCare to supplement responsive information, inclusive of an affidavit indicating how, when, and by whom responsive documents were destroyed.

## V. ENTRY OF AN ORDER COMPELLING A REASPONSE TO REQUEST FOR PRODUCTION NO. 11 IS PROPER.

Request for Production 11 sought production of all notes, reports, summaries, correspondence, or other documents generated as a result of any healthcare record review at Southern Regional Jail from July 1, 2019, to present. Ex. 3. PrimeCare responded that the information "has been requested and will be supplemented." Ex. 3. No objection was lodged. Ex. 3. This request was not made part of good-faith correspondence inasmuch as PrimeCare did not object and indicated it would supplement a response. Instead, PrimeCare supplemented to indicate only that "Defendant has no documents responsive to this request." Ex. 4. This response is inconsistent with both PrimeCare's initial response and PrimeCare's corporate representative testimony:

> Q: This standard also talks about health record reviews, correct?
>
> A: Yes.
>
> Q: What does a health record review entail?
>
> A: You go into the chart – say you're auditing the care an treatment of pregnant females. You pull 5 percent of your pregnant female charts. If there is not 5 percent, you try and get as many as you can, no less than 5 but sometime with pregnant females you may not have that, and then you go through the audit process. You know, was education provided at the intake. So the person would go under the individual's intake they were provided on that. Another indicator is has outside appointment been made with the OBGYN, so they'd go into the chart. Yes, there was an appointment this day, there is another one coming up. Were prenatal – so it's a long list of what needs to be done. Are vitals being recorded. And you go into the chart and is it being done; if it's don it's complied, if it's no, no. And then you tally that up to see what level of compliance you have.
>
> Q: You mentioned – you mentioned pregnant inmates?
>
> A: Yes.
>
> Q: And healthcare or a record review on that par4ticular issues. Was there a list of issues that were done annually for health record reviews?

11

> A: Yes, there is a rotation. You can't - - you can't do every standard.
>
> Q: Sure.
>
> A: So, yes, you will pick. And what we've done with our compliance indicators have similar applicability to different standards. So if, for example, vital signs, if you're looking at vital signs for a chronic care patient, every time a chronic care patient comes in are there being vital signs taken or offered. And you check them off, and if they are no then is that a problem with just chronic care because there are other vital sign indicators in the pregnant female, in the detox or in a bunch of other patient platforms.
>
> Q: How many categories, I'll just refer to them as categories, you know, you just mentioned detoxing or chronic care, pregnant, do you know how many categories of, you know, medical issues are a part of the annual healthcare record review at PrimeCare when they were at Southern Regional Jail?
>
> A: Did you say annual record –
>
> Q: Yes –
>
> A: **It occurs on a monthly basis.**
>
> […]
>
> Q: So would that violate the standard if Dr. Rashid was not involved in the healthcare record reviews?
>
> A: It's only one compliance indicator. So one compliance indicator doesn't violate a standard **particularly if you can establish that sufficient similar or other safeguards were taken or reviews were occurring** to ensure that the audit has credibility.

[PrimeCare 30(b) 97-101, *passim*], at **Exhibit 6**. The Standard referenced during the testimony is National Commission on Correctional Healthcare ["NCCHC"] Standard JA 06 Continuous Quality Improvement Program. **Exhibit 7**. The Standard, deemed essential by NCCHC, dictates that "Health record reviews are done under the guidance of the responsible physician or designee to ensure that appropriate care is ordered and implemented and that care is coordinated by all health staff including medical, dental, mental health, and nursing." Ex. 7. "Health record reviews" are

12

defined by the Standard as "systematic review of the health record using a standardized form or audit tool to determine whether specific elements related to quality of care provided are adequately documented. Ex. 7.

PrimeCare's testified it participates in health record reviews on a monthly basis. Ex. 6. NCCHC requires health record revies to be documented. Ex. 7. Despite this, and despite PrimeCare's statement that it would search for and produce responsive documents, it now maintains that it has no responsive documents. Ex. 4. Plaintiffs seek an order of the court compelling production or, in the alternative, requiring that PrimeCare provide a response containing an explanation regarding the whereabouts and destruction of responsive documents.

## VI. ENTRY OF AN ORDER COMPELLING PRIMECARE TO RESPOND TO PLAINTIFFS' THIRD SET OF DISCOVERY IS PROPER.

Plaintiffs' Third Set of Discovery sought information from PrimeCare regarding the care provided to certain putative class members. Ex. 5. Specifically, Plaintiffs sought information regarding care provided to Nicholas Van Buren, Richard Wriston, Timothy Considine, Cameron Dunbrack, Anthony Brown, and John Jarrell. Ex. 5. PrimeCare objected and refused to respond to the majority of these requests. Ex. 5. Following good-faith correspondence from Plaintiffs' counsel, PrimeCare reiterated its objections. Accordingly, Plaintiffs now seek entry of an order compelling PrimeCare to respond to the following discovery requests contained in Plaintiffs' Third Set of Discovery.

### A. Interrogatory No. 1

This interrogatory sought the identity of all PrimeCare employees involved in the care of the above-named putative class members. Ex. 5. In essence, this request was one for identification of fact witnesses in accordance with Rule 26. PrimeCare objected to the request as being irrelevant and not likely to lead to the discovery of admissible evidence. Ex. 5. PrimeCare then

13

treated the request as one for medical records of all putative class members and indicated that it would produce such records upon class certification. Ex. 5. As detailed hereinabove, PrimeCare's objection is not sufficiently asserted, nor is it applicable to the present request. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to respond to Interrogatory 1 with the identity of the individuals providing medical care to the listed putative class members.

**B. Interrogatory No. 2**

This request sought to discover whether PrimeCare determined that Nicholas VanBuren was suicidal or had expressed any suicidal ideation. PrimeCare responded by reiterating its form relevance objection. For reasons set forth herein, PrimeCare's objection is not sufficiently asserted, nor is it applicable to the present request. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to respond to Interrogatory 2 with the identity of the individuals providing medical care to the listed putative class members.

**C. Interrogatory Nos. 4, 7, 10, 13, 16, 19[1]**

These requests sought the identity of anyone who reviewed medical records for the identified putative class members. Ex. 5. PrimeCare responded by reiterating its form relevance objection. For reasons set forth herein, PrimeCare's objection is not sufficiently asserted, nor is it applicable to the present request. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to respond to Interrogatories 4, 7, 10, 13, 16, and 19 with the identity of the individuals providing medical care to the listed putative class members.

---

[1] It is worth noting that PrimeCare responded to Interrogatory Nos. 3, 6, 9, 12, 15, and 18 asking whether PrimeCare adhered to WVDCR's policies and procedures while providing healthcare to the identified individuals. Ex. 5. PrimeCare responded in the affirmative, indicating that it did comply with applicable policies. Ex. 5. No objection was made. Ex. 5. PrimeCare's willingness to respond to interrogatories regarding these putative class members where the answer serves them belies their relevance objection to Plaintiffs' other requests detailed herein.

**D. Interrogatory Nos. 5, 8, 11, 14, 17, 20**

These requests sought to determine whether medical staff for PrimeCare deviated from the standard of care with respect to the individuals identified in Interrogatory No.1, respectively. Ex. 5. If PrimeCare denied breaching the standard of care, Plaintiff sought the basis for the opinion. Ex. 5.

PrimeCare responded to each request as being irrelevant and as calling for a legal conclusion. Ex. 5. The sufficiency and basis for the relevancy objection have been addressed herein. To the extent PrimeCare asserts these individuals are not parties to this suit, the assertion is incorrect inasmuch as these individuals are putative class members. Moreover, the treatment of these individuals is evidence of PrimeCare's patterns, practices, habits, and routines in providing treatment to all putative class members.

PrimeCare's objection regarding a legal conclusion is inconsistent with Rule 33, which provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion that relates to fact or the application of law to fact." Fed. R. Civ. P., Rule 33. Inasmuch as the requests sought the application of law to fact, a response was merited. Accordingly, Plaintiffs request an order from the Court compelling a response to Interrogatories 5, 8, 11, 14, 17, and 20.

**E. Request for Production Nos. 1-6**

These requests sought medical records for certain putative class members. Ex. 5. PrimeCare responded by reiterating its form relevance objection. Ex. 5. For reasons set forth herein, PrimeCare's objection is not sufficiently asserted, nor is it applicable to the present request. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to respond to Requests for Production 1 through 6 by producing the medical records for the identified putative class members.

**F. Request for Production No. 8**.

This request sought all documents in PrimeCare's possession relating to any quality assurance review for the deaths of certain individuals. Ex. 5. While PrimeCare identified several mortality review documents, it did not identify any communications, correspondence, notes, memoranda, or other documents. Ex. 5. Plaintiffs sought supplementation of this request and were advised by PrimeCare that any supplementation would require an order of the Court. Ex. 1; Ex. 2. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to supplement the response to Request No. 8.

**G. Request for Production No. 9**

This request sought production of all documents evidencing any investigation or review into the quality of medical care being provided to inmates of Southern Regional Jail conducted by anyone. Ex. 5. PrimeCare responded by referencing the mortality review documents for certain individuals specifically identified in this set of discovery. Ex. 5. Plaintiff directed Rule 37 correspondence indicating that this request more broadly sought any such documents relating to the quality of healthcare provided to any inmate. Ex. 2. This would include, but not be limited to, any review by PrimeCare, NCCHC, WVDOCR, or any other entity. PrimeCare responded by indicating that any supplementation would require an order from the Court. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to supplement the response to Request No. 9.

**H. Request for Production No. 10**.

This request sought production of any written statements taken of any healthcare provider who participated in, or had knowledge of the care provided to the identified individuals. Ex. 5. PrimeCare did not object nor did it sufficiently identify responsive documents in accordance with the requirements of Rule 34. Ex. 5. Rather, PrimeCare stated that if the information existed, it

16

would be in CID Reports. Ex. 5.

Rule 34 requires documents be identified with sufficient specificity to permit the receiving party to identify those documents. PrimeCare is certainly in a superior position to know whether CID reports exist and to identify their whereabouts. Plaintiff directed good-faith correspondence seeking an adequate response. Ex. 1. PrimeCare indicated that any supplementation would require an order of the Court. Ex. 2. Accordingly, Plaintiffs seek entry of an order compelling PrimeCare to supplement the response to Request No. 10.

### I. Request for Production No. 11

This request sought medical records requests for the identified individuals. Ex. 5. PrimeCare responded that this information would be contained in the respective individuals' medical records. Ex. 5. In the absence of production of the records, the answer is nonresponsive. Accordingly, Plaintiff incorporates the above statements regarding Requests 1-6 and for the same reasons respectfully requests that the Court enter an order compelling PrimeCare to respond.

### J. Request for Production No. 12

This request sought reviews of the quality of PrimeCare's medical care at SRJ from September 22, 2020, the June 25, 2020, performed by or at the request of anyone with the State of West Virginia. Ex. 5. PrimeCare responded that it had no responsive documents. Ex. 5. The response does not align with the language of Rule 34, which requires production of documents in a party's "possession, custody, or control." Following good-faith correspondence, PrimeCare advised that Plaintiff would need to move for relief to obtain supplemental responses. Ex. 2. Accordingly, Plaintiff respectfully requests that the Court enter an order compelling PrimeCare to respond in accordance with the language of Rule 34.

**K. Request for Admission Nos. 1, 3, 21, 22, 23**

These requests sought the following respective admissions:

- That no CID investigator nor any investigator contacted PrimeCare or its employees or agents regarding the death of Nicholas Van Buren
- Nicholas Van Buren exhibited suicidal tendencies while incarcerated at SRJ
- That inmate Justin Moore was placed on suicide watch on April 14, 2022, without receiving an incident report, the same day as the death of Nicholas Van Buren
- That Benjamin Hawk was placed on suicide watch on April 14, 2022, without receiving an incident report, the same day as the death of Nicholas Van Buren.
- That Roger Watkins was placed on suicide watch on April 14, 2022, without receiving an incident report, the same day as the death of Nicholas Van Buren.

Ex. 5. For each of the foregoing requests PrimeCare incorporated its response to Request for Production No. 1 and/or objected based on relevancy due to the lack of class certification. Ex. 5. As set forth more fully herein, these objections are factually and procedurally insufficient. Following good-faith conferral, PrimeCare has not supplemented its responses. Ex. 2. Accordingly, Plaintiffs seek entry of an order compelling a more definite answer or, otherwise, deeming these requests admitted.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter an order compelling Defendant PrimeCare Medical of West Virginia, Inc., to respond fully and adequately to Plaintiffs' Second Set of Discovery and Plaintiffs' Third Set of Discovery as set forth more fully herein. Plaintiffs further request all such other relief as the Court deems just and proper.

**MICHAEL D. ROSE, *et al.*, on their own behalf and on behalf of all those similarly situated,**
**By Counsel**

*/s/ Amanda J. Taylor*
Amanda J. Taylor
Taylor, Hinkle & Taylor
115 ½ S. Kanawha St.
Beckley, WV 25801

18

        304.894.8733 (P)
        681.245.6236 (F)
        amanda@thtwv.com

        Stephen P. New (WVSB No. 7756)
        Emilee B. Wooldridge (WVSB No. 14310)
        Stephen New & Associates
        430 Harper Park Drive
        Beckley, West Virginia 25801
        Ph: (304) 250-6017
        Fax: (304) 250-6012

        Timothy Lupardus (WVSB No. 6252)
        The Lupardus Law Office
        275 Bearhole Road
        Pineville, West Virginia 24874
        (304) 732-0250
        office@luparduslaw.com

        Zachary Whitten (WVSB No. 13709)
        The Whitten Law Office
        P.O. Box 753
        Pineville, West Virginia 24874
        zwhittenlaw@gmail.com

        Robert Dunlap (WVSB No. 10012)
        Robert Dunlap & Associates
        208 Main Street
        Beckley, West Virginia 25801
        (304) 255-4762
        *Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| **MICHAEL D. ROSE,** *et al.***,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 5:22-cv-00405 |
| ) | (Judge Volk) |
| **BETSY JIVIDEN,** *et al***.** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that a true and correct copy of the foregoing *Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendant PrimeCare Medical of West Virginia, Inc., to Respond Fully and Adequately to Plaintiffs' Second Set and Third Set of Discovery* was served this day, December 4, 2023, via the CM/ECF System on all counsel of record.

*/s/ Amanda J. Taylor*
Amanda J. Taylor (WVSB No. 11635)

20