## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**MICHAEL D. ROSE**, *et al.,*     )
     )
     **Plaintiffs,**     )
     )
**v.**     )     **Civil Action No. 5:22-cv-00405**
     )     **(Judge Volk)**
**JEFF S. SANDY**, *et al.,*     )
     )
     **Defendants.**     )
     )

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL

### I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Michael D. Rose, Robert C. Church, Sr., Nicole Henry, Edward L. Harmon, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger, individually and on behalf of a putative class of others similarly situated (collectively, "Plaintiffs" ) and Defendants Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the West Virginia Division of Corrections and Rehabilitation, Betsy Jividen, Brad Douglas, and Michael Francis (collectively, "Settling Defendants) (all collectively, "Settling Parties") submit this memorandum in support of a motion for a Preliminary Approval Order that, among other things, preliminarily approves the Settlement Agreement and Release ("Agreement") (Exhibit A)[1] in this Class Action and for settlement purposes only provisionally certifies pursuant to Rule 23(a) and (b)(1)(B) a Class defined as all

---

[1] The definitions set forth in the Agreement are hereby adopted and incorporated into this Memorandum.

persons who were incarcerated at the Southern Regional Jail for a period greater than two (2) days during the Class Period.

## II.   STATEMENT OF THE CASE AND SETTLEMENT NEGOTIATIONS

Plaintiffs filed their original class action complaint on September 22, 2022, alleging unconstitutional conditions of confinement at Southern Regional Jail in Beaver, Raleigh County, West Virginia against Settling Defendants, among others. Plaintiffs filed an amended class action complaint on October 7, 2022, and a second amended class action complaint thereafter on July 17, 2023. Plaintiffs claim on behalf of themselves and all those similarly situated: (1) Eighth Amendment violations under 42 U.S.C. § 1983 – conditions of confinement; (2) Eighth Amendment Violations under 42 U.S.C. § 1983 - deliberate indifference to serious medical needs; (3) conspiracy to commit Eighth Amendment violations under 42 U.S.C. § 1983; (4) Fourteenth Amendment Violations under 42 U.S.C. § 1983- conditions of confinement; (5) Fourteenth Amendment violations under 42 U.S.C. § 1983 – deliberate indifference to serious medical needs; (6) conspiracy to commit Fourteenth Amendment Violations under 42 U.S.C. § 1983; (7) failure to intervene/bystander liability under 42 U.S.C. § 1983; (8) negligence; (9) gross negligence; (10) *prima facie* negligence; (11) intentional infliction of emotional distress/tort of outrage; (12) common law civil conspiracy; (13) violation of the Americans with Disabilities Act; and (14) temporary injunctive relief under Fed. R. Civ. P. 65.

Settling Defendants joined a motion to dismiss the second amended class action complaint filed on July 31, 2023, and that motion has been denied as moot without prejudice as to Settling Defendants. Plaintiffs filed a motion for class certification on August 29, 2023, and that motion has been denied as moot without prejudice as to Settling Defendants. Plaintiffs filed a motion to file a third amended complaint on October 16, 2023, and that motion has been denied as moot without prejudice as to Settling Defendants. On October 30, 2023, Magistrate Judge Aboulhosn entered an Order and Proposed Findings and Recommendations that recommended granting

Plaintiffs' expedited motion to compel Defendants Sandy and Douglas to respond fully and adequately to discovery and to deem requests for admission admitted, and sanctions, and recommended granting Plaintiffs' motion for a finding of spoliation and for sanctions against Defendants Sandy, Jividen, Douglas, and Marshall, and the Court has held that to the extent approval of this Agreement is withheld, a new deadline will be set for objections to the Order and Proposed Findings and Recommendations.[2]

Plaintiffs' attorneys Stephen P. New, Emilee Wooldridge, Amanda Taylor, Timothy Lupardus, Zachary Whitten, and Robert Dunlap ("Class Counsel") have conducted extensive investigation of the allegations in the Proceedings and have vigorously prosecuted Plaintiffs' claims. Settling Defendants have vigorously defended against Plaintiffs' claims and have denied and continue to deny any and all allegations of wrongdoing and any and all liability as to them with respect to the Class Action.

Class Counsel and Settling Defendants' Counsel began arms-length settlement discussions in October 2023 and determined that the following conditions exist: (1) the totals of the aggregated liquidated claims set definitely at their maximum may exceed the State of West Virginia's liability insurance coverage available for satisfying them when considering *Pittsburgh Elevator Company v. West Virginia Board of Regents*, 310 S.E.2d 675 (W. Va. 1983); (2) the whole of the State's insurance policy limits should be devoted to pay the overwhelming claims; and  (3) Class Members identified by a common theory of recovery may be treated equitably among themselves. Class Counsel have concluded, after extensive factual investigation  and after carefully considering the circumstances of the Class Action, that it is in Class Members' best interests to enter into this Agreement to avoid the uncertainties, burdens, risks, and delays inherent in litigation, and to assure that the substantial benefits reflected herein are obtained for the Class in an expeditious manner, and, further, that this Agreement is fair, reasonable,

---

[2] Settling Parties have filed a joint motion for clarification of the Order entered November 15, 2023, or other relief, and that motion is pending. See ECF No. 837.

adequate, and in the best interests of Class Members. Settling Defendants have concluded that, despite their defenses to the claims and allegations, this Settlement Agreement is fair, reasonable, and adequate inasmuch as it is beneficial to reduce and avoid the further expense, burden, and inconvenience of protracted litigation, and to resolve finally and completely the Released Claims.

## III.    <u>THE PURPOSE OF THE SETTLEMENT AND THE SETTLEMENT FUND</u>

This Settlement Agreement is entered into among Settling Parties to conclusively and comprehensively settle the Released Claims.

As consideration, within fourteen (14) days of the execution by Settling Parties of this Settlement Agreement, Settling Defendants shall transfer $50,000.00 to the Claims Administration Fund, to be held in trust, under the supervision and continuing jurisdiction of the Court, to pay for the Claims Administrator's expenses and fees necessary for administration of the Settlement, including providing the Notices set forth in this Settlement Agreement, up to $50,000.00. In the event that Claims Administrator fees and costs exceed $50,000.00, they shall be paid from the Settlement Fund under the supervision and continuing jurisdiction of the Court. In the event that Claims Administrator fees and costs are less than $50,000.00, the remainder shall be refunded to Settling Defendants. Class Representatives will receive incentive awards up to $1,000.00. Within fourteen (14) days of entry of a Final Approval Order and Final Judgment, Settling Defendants shall authorize BRIM to transfer $4,000,000.00 to the Settlement Fund, consisting of the limits of the State of West Virginia's insurance policies, including: National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 172-89-16 for coverage from July 1, 2020 to July 1, 2021; National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 654-71-29 for coverage from July 1, 2021 to July 1, 2022; and National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 688-22-75 for coverage from July 1, 2022 to July 1, 2023;

and National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 991-17-59 for coverage from July 1, 2023 to July 1, 2024.

## IV.    DISCUSSION

### A.    Standard of Decision

Settlement of class actions must be approved by the Court pursuant to Federal Rule of Civil Procedure 23(e). *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Such approval typically involves a two-step process of preliminary and final approval. *See Manual for Complex Litig.*, § 21.632 (4th ed. 2004) (hereinafter "*MCL 4th*") ("Review of a proposed class action settlement generally involves two hearings . . . .").

At the preliminary approval stage, the court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). . . . The court must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Dewhurst v. Century Aluminum Co.*, Civil Action No. 2:09-1546, 2017 U.S. Dist. LEXIS 84003 (S.D. W. Va. May 31, 2017).

The preliminary approval process is not "a definitive proceeding on the fairness of the proposed settlement" agreement, and, for this reason, "the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate."  *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citations omitted). As one court has explained:

> At the preliminary approval stage, the bar to meet the fair, reasonable and adequate standard is lowered, and the court is required to determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or

segments of the class, or excessive compensation of attorneys, and whether it
appears to fall within the range of possible approval.

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa.
2014) (quotation marks omitted).

### B.    The Settlement Agreement Is Fair, Reasonable, and Adequate.

In assessing the fairness of a proposed settlement, the Court must look to the following
factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that
has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel
in the relevant area of class action litigation. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube
Sec. Litig.*, 927 F.2d at 159; Groves v. Roy G. Hildreth & Son, Inc., No. 2:08-cv-820, 2011 WL
4382708, at *4 (S.D.W. Va. Sept. 20, 2011); *Loudermilk Servs., Inc. v. Marathon Petroleum Co.
LLC*, No. 3:04cv966, 2009 WL 728518, at *8 (S.D.W. Va. Mar. 18, 2009). In determining the
adequacy of the proposed settlement, the Court must consider: (1) relative strength of the plaintiff's
case on the merits; (2) existence of any difficulties of proof or strong defenses the plaintiff is likely
to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional
litigation; (4) solvency of the defendant and likelihood of recovery of a litigated judgment; and (5)
degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec.
Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL
728518, at *3.

These factors support a finding that the Settlement Agreement is fair, reasonable, and
adequate. As set forth above, the Class Action has been pending since September 22, 2022. Since
then, Settling Parties have conducted extensive written discovery and depositions.  In addition,
Settling parties have engaged in a vigorous motions practice, including the filing of a dispositive
motion, a motion for class certification, and a motion for leave to file a third amended complaint

that, as a result of the Settlement, have been denied as moot without prejudice as to Settling Defendants.

Also as set forth above, Class Counsel and Settling Defendants' Counsel began arms-length settlement discussions in October 2023 and determined that the following conditions exist: (1) the totals of the aggregated liquidated claims set definitely at their maximum may exceed the State of West Virginia's liability insurance coverage available for satisfying them when considering *Pittsburgh Elevator Company v. West Virginia Board of Regents*, 310 S.E.2d 675 (W. Va. 1983); (2) the whole of the State's insurance policy limits should be devoted to pay the overwhelming claims; and  (3) Class Members identified by a common theory of recovery may be treated equitably among themselves. Class Counsel have concluded, after extensive factual investigation  and after carefully considering the circumstances of the Class Action, that it is in Class Members' best interests to enter into this Agreement to avoid the uncertainties, burdens, risks, and delays inherent in litigation, and to assure that the substantial benefits reflected herein are obtained for the Class in an expeditious manner, and, further, that this Agreement is fair, reasonable, adequate, and in the best interests of Class Members. Settling Defendants have concluded that, despite their defenses to the claims and allegations, this Settlement Agreement is fair, reasonable, and adequate inasmuch as it is beneficial to reduce and avoid the further expense, burden, and inconvenience of protracted litigation, and to resolve finally and completely the Released Claims as to them.

Plaintiffs and Class Counsel recognize the expense and length of continued prosecution of the Class Action against Settling Defendants through trial and appeals. They have considered the difficulties, expense, delay, uncertainty, and risk of continued litigation, especially given the problems of proof and defenses to be asserted in the Class Action and the limited financial resources of Settling Defendants, who may not possess sufficient insurance to satisfy all claims of

the Class Members if judgment is obtained against Settling Defendants. Plaintiffs and Class Counsel have therefore determined that the Settlement is in the best interests of the class.

Finally, Settling Parties have agreed to the distribution of the entire Net Settlement Fund pro rata to the Authorized Claimants in proportion to the damages categories based upon a Class Member's cumulative length of incarceration at the Southern Regional Jail. For these reasons and the reasons discussed further below, the Court should find preliminarily that the Settlement Agreement is fair, reasonable, and adequate as a limited fund Settlement under Rules 23(a) and (b)(1)(B).

### C.   The Class Should Be Provisionally Certified Under Rule 23(a) and (b)(1)(B).

To grant preliminary approval to a settlement when a class has not yet been certified, a court determines whether the class proposed for settlement purposes is appropriate under Rule 23. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). There are material differences between certifying a litigation class and a settlement class. Notably, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . . for the proposal is that there be no trial." *Id.* The remaining elements of Rule 23(a), and one subsection of Rule 23(b), must, however, be established. *Id.* Thus, a party must satisfy all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and satisfy one of the three subdivisions of Rule 23(b). *Powell v. Huntington Nat'l Bank*, No. 2:13-cv-32179, 2014 U.S. Dist. LEXIS 153750 (S.D. W. Va. Oct. 30, 2014).

For the limited purpose of the Settlement only, Settling Parties agree that the requirements of Rule 23(a) and Rule 23(b)(1)(B) are met and request provisional certification of a Class defined as "all persons who were incarcerated at the Southern Regional Jail for a period greater than two

(2) days during the Class Period.[3] Again, for the limited purpose of the Settlement, the Settling Parties further request the Court to provisionally appoint Plaintiffs Michael D. Rose, Robert C. Church, Sr., Nicole Henry, Edward L. Harmon, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger as Class Representatives and Plaintiffs' counsel Stephen P. New and Emilee B. Wooldridge and the law firms of Stephen New & Associates, Amanda J. Taylor and the law firm of Taylor, Hinkle & Taylor, Timothy P. Lupardus and the Lupardus Law Office, Robert Dunlap and Robert P. Dunlap and Associates PLLC, and Zachary Kyle Whitten and Whitten Law Office as Class Counsel.

### 1.    The Rule 23(a) Factors Are Met.

#### a.    Numerosity

The "numerosity" element, requires that a "class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The test of numerosity is not whether the moving party can establish that joinder is impossible; "rather, the test is impracticability." *In Re Rezulin Litig.*, 585 S.E.2d. 52, 65 (W. Va. 2003). A reviewing court "may properly rely on reasonable estimates of the number of members in the proposed class." *Id*. at 66.

The Class as defined here consists of approximately eight thousand (8,000) current and former inmates of Southern Regional Jail from September 22, 2020, to present. Because inmates come from anywhere in the seven-county area, putative class members potentially reside across the state and beyond. Under these circumstances, not only are the numbers satisfactory for certification purposes, but joinder of the claims of thousands of inmates (former and current), not all of whom reside in West Virginia, would be impracticable. *See id.* at 65 ("Courts have certified class actions where there have been as few as seventeen to twenty members of the class"). *See*

---

[3] The Class Period is defined as the period from September 22, 2020, to the date of the Final Approval Order.

*also*, *Fain v. Crouch*, 342 F.R.D. 109, 114 (S.D. W. Va. 2022) ("courts have generally found numerosity present when a class has 40 or more members. *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020) (citing *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984))"); *Williams v. City of Phila.*, 270 F.R.D. 208, 214-215 (E.D. Pa. 2010) (noting that courts in the Third Circuit "have generally found that a class of 40 or more plaintiffs satisfies the numerosity requirement").Thus, the Class meets the numerosity requirement for settlement purposes.

### b. <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is generally satisfied by a common nucleus of operative facts or law. *In Re Rezulin Litig.*, 528 S.E.2d. at 67; *accord Achem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997) (noting that Rule 23(a)'a commonality requirement, which has a lower threshold than the "more demanding" predominance requirement of Rule 23(b)(3), "may be satisfied by" the shared experience that all members of the class had been exposed to asbestos products).

The commonality requirement is satisfied as Plaintiffs alleged that Settling Defendants have systemic policies that unconstitutionally deprive them of humane conditions of confinement, that Settling Defendants otherwise fail to follow their own policies willfully, and that the ongoing, unremedied conditions also subjected, and continue to subject, the inmates to substantial risks of harm. *See, e.g.*, *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) ("Whether the conditions, practices and policies of defendants, as they relate to PCC's conditions of confinement, are unconstitutional is a common issue for all present and future PCC inmates."); *See also*, *Williams v. City of Phila.*, 270 F.R.D. 208, 215 (E.D. Pa. 2010) ("Plaintiffs have pleaded a system-wide denial of constitutional rights as a result of overcrowding in the PPS."); *Thomas v. Baca*, 231 F.R.D. 397, 400 (C.D. Cal. 2005); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *Braggs*

*v. Dunn*, 317 F.R.D. 634, 656 (M.D. Ala. 2016) (finding commonality "because being subjected to a substantial risk of serious harm is an actionable constitutional injury, even when a prisoner's physical or mental condition has not yet been detrimentally impacted").

Insofar as Plaintiffs allege that Settling Defendants have systemic policies that unconstitutionally deprive the Class of humane conditions of confinement, the commonality requirement is satisfied for settlement purposes.

### c.      <u>Typicality</u>

To meet the typicality requirement, Plaintiffs' claims must be "typical of the claims or defenses of the class." Rule 23(a)(3). "The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *D&M Farms v. Birdsong Corp.*, No. 2:19cv463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 2, 2020).

Again, Plaintiffs' legal theories are based upon the practices, policies, and conditions at Southern Regional Jail. Plaintiffs allege violations of the Eighth and Fourteenth Amendments on behalf of themselves and the Class. Plaintiffs and Class Members were or are housed at Southern Regional Jail. Insofar as Plaintiffs allege that Plaintiffs and the Class were and are subject to the same systemic policies that allegedly unconstitutionally deprive Plaintiffs and the Class of humane conditions of confinement, the typicality requirement is satisfied for settlement purposes. *See Rentschler*, 160 F.R.D. at 116, citing *Rodriguez v. McKinney*, 156 F.R.D. 112, 114 (E.D. Pa. 1994) (Typicality requirement met when "the representative parties in this case and the members of the class have been subjected to the same allegedly unlawful policies and conditions at PCC. Furthermore, the claims of plaintiffs and members of the class are all based on the same legal theories, the same arguments of unconstitutionality.").

### d.     Adequacy of Representation

#### i.     Plaintiffs Are Adequate Class Representatives.

Federal Rule of Civil Procedure 23(a)(4) requires that representative parties "fairly and adequately protect the interests of the class." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W. Va. 2005) (finding no conflict of interest where all members of the settlement class desired to recover damages immediately for alleged injuries). *See also*, *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental. A conflict is not fundamental when, as here, all class members share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants]. Moreover, a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical.") (citation and internal quotation marks omitted).

Plaintiffs Michael D. Rose, Robert C. Church, Sr., Nicole Henry, Edward L. Harmon, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger and the Class Members all share the same interests. Further, Plaintiffs and the Class Members all desire compensation for their injuries. Plaintiffs are adequate Class Representatives for settlement purposes.

#### ii.     Plaintiffs' Counsel Are Adequate Class Counsel.

In addition to the requirement that Plaintiffs be adequate Class Representatives, Plaintiffs' Counsel must also be adequate Class Counsel. *See Riggleman v. Clarke*, No. 5:17cv63, 2019 WL 1903795, at *1 (W.D. Va. Apr. 29, 2019). They must also meet the requirements of Rule 23(g) to be appointed Class Counsel. Factors that the court must consider under Rule 23(g) include:

> i. the work counsel has done in identifying or investigating potential claims in the action;
>
> ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

iii. counsel's knowledge of the applicable law; and

iv.  the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g). *See also*, *Blenko v. Cabell Huntington Hosp., Inc.*, No. 3:21-0315,

2022 U.S. Dist. LEXIS 142637, * 14 (S.D. W. Va. Aug. 10, 2022).

Based on these factors, Plaintiffs' counsel Stephen P. New and Emilee B. Wooldridge and the law firms of Stephen New & Associates, Amanda J. Taylor and the law firm of Taylor, Hinkle & Taylor, Timothy P. Lupardus and the Lupardus Law Office, Robert Dunlap and Robert P. Dunlap and Associates PLLC, and Zachary Kyle Whitten and Whitten Law Office are adequate to serve as Class Counsel. Stephen P. New has submitted a declaration outlining his and co-counsel's experience litigating class actions and other complex cases.  As stated above, these Class Counsel performed substantial work in investigating, prosecuting, and negotiating the Settlement Agreement. They are qualified to be appointed and serve as Class Counsel for settlement purposes.

### 2.      Rule 23(b)(1)(B) and the Limited Fund Concept.

 Plaintiffs seek to have certified a "limited fund" class action under Rule 23(b)(1)(B). Under that rule, which is the prong of Rule 23 normally invoked to certify limited fund class actions like this:

> [a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied and, in addition: (1) [t]he prosecution of separate actions by or against individual class members would create a risk of (B) [a]djudications with respect to individual class members which would as a practical matter be dispositive of the interests of the other members not parties to the Individual adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B).

The basic concept of a limited fund settlement is that there is a limited amount of capital available to pay the claims of class members, and the amount available is insufficient to cover all claims.  In the limited fund setting, "equity require[s] absent parties to be represented, joinder being

impractical, where individual claims to be satisfied from the one asset would, as a practical matter, prejudice the rights of absent claimants against a fund inadequate to pay them all." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 836 (1999).

A limited fund has certain unique features. Two in particular stand out. First, a limited fund class is a "mandatory" class in that it definitively resolves all claims within its scope. This is because absent class members may not "opt out" of the settlement and are not required to receive notice of the class action—though notice to absent class members will be provided under Rule 23(e) for the Court to approve a limited fund settlement agreement. *Ortiz*, 527 U.S. at 833 n.13. ("Rule 23[(b)(1)(B)] does not provide for absent class members to receive notice and to exclude themselves from class membership as a matter of right.") (citing 1 H. Newberg & A. Conte, Class Actions § 4.01, p. 4–6 (3d ed. 1992)); *Stott v. Cap. Fin. Serv., Inc.*, 277 F.R.D. 316, 326-27 (N.D. Tex 2011) ("This kind of class action necessarily provides for mandatory participation by class members because allowing class members to opt out of the class and pursue individual claims would deplete the fund to the detriment of other class members.").

Second, upon approving a limited fund class settlement, this Court may enjoin related proceedings so as to preclude the filing of claims that could cause the limited fund to be eroded. *Id*. at 327 (A "[c]ommon feature[] of a 'limited fund' settlement thus include[s] . . . for the approving court to enjoin claims brought in other forums by individual class members that would deplete the fund if the individual class members managed to obtain an award from the defendant.").

These features are essential to fulfill the limited fund's purpose of providing fair and equitable compensation to multiple claimants claiming on a finite fund, without allowing first-comers to be disproportionately compensated while the fund is eroded to the detriment of late-

comers.

### a.    The Rule 23(b)(1)(B) Limited Fund Factors Exist Here.

The limited fund device was developed largely to address situations like this one:  the Settling Defendants' assets are finite and insufficient to satisfy the claims of all claimants, and late-comer litigants may be disadvantaged given wasting, limited assets.  Limited fund class certification benefits all parties under these circumstances by allowing both initial and later claimants to obtain compensation so the earliest claimants do not exhaust the limited pool of funds.

Three features must be present for limited fund class action status.  *Ortiz,* at 838-40.  They are:

(1) the "totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims";

(2) "the whole of the inadequate fund [i]s to be devoted to the overwhelming claims"; and

(3) the "claimants identified by a common theory of recovery [are] treated equitably among themselves."

*Id*.  Here, there is compelling evidence satisfying each of these requirements.

### i.    Factor One: A fund with a limit

First, a limited fund is one in which the total value of claims exceeds the finite assets available to satisfy those claims.  To find a "limited fund," a court must therefore ascertain the total amount of the claims in question.  *See, e.g.*, *Stott*, 277 F.R.D. at 328.

Next, the reviewing court must determine that the fund available to satisfy those claims is finite and is set maximally.  *See Ortiz*, 527 U.S. at 849 ("[T]he settling parties must present not only their agreement, but evidence on which the district court may ascertain the limit . . . of

the fund."); *see also Baker v. Washington Mutual Finance Group, LLC*, 193 Fed. App'x 294, 298 (5th Cir. 2006) (affirming certification of limited fund because, given likely decrease to defendant's net worth in the near future and "the breathtaking costs" of defending against numerous individual lawsuits, $3.5 million was the upper limit of what defendant would be able to pay as punitive damages). And, while set maximally, a limited fund may be comprised of assets from multiple sources. *See, e.g.*, *Stott*, 277 F.R.D. at 322 (approving limited fund consisting of (i) money remaining in defendant's insurance policy and (ii) payment from defendant's net surplus capital).

But "maximally" has boundaries. For instance, a defendant may in appropriate circumstances retain certain assets to satisfy operational business expenses. *See Stott*, 277 F.R.D. at 329, 334 (approving limited fund settlement that did not include all of limited fund defendant's assets because it was the "absolute maximum amount that FINRA ha[d] determined [defendant] c[ould] contribute while maintaining the amount of assets necessary to maintain operations" and "without violating SEC regulations"); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 692-93 (M.D. Ala. 2006) (approving limited fund settlement implicating about 35% of defendant's surplus capital where there was concern "over the company's continuing solvency").

A limited fund may likewise include a risk-discounted portion of a contested insurance policy limit as opposed to full limits, thereby providing prompt payment to claimants and avoiding the costs, risks, and delays of coverage litigation. *See, e.g.*, *Edgerton v. Dewaay Fin. Network LLC*, Nos. LACV6033, LACV6034, 2013 WL 4404708, at *11 (Iowa Dist. Apr. 15, 2013) (approving limited fund settlement agreement with insurance proceeds capped by agreement of parties because "[s]ettlement in this amount without the costs and delays of coverage litigation appear[s] to be in the best interests of the class"); *Stott*, 277 F.R.D. at 330 (engaging in "value discounted by risk"

analysis to approve a limited fund settlement including the remainder of a $2 million sublimit of defendant's applicable insurance policy—about $1.4 million—even though $5 million aggregate policy limit potentially applied); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *9 n.11 (E.D. Mich. Dec. 20, 1996) (noting insurance proceeds included in limited fund settlement were $1.5 million less than limit of policies, but finding this amount was warranted "in order to prevent further depletion of the available insurance proceeds through individual settlements and the risk of the insurance carrier's success in a declaratory relief action to disclaim coverage thereby leaving no insurance proceeds at all for distribution to injured claimants").

Further, a limited fund need not include the personal assets of individual defendants released through a class settlement. *See, e.g.*, *Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. at 181 (approving release of claims against treating physicians—notwithstanding that their assets were not part of the limited fund—because claims against them had "the same underlying factual predicate as the products liability claims of the settlement class").

Once the value of the limited fund has been established to a reasonable degree, the court next considers whether the fund is insufficient to satisfy the aggregated liquidated claims of all claimants. *See, e.g.*, *Stott*, 277 F.R.D. at 326 ("In a traditional 'limited f[u]nd' situation, the aggregation of the claims would be greater than the amount made available in this tangible f[u]nd.").

Here, the available assets of the Settling Defendants, set maximally, establish a limited fund. As described in the Agreement, following extensive negotiations with counsel, the Settling Defendants have made available assets for a limited fund settlement treatment in full accord with the limited fund provisions described above, including four insurance policies in the amount of $1,000,000.00 each: National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No.

17

GL 172-89-16 for coverage from July 1, 2020 to July 1, 2021; National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 654-71-29 for coverage from July 1, 2021 to July 1, 2022; and National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 688-22-75 for coverage from July 1, 2022 to July 1, 2023; and National Union Fire Insurance Company of Pittsburgh, PA (AIG) Policy No. GL 991-17-59 for coverage from July 1, 2023 to July 1, 2024.

Upon extensive negotiations and based upon supportive legal precedent, the personal assets of the Settling Defendants have not been included in the fund. Releases from liability will still apply to these individuals to the extent any future claimant seeks to recover against them based upon the same underlying, factual predicate as the claims in this suit. *See Orthopedic Bone Screws prods. Liab. Litig*., 176 F. R. D. at 181.

Even set maximally, this fund is inadequate to satisfy the multitude of claims already asserted, and which could be filed in the future, against the Settling Defendants. Preliminary determinations by the Settling Defendants and Class Counsel indicate that the aggregate potential value of claims against the Settling Defendants could far in excess of the proposed settlement amount, and Class Counsel believe that the claims have a value far in excess of this amount. *See* Affidavit of Attorney Stephen P. New. By any fair calculation, this value exceeds and would exhaust the available fund. As such, the first *Ortiz* factor is satisfied.

### ii.       Factor Two:  Use of fund to pay claims

There is generally little controversy concerning the second *Ortiz* factor so long as evidence before the court indicates that the entire fund, with recognized exceptions, will be used to pay claimants.  *See, e.g.*, *Stott*, 277 F.R.D. at 327-28 ("Regarding the second *Ortiz* factor, it is clear that the whole of the settlement fund [less costs and attorneys' fees] will be devoted to

paying claimants."); *Edgerton*, 2013 WL 4404708, at *15 (approving limited fund from which attorney's fees and costs were paid); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 404 (Del. Super. 2012) (attorney's fees and costs, fees for the claims administrator, fee for mediators, fees for professionals engaged in administration of settlement fund paid out of limited fund); *In re Rio Hair Naturalizer*, 1996 WL 780512, at *18 (attorneys' fees and costs, fees for experts, costs and expenses of administering the settlement fund paid out of limited fund). That is the case here. As set forth in the Agreement, the vast majority of the fund will be used to satisfy claims of the members of the Class. The remainder of the fund in its entirety will be saved for certain funds allocated if and as appropriate for claims administration[4], notice, attorneys' fees, and ancillary costs, which will be devoted to satisfying the claims of eligible members of the class, thus meeting the second *Ortiz* factor.

### iii.     Factor Three:  Claimants treated equitably

The third *Ortiz* factor requires a showing that claimants will be treated in a fair and equitable manner. The Court is to be shown how funds will allocate, and must be satisfied that the allocation proposed is fair. *See, e.g., In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 193- 94 (5th Cir. 2010) (vacating limited fund class certification where class members "suffered a wide variety of injuries . . . and no method [was] specified for how these different claimants will be treated vis-à-vis each other"). A party seeking limited fund certification must present the Court with a framework for equitably allocating the fund among claimants. *Id.* at 193-94 ("The lack of any 'procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves' leads us to reverse the district court's order

---

[4] Based on the terms of the Settlement Agreement, Defendants will bear the costs for Claims Administration up to $50,000.00.

certifying this class.") (citing *Ortiz*, 527 U.S. at 856). Though a pro rata distribution is one method of satisfying this requirement, it is not the only method. *Ortiz*, 527 U.S. at 855-56 ("at the least such a settlement must seek equity by providing for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves"). "[A] Claims Administrator would distribute the limited fund to class members according to a mechanism involving 'tiers and point allocations' "based upon criteria reflecting the strength of the student claims and the magnitude of their alleged damages. . . the [limited fund] would then be distributed by the Claims Administrator to class members 'proportionately to the point allocations' awarding the most to those with the strongest case who suffered the greatest loss." *Herrera v. Charlotte Sch. Of Law, LLC*, 818 Fed. Appx. 165 (4th Cir. 2020) (noting that the district court found that class members were equitably treated).

The proposed framework for allocating the limited fund to the Class Members is fair and equitable. As noted above, Settling Parties have agreed to the distribution of the entire Net Settlement Fund pro rata to the Authorized Claimants in proportion to the damages categories based upon a Class Member's cumulative length of incarceration at the Southern Regional Jail. Specifically, the damages categories and proportionate shares are as follows: (1) Class Members who were incarcerated at Southern Regional Jail for a period of 181 days or greater (Category A) – 1 share; (2) Class Members who were incarcerated at Southern Regional Jail for a period of 120-180 days (Category B) -- .75 share; (3) Class Members who were incarcerated at Southern Regional Jail for a period of 46-120 days (Category C) -- .5 share; and (4) Class Members who were incarcerated at Southern Regional Jail for a period of 3-45 days (Category D) -- .25 share. Thus, the third Ortiz factor is met. *See Herrera*, 818 F. App'x at 175–76 (finding third factor met where the limited fund was distributed to the class members "proportionately to the point

allocations," awarding the most to those with the strongest case who suffered the greatest loss as the result of "detailed and hard-fought negotiations").

The *Ortiz* factors are thus met. Moreover, certification of a limited fund class is simply the best solution to a bad situation.  Class members have allegedly suffered living in unconstitutional conditions, to varying degrees based upon their length of incarceration at Southern Regional Jail. The fundamental purpose of this limited fund device—to benefit the parties in the best way possible given pressing constraints—is particularly applicable here. *Ortiz*, 527 U.S. at 852, 860 (the class' recovery should be the "best possible arrangement" or the "best that can be provided for class members" ); *see Stott*, 277 F.R.D. at 334 ("in this case . . . after a full assessment of the facts and the potential recovery for class members, the Court is of the opinion that approving the 'limited fund' settlement truly is the 'best that can be provided for class members' under these circumstances, and should be approved."); *In Re Rio Naturalizer Prods. Liab. Litig*., 1996 WL 780512, at *16 ("In reaching its determination to approve the [limited fund]settlement, the Court is guided by the belief that the greater good of the greater number is served by a rational process which allocates compensation based on severity of injury, rather than leaving claimants to what would effectively a lottery system where lesser injured people could receive more than adequate compensation and more seriously injured people receive nothing at all, depending on timing and the vagaries of litigation.").

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Settling Parties respectfully request that the Court:

(1) Preliminarily approve the Settlement Agreement, subject to the rights of Class Members to object to the Settlement at the Final Approval Hearing;

(2) Preliminarily certify for purposes of this Settlement only under the provisions of Rule 23(a) and Rule 23(b)(l)(B) of the Federal Rules of Civil Procedure, a Class as specified herein to include all persons who have been incarcerated at the Southern Regional Jail for a period greater than two (2) days during the Class Period;

(3) Preliminarily appoint Michael D. Rose, Robert C. Church, Sr., Nicole Henry, Edward L. Harmon, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger. as Class Representatives for Settlement purposes;

(4) Preliminarily appoint Stephen P. New and Emilee B. Wooldridge and the law firms of Stephen New & Associates, Amanda J. Taylor and the law firm of Taylor, Hinkle & Taylor, Timothy P. Lupardus and the Lupardus Law Office, Robert Dunlap and Robert P. Dunlap and Associates PLLC, and Zachary Kyle Whitten and Whitten Law Office as Class Counsel for settlement purposes;

(5) Approve the form, manner, and content of the Email Notice, U.S. Mail Notice, and Claim Form described in this Settlement Agreement, which is being prepared and will be provided to the Court separately;

(6) Appoint Tiffany Janowicz and Rust Consulting, Inc. as the Claim Administrator and direct the Claims Administrator to email, mail, and post said Class Notice within twenty-five (25) days of the entry of the Preliminary Approval Order to the Class Members, and order Settling Defendants to provide a Class Member list to the Claims Administrator in electronic format within five (5) days of the entry of the Preliminary Approval Order;

(7) Find that the provision of the Class Notice as described above constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Class, and that the Class Notice fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure;

(8) Find that Settling Defendants have complied with 28 U.S.C. § 1715;

*(9)* Appoint a Guardian Ad Litem to represent and protect the interests of class members who

are incarcerated pursuant to Rule 17(c)(2) of the *Federal Rules of Civil Procedure.*

Jointly submitted this 8th day of December, 2023.


/s/      *Stephen P. New*                                   /s/ *Amy M. Smith*                                        
Stephen Paul New (WV Bar #7756)           Michael D. Mullins (WVSB No. 7754)
Emilee B. Wooldridge (WV Bar #14310)   Larry J. Rector (WVSB No. 6418)
Stephen New & Associates                        Amy M. Smith (WVSB No. 6456)
430 Harper Park Drive                               Peter J. Raupp (WVSB No. 10546)
Beckley, WV 25801                                    Steptoe & Johnson PLLC
T: 304-250-6017                                        Chase Tower, 17th Floor
F: 304-250-6012                                         P.O. Box 1588
steve@newlawoffice.com                         Charleston, WV 25326-1588
emilee@newlawoffice.com                        Telephone: (304) 353-8000
                                                              Facsimile: (304) 933-8704
Amanda Taylor (WVSB 11635)                michael.mullins@steptoe-johnson.com
Taylor, Hinkle & Taylor Inc.
115 ½ South Kanawha St.                           *Counsel for Jeff S. Sandy, Betsy Jividen, Brad*
Beckley, West Virginia 25801                    *Douglas, and William K. Marshall III*
amanda@thtwv.com


Timothy Lupardus (WV Bar #6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
T: 304-732-0250
office@luparduslaw.com


Zachary Whitten (WV Bar #13709)          /s/    *Chip E. Williams*              
The Whitten Law Office                            Chip E. Williams (WV Bar #8116)
P.O. Box 753                                            Jared C. Underwood (WV Bar #12141)
Pineville, West Virginia 24874                  Pullin Fowler Flanagan Brown & Poe
zwhittenlaw@gmail.com                          252 George Street
                                                             Beckley, WV 25801
                                                             T: 304-254-9300
                                                             cwilliams@pffwv.com

Robert Dunlap (WV Bar #10012)
Robert Dunlap & Associates                     *Counsel for Michael Francis*
208 Main Street

23

Beckley, West Virginia 25801
T: 304-255-4762
robertdunlapesq@gmail.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| **MICHAEL D. ROSE on his own behalf and on behalf of all others similarly situated, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:22-cv-00405** |
| | ) | **(Judge Volk)** |
| **JEFF S. SANDY, et at.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I certify that on this 8th day of December, 2023, I filed the foregoing **"Memorandum in Support of Joint Motion for Preliminary Approval"** via the CM/ECF system, which will send a notification to all counsel of record.

s/ Stephen P. New
Stephen P. New (WVSB 7756)