IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

MICHAEL D. ROSE,                              )
CHARLES BLESSARD,                             )
ROBERT C. CHURCH, SR.,                        )
 NICOLE HENRY,                                )
EDWARD L. HARMON,                             )
THOMAS FLEENOR, JR.,                          )
WILLIAM BOHN, and                             )
TONYA PERSINGER, on their own                 )
behalf and on behalf of all others            )
similarly situated,                           )
                                              )
                    Plaintiffs,               )
v.                                            )
                                              )
JEFF S. SANDY, individually and in his        )
official capacity as the Cabinet Secretary    )
of the West Virginia Department of            )
Homeland Security,                            )
BETSY JIVIDEN, individually as an             )        Civil Action No. 5:22-cv-00405
employee of the West Virginia Division of     )                          (Judge Volk)
Corrections and Rehabilitation,               )
BRAD DOUGLAS, individually as an              )
employee of the West Virginia Division of     )
Corrections and Rehabilitation,               )
WILLIAM K. MARSHALL, III,                     )
individually and in his official capacity     )
as the Commissioner of the West Virginia      )
Division of Corrections and                   )
Rehabilitation,                               )
MICHAEL FRANCIS, individually as an           )
employee of the West Virginia Division of     )
Corrections and Rehabilitation,              )
DAVID YOUNG, individually and in his          )
official capacity as the superintendent of    )
Southern Regional Jail,                       )
LARRY WARDEN, individually as an              )
employee of the West Virginia Division of     )
Corrections and Rehabilitation,               )
The RALEIGH COUNTY                            )
COMMISSION,                                   )
JOHN/JANE DOE EMPLOYEES OF                    )

1

**THE RALEIGH COUNTY**                     )
**COMMISSION,**                            )
**The FAYETTE COUNTY**                     )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE FAYETTE COUNTY**                     )
**COMMISSION,**                            )
**The GREENBRIER COUNTY**                  )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE GREENBRIER COUNTY**                  )
**COMMISSION,**                            )
**The MERCER COUNTY**                      )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE MERCER COUNTY**                      )
**COMMISSION,**                            )
**The MONROE COUNTY**                      )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE MONROE COUNTY**                      )
**COMMISSION,**                            )
**The SUMMERS COUNTY**                     )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE SUMMERS COUNTY**                     )
**COMMISSION,**                            )
**The WYOMING COUNTY**                     )
**COMMISSION,**                            )
**JOHN/JANE DOE EMPLOYEES OF**             )
**THE WYOMING COUNTY**                     )
**COMMISSION,**                            )
**PRIMECARE MEDICAL OF WEST**              )
**VIRGINIA, INC.,**                        )
**JOHN/JANE DOE PRIMECARE**                )
**EMPLOYEES,**                             )
**WEXFORD HEALTH SOURCES, INC.,**          )
**JOHN/JANE DOE WEXFORD**                  )
**EMPLOYEES,**                             )
**JOHN/JANE DOE CORRECTIONAL**             )
**OFFICERS,**                              )
                                           )
                        **Defendants.**    )

2

## DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON ADEQUACY OF NOTICES AND NOTICE PLAN

I, Shannon R. Wheatman, Ph.D., being duly sworn, hereby declare as follows:

1.     I am the executive director at Signal Interactive Media LLC ("Signal"), a strategic consulting and advertising firm in Washington, D.C.  My business address is 1300 Connecticut Ave NW, Suite 375, Washington, D.C. 20036.

2.     This report will describe my experience in designing and implementing notices and notice plans, my credentials to opine on the overall adequacy of the notice effort, as well as describe the notices (the "Notice" or "Notices") and the notice plan (the "Notice Plan") proposed here for the partial settlement in *Rose et. al. v. Sandy, et al.*, including how the notice program was developed and why I believe it will be effective.

## RELEVANT EXPERIENCE

3.     I have developed and directed some of the country's largest and most complex national notification programs. The scope Signal's work includes national and international notification programs in bankruptcy, antitrust, consumer fraud, mass tort, and product liability. The firm has developed or consulted on over 700 notification programs and has placed over $2.1 billion in media notice.

4.     Signal develops advertisements and other notice materials that inform claimants of their legal rights and obligations in a clear and simple manner.  The firm ensures that all notice materials are written in plain language.

5.     I have served as a qualified class action notice expert in many major class actions. State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people.  My curriculum vitae is attached as **Exhibit 1**.

6.     I have testified in court as an expert in *In Re: 3M Combat Arms Earplug Prods.*

*Liability Litig.*, MDL 2885 (N.D. Fla.); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.); *In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (E.D. La.); *In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.); *In re Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2672 (N.D. Cal.); *State v. Farmers Group Inc.*, No. D-1-GV-02-002501 (D. Ct. Tex., Travis County); *Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.); *Spillman v. RPM Pizza, Inc.*, No. 10-349 (M.D. La.); *PRC Holdings, LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.); *Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish); *Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark); *Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).; and *In re: Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).  I have been deposed as an expert in *Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.); *Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish); and *In re: Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

7.    I have worked on some of the largest and most complex national notification programs in the country, including, without limitation:  *In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656 (D.D.C.) (involving notice to over 100 million airline passengers); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (involving notice to over 700,000 Volkswagen, Porsche, and Audi owners/lessees); *Precision Assocs., Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D.N.Y.) (involving notice to millions of freight forwarding customers); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.) (involving notice to millions of international airline passengers); *In re Dynamic Random Memory Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (involving notice to over 100 million consumers); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving notice to millions of indirect purchasers); *In re Oil Spill*

*by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La.) (involving notice to over 40 million people impacted by the oil spill); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (D. Minn.) (involving notice to over 40 million consumers); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11-MD-2258 (S.D. Cal.) (involving notice to over 70 million user accounts).

8.    I have also been involved in notification programs in West Virginia, including: *Good v. West Virginia Am. Water Co.*, No. 14-CV-1374 (S.D. W.Va.); *Pauley v. Hertz Global Inc.*, No. 13-C-236 (Cir. Ct. W.Va.); *In Re: Mountain State University Litigation*, No. 12-C-9000 (Cir. Ct. W. Va.)*; PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W.Va.); *CSS, Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.); *FIA Card Servs., N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W.Va.); *Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.); *Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.); *Cather v. Seneca-Upshur Petroleum Inc.*, No. 1:09-CV-00139 (N.D. W.Va.); *Ed Broome, Inc. v. XTO Energy, Inc.,* No. 1:09-CV-147 (N.D. W.Va.); and *Jones v. Dominion Transmission Inc.*, No. 2.06-CV-00671 (S.D. W.Va.).

9.    Courts have admitted my expert testimony on quantitative and qualitative evaluations of the effectiveness of notice programs, and several courts have commented favorably, on the record, regarding the effectiveness of notice plans I have done.   Selected judicial comments are included in the attached curriculum vitae.

10.    My qualifications include expertise in the form and content of notice.  For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).  To assist judges and

attorneys in state and federal courts, the FJC posted the notices at www.fjc.gov.

11.    I have authored and co-authored articles on class action notice and due process.  I believe notice and due process depend upon clear communication with the people affected, and have stated this position in my publications  *See, e.g.,* Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice,* in WORLD CLASS ACTION:  A GUIDE TO GROUP AND REPRESENTATIVE CLASS ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012); Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration,* in PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES:  A HANDBOOK 338-348 (Albert A. Foer & Randy M. Stutz eds., 2012); Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011); Katherine Kinsella & Shannon R. Wheatman, *Class Notice and Claims Administration*, in THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language:  A desire to actually inform*, 18 GEO. J. LEGAL ETHICS 1359 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process:  The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

## **OVERVIEW**

12.    It was first determined that the Settling Defendants could compile a comprehensive list of Class Members, and that it would be reasonable to implement an individual direct notification effort to reach Class Members.

13.    I have worked with the parties to draft the various forms of Notice as described below.  All forms of Notice are noticeable, clear, concise, and in plain, easily understood language.

14.    As detailed below, in my opinion, the Notice Plan represents the best notice practicable under the circumstances.

## NOTICE PLAN SUMMARY

15.    Although each case is unique, the methods and tools used in developing the Notice Plan for this case have been employed in many other court-approved notice plans.  I regularly implement notice programs that rely on reaching Class Members through individual notice and have successfully implemented numerous mailing programs by utilizing address updating protocols.

16.    In this case, the Notice Program was designed to reach the greatest practicable number of Class Members and ensure that they will be exposed to the Notice, to see, review and understand it—and all their options, including the right to file a claim or object to the Settlement if they so choose.  The Notice Plan provides mail and email notice to all reasonably identifiable Class Members.  This effort is further supported by a case website.

17.    The details of the Notice Plan and the basis for my opinion on its adequacy, as well as on the adequacy of the Notices, are outlined below.

### *Individual Notice*

18.    Using the comprehensive mailing list compiled by the Settling Defendants, Individual Notice by mail consisting of a one-page Mail Notice and Email Notice will provide Class Members with opportunities to see, read and understand their rights, and act if they so choose.  Rust Consulting Inc. ("Rust") will implement the Individual Notice campaign.  The mailing package will include the Mail Notice, Claim Form, and a postage paid return envelope ("Mail Notice Package").

19.    Prior to mailing, addresses will also be checked against the National Change of

Address ("NCOA")[1] database, maintained by the United States Postal Service ("USPS").

20.    After the Court grants approval to the Notice Plan and Notices, all identified Class Members will be mailed a Mail Notice Package.  Email Notices will also be sent to any Class Member with a valid email address.

21.    Direct Mail Notices returned as non-deliverable will be traced and re-mailed as appropriate.  In the case of Mail Notices returned as non-deliverable with an expired automatic forwarding order, the Notices will be re-mailed to any address indicated by the USPS in the expired automatic forwarding order.  Notices returned as non-deliverable, but for which the USPS does not indicate a new address, will be further searched through Transunion or a similar vendor to obtain a more current address.  Transunion uses a variety of third-party sources to compare the latest addresses for U.S. households and returns updated addresses for them.  If any such address is found, the Notice will be re-mailed.

22.    I expect Notice to reach well over 80% of the Class.  Many courts have found that 70% is more than adequate.

### *Case Website*

23.    The neutral website (www.WVsrjsettlement.com) will be established by Rust so that Class Members can complete a Claim Form or obtain additional information and documents about the Settlement, including the Detailed Notice; Settlement Agreement; the Court's Preliminary Approval Order; Complaints; and other information required by the Court.

### *Other*

24.    Rust will establish a toll-free phone number to allow Class Members to call and request that a Detailed Notice or Claim Form be mailed to them or listen to frequently asked questions.

---

[1] The NCOA database contains records of all permanent changes of address submissions received by the USPS for the last four years.

25.     Rust will also establish a post office box to allow Class Members to contact the Settlement Administrator and Class Counsel by mail with any specific requests or questions.

### ***Optional Claims Reminder Campaign***

26.     Before the claims filing deadline, the parties may request an additional notice campaign to encourage Class Members to participate in the Settlement.  This program would only be done if the parties or the Court believe that the claims rate would benefit by spending additional money on notice.

27.     Additional outreach to claimants could include: a reminder mailed notice, a press release issued in West Virginia noting time is running out to file a claim, digital and social media advertising targeted to people who have not yet filed a claim, and print ads in local newspapers. Media would appear in the three to four weeks leading up to the deadline.

### NOTICE FORM AND CONTENT

28.     The Notices effectively communicate information about the Settlement in concise, plain language.

29.     Attached as **Exhibits 2 and 3** are copies of the Mail and Email Notice.

30.     The Mail and Emails Notices are designed to get the reader's attention.  No important or required information is missing or omitted.  These Notices refer readers to the availability of more information at the website or by calling the toll-free number.

31.     The Detailed Notice (**Exhibit 4**) will be available on the website or by calling the toll-free number.  It is designed to encourage readership and understanding in a well-organized and reader-friendly format.  It provides substantial information, including all specific instructions Class Members need to follow to properly exercise their rights, and background on the issues in the case.  The Notice refers readers to the website and toll-free number for more information.

32.     The Claim Form is attached as **Exhibit 5**.  The one-page Claim Form is written in concise, plain language.

## <u>CONCLUSION</u>

33.     In my opinion, the Notice and Notice Plan comport with Rule 23 of the Federal Rules of Civil Procedure and the guidance for effective notice as articulated in the FJC's *Manual for Complex Litigation, 4th*.

34.     In my opinion, the Notices and Notice Plan will effectively reach Class Members as described herein, deliver Notices that will capture Class Members' attention, and provide them with the information necessary to understand their rights and options.

35.     In my opinion, the Notice Plan is comprehensive, well suited to the Class, and more than adequate to satisfy due process.

36.     The Notice Plan will provide members of the Class the best notice practicable under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Souderton, PA this 14th day of December 2023.

*Shannon Wheatman*

Shannon R. Wheatman

**<u>EXHIBIT 1</u>**
**[Wheatman CV]**



# Shannon R. Wheatman, Ph.D.

Executive Director
Signal Interactive Media
1300 Connecticut Ave. NW, Suite 375
Washington, DC 20036
2023 – Present

Dr. Wheatman is an internationally court-recognized legal notice and media expert in mass tort, consumer, and product liability class actions and bankruptcies. She spent eighteen years working as an executive at two of the nation's leading professional service firms that offer legal advertising. She has developed and directed some of the largest and most complex national notification programs in the country. Dr. Wheatman began her career in 2000 at the Federal Judicial Center, where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 700 class actions and bankruptcies.

## Selected Case Experience

### Antitrust

*Allen v. Dairy Farmers of America, Inc.*, No. 09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio, Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CV-21962 (S.D. Fla.).

*Cipro Cases I and II*, No. 4154 and No. 4220 (Super. Ct. Cal.).

*In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.).

*In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656 (N.D. Cal.).

*In re Dynamic Random Memory (DRAM) Antitrust Litig.,* MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litig.*, No. 08-CV-3301 (E.D. Pa.).

*In re LIBOR-Based Financial Instruments Antitrust Litig.* (Barclays Bank, Citibank, Deutsche Bank and HSBC settlements), MDL No. 2262 (S.D.N.Y.).

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-CV-71 (D. De.).

*In re NYC Bus Tour Antitrust Litig.,* No. 13-CV-0711 (S.D. N.Y.).

*In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re Parking Heaters Antitrust Litig.*, No. 1:15-mc-00940 (E.D. N.Y.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.).

*Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D. N.Y.).



*Roos v. Honeywell Int'l, Inc.*, No. 04-0436205 (Super. Ct. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 07-CV-208 (E.D. Tenn.).

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360 (D. Minn.).

## Bankruptcy

*In re: Aearo Technologies LLC*, No. 22-02890 (Bankr. S.D. Ind.).

*In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.).

*In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.) (asbestos).

*In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C.) (asbestos).

*In re HONX, Inc.*, No. 22-90035 (Bankr. S.D. Tex.) (asbestos).

*In re: LTL Management LLC*, No. 3:23-bk-12825 (D. NJ) (asbestos).

*In re PG&E Corp. & Pacific Gas & Electric Co.*, No. 19-30088 (Bankr. N.D.Cal.) (Supplemental Notice Program to fire claimants).

*In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.*, No. 04-12515 (Bankr. W.D. Mich.) (class action within a bankruptcy/defective product).

*In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.).

*In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345  (Bankr. S.D.N.Y.).

*In re Think Finance, LLC*, No. 17-33964 (Bankr. N.D. Tex.) (payday loan borrowers).

*In re W.R. Grace & Co.*, No. 01-01139 (Bankr. D. Del.) (asbestos).

## Consumer and Personal Injury/Product Liability

*Abbott v. Lennox Industs., Inc.*, No. 16-2011-CA-010656 (4th Jud. Cir. Ct., Dade Cty. Fla) (defective product).

*Anderson v. Trans Union, LLC*, No. 16-CV-00558 (E.D. Va.), and *Clark v. Trans Union, LLC*, No. 15-CV-00391 (E.D. Va.) (consumer finance).

*Beringer v. Certegy Check Servs., Inc.*, No. 07-CV-1434 (M.D. Fla.) (data breach).

*Chaudhri v. Osram Sylvania, Inc.*, No. 11-CV-05504 (D.N.J.) (false advertising).

*Clark v. Experian Info. Sols., Inc.*, No. 3:16-cv-00032 (E.D. Va.) and *Brown v. Experian Info. Sols., Inc.*, No. 3:16-cv-00670 (E.D. Va.) (consumer finance).

*CSS, Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.*, No. 06-CV-12234 (D. Mass.) (tobacco).

*FIA Card Servs., N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W.Va.) (credit card arbitration).

*George v. Uponor Corp.*, No. 12-CV-249 (D. Minn.) (defective product).

*Glazer v. Whirlpool Corp.*, No. 08-CV-65001 (N.D. Ohio) (defective product).

*Grays Harbor v. Carrier Corp.*, No. 05-CV-21962 (W.D. Wash.) (defective product).

*Hill-Green v. Experian Info. Sols., Inc., No. 3:19-cv-00708 (E.D. Va.) (consumer finance)*

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig., No. 11-CV- 02000 (D.S.C.) (defective product).*



*In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In re Chinese-Manufactured Drywall Prods. Liab. Litig., MDL No. 2047 (E.D. La.).*

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, MDL No. 2222 (S.D. Fla.) (false advertising).

*In re M3Power Razor System Mktg. & Sales Practs. Litig.*, MDL No. 1704 (D. Mass.) (false advertising).

*In re National Football League Players' Concussion Injury Litig.,* MDL No. 2323 (E.D. Pa.)

*In re Netflix Privacy Litig.*, No. 11-CV-00379 (N.D. Cal.) (privacy).

*In re Pharm. Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.) (data breach).

*In re Target Corp. Customer Data Sec. Breach Litig., MDL No. 2522 (D. Minn.) (data breach).*

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs., & Prods. Litig.,* No. 10-ml-2151 (C.D. Cal.) (unintended acceleration).

*In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig., MDL No. 2672 (N.D. Cal.) (false advertising).*

*In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La) (pharmaceutical).

*In re Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.*, MDL No. 2015 (N.D. Cal.) (negative amortization).

*In re Wirsbo Non-F1807 Yellow Brass Fittings*, No. 08-CV-1223 (D. Nev.) (defective product).

*Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.) (unauthorized accounts).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter-Reed Co., L.L.C.*, No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D.N.J.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Pauley v. Hertz Global Holdings, Inc.*, No. 13-C-236 (Cir. Ct. W.Va.) (administrative fees).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-CV-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.) (robocall).

*Thomas v. Equifax Info. Servs., LLC, No. 3:18-cv-00684 (E.D. Va.) (consumer finance).*

*Trammell v. Barbara's Bakery, Inc.*, No. 12-CV-02664 (N.D. Cal.) (false advertising).

*United Desert Charities v. Sloan Valve Company*, No. 12-CV-06878 (C.D. Cal.) (defective product).

*Wolph v. Acer America Corp.*, No. 09-CV-01314 (N.D. Cal.) (false advertising).

## Environmental/Property

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).

*Andrews v. Plains All Am. Pipeline, L.P.*, No. 15-CV-04113 (C.D. Cal.) (Santa Barbara Oil Spill).



*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 09-CV-00139 (N.D. W.Va.) (oil & gas rights).

*Ed Broome, Inc. v. XTO Energy, Inc.,* No. 09-CV-147 (N.D. W.Va.) (oil & gas rights).

*Good v. West Virginia Am. Water Co.*, No. 14-CV-1374 (S.D.W. Va.) (water contamination).

*In re Katrina Canal Breaches Litig.*, No. 05-CV-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP, Halliburton, and Transocean settlements).

*Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W.Va.) (oil & gas rights).

*Kowall v. United States Steel Corp*., No. 2017-3355 (Wash. County., Pa., Civ. Div.) (heavy metal contamination).

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

## Government

Boarding Homes, Canadian Government.

*Cobell v. Salazar*, No. 96-CV-01285 (D.D.C.), Depts. of Interior and Treasury.

Countrywide Mortgage Settlement, Department of Justice.

*In re Black Farmers Discrimination Litig.,* No. 08-511 (D.D.C.), United States Dept. of Agriculture.

Iovate Settlement, Federal Trade Commission.

*Keepseagle v. Vilsack*, No. 99–3119 (D.D.C.), United States Dept. of Agriculture.

LeanSpa Educational Program, Federal Trade Commission.

National Mortgage Settlement, Attorneys General.

Vaginal Mesh Settlement, Washington Attorney General.

Walgreens Settlement, Federal Trade Commission.

## Insurance

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co*., No. 06-CV-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co*., No. 2001-CV-292 (Dist. Ct. Okla.) (homeowners insurance).

*Cole's Wexford Hotel, Inc. v. UPMC,* No. 10-CV-01609 (W.D. Pa.) (health insurance).

*Campbell v. First Am. Title Ins. Co.*, No. 08-CV-311(D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004-CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.) (management exchange fees).

*Guidry v. Am. Public Life Ins. Co*., No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. F.A. Richard & Assocs., Inc*., No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09-CV-002886 (Ct. C.P. Ohio) (UM/UIM).



*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Shaffer v. Continental Casualty Co.*, No. 06-CV-2235 (C.D. Cal.) (long-term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

## Securities

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Inv. Litig.,* MDL No. 1586 (D. Md.) (Allianz Sub-Track).

## Canada

*Bechard v. Province of Ontario*, No. CV-10-417343 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Donnelly v. United Technologies Corp.,* No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).

*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

*Wener v. United Technologies Corp.*, 2008 QCCS 6605 (Québec) (defective product).

## UK

*Boyle v. Govia Thameslink Railway Ltd.*, No. 1404/7/7/21(Comp. Appeal Trib.).

## Articles and Presentations

Shannon Wheatman, Webinar Speaker, *Cutting Through the Clutter: Tips for Increasing Response*, Ontario Bar Association (Dec. 2022).

Shannon Wheatman, *Quantifying Notice Results in Class Actions*, in A Practitioner's Guide to Class Actions, 3rd Ed. 833 - 837 (Marcy Greer ed., 2021).

Shannon Wheatman & Tiffaney Janowicz, *Plain Language Toolkit for Class Action Notice*, in A Practitioner's Guide to Class Actions, 3rd Ed. 839 - 847 (Marcy Greer ed., 2021).

Shannon Wheatman & Elaine Pang, *Reality Check: The State of Media and Its Usage in Class Notice*, in A Practitioner's Guide to Class Actions, 3rd Ed. 849 - 858  (Marcy Greer ed., 2021)

Shannon Wheatman, Speaker, *Researching the Past and Predicting the Future*, Consumers and Class Action Notices: Federal Trade Commission Workshop, Washington, DC (Oct. 2019).



Shannon Wheatman, Speaker, *Looking Ahead – Challenges and Opportunities For Increasing Consumer Recovery Rates*, Consumers and Class Action Notices: Federal Trade Commission Workshop, Washington, DC (Oct. 2019).

Shannon Wheatman, Speaker, *How to Get Your Notice Actually Noticed: Claims Stimulation 3.0*, Women Antitrust Plaintiffs' Attorneys, Napa, CA (June 2018).

Joshua P. Davis, Shannon Wheatman, & Cristen Stephansky, *Writing Better Jury Instructions:  Antitrust As An Example*, 119 W. VA. L. REV. 235 (Fall 2016).

Shannon Wheatman, Webinar Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, American Association for Justice (Sept. 2016).

Shannon Wheatman & Alicia Gehring, *Mixed Media: A Smarter Approach To Class Action Notice*, Law360.com (June 11, 2015).

Shannon Wheatman, Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).

Joshua Davis, Shannon Wheatman & Cristen Stephansky, *Writing Better Jury Instructions: Antitrust as an Example*, Paper presented at 15th Annual Loyola Antitrust Colloquium, Chicago, IL (Apr. 2015).

Shannon R. Wheatman, Speaker, *Can Competition Concepts be Made Comprehensible to Juries (and Judges)*, American Antitrust Institute's Business Behavior & Competition Policy in the Courtroom: Current Challenges for Judges, Stanford, CA (Aug. 2014).

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).

Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).

Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE International's 9th Annual Class Action Conference, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice,* in NATIONAL CONFERENCE ON CLASS ACTIONS:  RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).

Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions:  Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).



Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, in WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348 (Albert A. Foer & Randy M. Stutz eds., 2012).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements:  Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's  12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification with Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights?  The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*.  FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the*



*research on interrogations, confessions, and entrapment into policy*, in INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181 (2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*In Re: 3M Combat Arms Earplug Prods. Liability Litig.*, MDL 2885 (N.D. Fla.)

*In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.)

*In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (E.D. La.).

*In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.).

*In re Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.).

*Kowall v. United States Steel Corp.*, No. 2017-3355 (Wash. County., Pa., Civ. Div.).

*State v. Farmer Group Inc.*, No. D-1-GV-02-002501(D. Ct. Tex., Travis County).

*Scharfstein v. BP West Coast Prods., LLC*, No. 1112-17046 (Cir. Ct. Ore.).

*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.).

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).



*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*In re Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*Hale v. CNX Gas Co., LLC*, No. 10-CV-59 (W.D. Va.).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

***Ferrell v. U-Haul*, No. 11-C-1427 (Cir. Ct. W. Va.)**
In overruling objections to the notice program, the Court found that "Dr. Wheatman is one of the foremost experts on class notice and has been qualified as a class notice expert in both the courts of this state (including this Court) and nationwide." - Hon. Joanna I. Tabit (2018)

***Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.)**
"In addition to that robust direct mail and email notice program, the Settlement provided an extensive media and advertising component. *See* Wheatman Decl. (ECF 183). That included printing a color publication notice in national news outlets and Spanish-language outlets. Id. ¶¶ 17-19.  "Banner ads" were also placed on websites, using targeted ad campaigns. Id. ¶ 23. Supplementing all of these efforts was a media outreach program designed to drive awareness of the Settlement and point Settlement Class Members to the Settlement Website, www.WFSettlement.com, which provided notice, frequently asked questions, and key court documents. Id. ¶¶ 28-33 . . . In short, the parties and their Court-appointed experts used every reasonable tool to create and implement and [sic] wide-ranging program to provide the best notice practicable to potential Settlement Class Members . . . Because the Court finds that the Notice complied with due process and the requirements of Rule 23, it overrules objections to the Notice." - Hon. Vince Chhabria (2018)

***Good v. West Virginia American Water Co.*, No. 14-CV-1374 (S.D.W. Va.)**
"The Notice transmitted to the Settlement Class met the requirements of Fed. R. Civ. P. 23(c), constituted the best notice practicable under the circumstances, and satisfied the Constitutional due process requirements of notice with respect to all Settlement Class Members, . . . The Notice Program was executed by qualified and experienced Notice Administrators . . ." - Hon. John T. Copenhaver, Jr. (2018)

***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (Haliburton and Transocean settlements)**
"The Class Notices were 'noticeable, clear, concise, substantive, and informative.' Wheatman Decl. ¶ 4(b).14 The notice distribution method satisfied Rule 23(c)(2), as it was the 'best notice that is practicable under the circumstances.' Fed. R. Civ. P. 23(c)(2); *see* Wheatman Decl. ¶ 5. The notice contents satisfied Rule 23(c)(2)(B)(i)–(vii) . . . " - Hon. Carl J. Barbier (2017)

***In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.)**
"EPPs, through EPPs' class action notice expert consultant, Kinsella Media, LLC ("Kinsella"), implemented a class-notice program utilizing paid and earned media. See, e.g., Declaration of Shannon R. Wheatman,



Ph.D. . . . Notice was published in *Field & Stream*, *ESPN The Magazine*, *People*, *Reader's Digest*, *Southern Living*, *Woman's Day*, *The Wall Street Journal*, *Auto Rental News*, *Automotive Fleet*, *Reuters*, *NBC Money*, *Consumer Reports*, and *Automotive Weekly*, and online media efforts through banner advertisements on outlets like Facebook and Yahoo!. The banner advertisements . . . have been seen a total estimated 354,593,140 times. The earned media component of this notice program included a multimedia news release distributed on PR Newswire's US1 National Circuit on November 29, 2016. Id. [T]he release was republished across 171 news websites and received over 11,415 views. Id. A total of 248 journalists engaged with the multimedia news release, and major national outlets that covered the Settlements, include: *Reuters*, *Associated Press*, *Boston Globe*, *Chicago Tribune*, *The Today Show*, *NBC Money*, *Consumer Reports*, and *Automotive Weekly*. Other earned media efforts . . . included statewide press releases in the EPP States as well as outreach to 275 national and local reporters for print and television." - Hon. Marianne O. Battani (2017)

### *In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.)

"The Notice Program included 811,944 mailings, 453,797 emails, 125 newspaper insertions and targeted online advertising.  The Court is satisfied that the extensive Notice Program was reasonably calculated to notify Class Members of the proposed Settlement.  The Notice 'apprise[d] interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Indeed, the Notice Administrator reports the Notice Program reached more than 90% of potential Class Members." - Hon. Charles R. Breyer (2016)

### *In re National Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323 (E.D. Pa.)

"The content of the Long-Form Notice and Summary Notice satisfy the requirements of Rule 23 and due process. Each was written in plain and straightforward language….  The purpose of the one-page Summary Notice is…to alert Class Members to the suit and direct them to more detailed information.  The Summary Notice does exactly that….  [The Long-Form Notice] repeatedly instructs readers to sources that can answer their questions. Like the Summary Notice, the Long-Form Notice contains a banner at the bottom of each page directing those with "Questions?" to call a toll-free support number or visit the Settlement Website….  The Settlement Class Notice clearly described of the terms of the Settlement and the rights of Class Members to opt out or object. [The] notice program ensured that these materials reached those with an interest in the litigation." – Hon. Anita B. Brody (2015)

### *In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.)

In overruling an objection that direct notice should have been done, the Court found "[T]he notice program, which the Court already approved, reached 80.3% of the potential class members in the United States an average of 2.6 times and "at least 70%" of members of the Settlement Classes living in Japan. See Mot. for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13 other countries. Id.; ¶ 25. There were 700,961 unique visits to the website, toll-free numbers in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class members. Id. ¶¶ 6, 9, 10. It was therefore adequate." - Hon. Charles R. Breyer (2015)

### *In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn)

"The parties accomplished notice here through direct notice, paid and earned media, and an informational website . . . [T]he notice program reached 83% of potential class members. The notice here comports with Rule 23(e) . . . Class notice reached more than 80 million people, with direct notice sent to 61 million consumers . . . [The] infinitesimally small amount of opposition weighs in favor of approving the settlement." - Hon. Paul A. Magnuson (2015)

### *The Shane Grp., Inc., v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360 (D. Minn.)



"The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in *People* magazine, and on the Internet . . . The Court finds that this notice . . . was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and . . . fully complied with due process principles and Federal Rule of Civil Procedure 23." - Hon. Denise Page Hood (2015)

***Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D. N.J.)**
"Having heard the objections made, the Court is unimpressed with the Objectors argument that there was somehow insufficient notice . . . This notice program has fully informed members of their rights and benefits under the settlement, and all required information has been fully and clearly presented to class members. Accordingly, this widespread and comprehensive campaign provides sufficient notice under the circumstances, satisfying both due process and Rule 23 and the settlement is therefore approved by this Court." - Hon. Joel A. Pisano (2014)

***Spillman v. Dominos Pizza, LLC.*, No. 10-CV-349 (M.D. La.)**
"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards . . . Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." - Hon. Stephen C. Riedlinger (2013)

***Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.)**
"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012)

***Cather v. Seneca-Upshur Petroleum, Inc.*, No. 09-CV-00139 (N.D. W. Va.)**
 "The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . . The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire." - Hon. Irene M. Keeley (2012)

***In re Checking Account Overdraft Fee Litig.*, MDL No. 2036 (S.D. Fla.)  (JP Morgan Settlement)**
"The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012)

***Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)**
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . . [T]he Notice also contained a clear and concise Claim Form, and a described a clear



deadline and procedure for filing of Claims.  Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class Members.  The Court finds that such notice constitutes the best notice practicable." - Hon. Eugenio Mathis (2012)

### *Cobell v. Salazar,* No. 1:96CV01285 (D.D.C.)
"I have never seen, and I handled the largest price-fixing case in the history of the United States, the In re: Vitamins case, notice to the extent sent out in this case, . . . .   I allowed them to provide notice in every possible way, including personally going out and visiting all of the affected tribal areas.  It is just not a letter from Washington. It is a tremendous effort that was undergone, both by the plaintiffs principally and some by the government, to not only give notice but to explain what happened . . . . There is just no question that this was covered in all of the local papers constantly. It was covered in all of the local advertising outlets. It was hard to miss.  As a side note, I go to Montana two or three times a year, and you could not miss…. I have already found that there is extensive and extraordinary notice here. We even had a notice expert retained in how to do it properly." - Hon. Thomas F. Hogan (June 2011)

### *Keepseagle v. Vilsack*, No. 99–3119 (D.D.C.)
"I'm not going to review in detail the exhaustive notice plan created and implemented by Plaintiffs' counsel at this time.  For those interested, I invite you to examine the several motions on the docket relating to notice with affidavits from Kinsella Media, who class counsel have hired as Notice Administrators." - Hon. Emmet G. Sullivan (2011)

"In my view, the notice program was excellent and it persuades the Court that the parties worked extremely hard to notify the entire class about the settlement so that as many class members as possible can obtain monetary and other relief under the settlement." - Hon. Emmet G. Sullivan (2011)

### *Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Colo.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010)

### *In re Katrina Canal Breaches*, No. 05-CV-4182 (E.D. La.)
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009)

### *Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W. Va.)
"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009)

### *Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.)
"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008)



***Webb v. Liberty Mutual Ins. Co.***, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark)
"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008)

***Sherrill v. Progressive Northwestern Ins. Co.***, No. DV-03-220 (18th D. Ct. Mont.)
"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here . . . So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008)

***Beasley v. The Reliable Life Ins. Co.***, No. CV-2005-58-1 (Cir. Ct. Ark)
"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007)

## Education and Experience

### Education

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices*.

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case*.

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation*.

### Related Experience

Kinsella Media, LLC



Washington, DC
2010-2022

Dr. Wheatman was the Vice President (2010-2012), Senior Vice President (2012-2014), and President (2014-2022) at Kinsella Media, a legal notification firm.

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004

Dr. Wheatman was a Research Associate at the Federal Judicial Center.  The Federal Judicial Center is the education and research agency for the Federal Courts.  The Research Division performs empirical and explanatory research on federal judicial processes and court management.  Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

## Supplementary Background

Dr. Wheatman has a strong statistical background, having completed nine graduate-level courses as well as teaching undergraduate statistics at the University of Georgia.

**<u>EXHIBIT 2</u>**
**[Mail Notice]**

**Current and former inmates could get money from a settlement with the State of West Virginia over conditions at Southern Regional Jail.**

You are included in the settlement if you were an inmate at Southern Regional Jail for more than two days anytime since September 22, 2020.  You can request a payment by completing and mailing in the enclosed claim form in the postage paid return envelope or filing your claim online by **Month XX, 2024**.  Your Claimant ID is required to submit a claim online.

Four separate $1 million insurance policies will be shared by approximately 7,850 current and former inmates. **Payments are estimated to be between $150 and $500 depending on the total number of claims filed.**  The amount that is given to each inmate will be based on the amount of time spent at the Southern Regional Jail since September 22, 2020.

**What does the Settlement Provide?**
The State of West Virginia has agreed to create a Settlement Fund of $4,000,000, the highest amount the State of West Virginia's insurance coverage will pay.  The State will also provide up to $50,000 to pay the cost to provide notice and administer the settlement.

This is a limited fund settlement which means you will not be able to sue the Settling Defendants and other Released Parties (see below) on your own for matters covered by the settlement, because there would not be enough funds available to litigate those claims.

**Who are the Settling Defendants and Released Parties?**
The Settling Defendants are Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the West Virginia Division of Corrections and Rehabilitation, Betsy Jividen, Brad Douglas, and Michael Francis. The lawsuit will continue against the medical providers to the jail, Primecare and Wexford, and the county commissions that house inmates at the facility which include Greenbrier, Raleigh, Wyoming, Fayette, Mercer, Monroe, and Summers.

The Released Parties include Settling Defendants, together with the State of West Virginia, the West Virginia Department of Homeland Security, the West Virginia Division of Corrections, and each of their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on their behalf.

**Your Other Options**
You may object to the settlement by **Month XX, 2024**. The Court will hold a hearing on **Month XX, 2024**, to consider whether to approve the settlement. Attorneys representing the Class will request up to 35% of the Settlement Fund to pay attorneys' fees plus reasonable expenses and an incentive award of $1,000 for seven Class Representatives for their efforts in bringing the class action. You and your own lawyer can appear and speak at the hearing, but you do not have to attend.

**For more information, visit www.WVsrjsettlement.com or call 1-888-398-7011**.

**<u>EXHIBIT 3</u>**
**[Email Notice]**

To:
From:
Subject: SRJ Settlement

[Claimant ID].  This Claimant ID is for your personal use and cannot be shared with others.

## Current and former inmates could get money from a settlement with the State of West Virginia over conditions at Southern Regional Jail.

You need to file a claim to get a payment. Visit www.WVsrjsettlement.com to file a claim.

You are included in the settlement if you were an inmate at Southern Regional Jail for more than two days anytime since September 22, 2020.  Four separate $1 million insurance policies will be shared by approximately 7,850 current and former inmates. **Payments are estimated to be between $150 and $500 depending on the total number of claims filed.**  The amount that is given to each inmate will be based on the amount of time spent at the Southern Regional Jail since September 22, 2020.

**What does the Settlement Provide?**
The State of West Virginia has agreed to create a Settlement Fund of $4,000,000, the highest amount the State of West Virginia's insurance coverage will pay.  The State will also provide up to $50,000 to pay the cost to provide notice and administer the settlement.

This is a limited fund settlement which means you will not be able to sue the Settling Defendants and other Released Parties (see below) on your own for matters covered by the settlement, because there would not be enough funds available to litigate those claims.

**Who are the Settling Defendants and Released Parties?**
The Settling Defendants are Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the West Virginia Division of Corrections and Rehabilitation, Betsy Jividen, Brad Douglas, and Michael Francis.

The Released Parties include Settling Defendants, together with the State of West Virginia, the West Virginia Department of Homeland Security, the West Virginia Division of Corrections, and each of their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on their behalf.

**How Can I Get a Payment**
You must submit a claim form online or by mail by **Month XX, 2024**. Your Claimant ID is required to submit a claim online.

**Your Other Options**

You may object to the settlement by **Month XX, 2024**. The Court will hold a hearing on **Month XX, 2024**, to consider whether to approve the settlement. Attorneys representing the Class will request up to 35% of the Settlement Fund to pay attorneys' fees plus reasonable expenses and an incentive award of $1,000 for seven Class Representatives for their efforts in bringing the class action.  You and your own lawyer can appear and speak at the hearing, but you do not have to attend.

**For more information, visit www.WVsrjsettlement.com or call 1-888-398-7011**

**EXHIBIT 4**
**[Detailed Notice]**

IN THE SOUTHERN DISTRICT COURT OF WEST VIRGINIA, BECKLEY DIVISION

# If You Were an Inmate at the Southern Regional Jail for 3 or More Days Since September 22, 2020,

## You Could Get Money from a Class Action Settlement.

*A Federal Court has authorized this notice.  This is not a solicitation from a lawyer.*

- West Virginia has agreed to pay $4 million to settle a class action lawsuit claiming inhumane conditions and improper treatment at Southern Regional Jail. The lawsuit will continue against the medical providers to the jail, Primecare and Wexford, and the county commissions that house inmates at the facility which include Greenbrier, Raleigh, Wyoming, Fayette, Mercer, Monroe, and Summers.

- Four separate $1 million insurance policies will be shared by approximately 7,850 current and former inmates. **Payments are estimated to be between $150 and $500 depending on the total number of claims filed.**  The amount that is given to each inmate will be based on the amount of time spent at the Southern Regional Jail since September 22, 2020.

**Your legal rights are affected even if you do nothing.  Please read this notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DATE |
|---|---|---|
| **Submit a Claim** | This is the only way to get a payment. | **Month XX, 2024** |
| **Object** | Write to the Court about why you don't like the settlement. | **Month XX, 2024** |
| **Go to the Hearing** | Ask to speak in Court about the fairness of the settlement. | **Month XX, 2024** |
| **Do Nothing** | Get no payment.  Give up your rights. | N/A |

- These rights and options—**and the deadlines to exercise them**—are explained in more detail below.

- The Court has preliminarily approved the settlement but still must decide whether to give final approval.  Payments will be made to eligible Class Members only if the Court gives final approval to the settlement and, if there are any appeals, after the appeals are resolved in favor of the settlement.  ***Please be patient***.

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

## BACKGROUND INFORMATION

### 1.    Why was this notice issued?

A court authorized this Notice because you have a right to know about a proposed settlement of this class action and about your rights and options before the Court decides whether to give final approval to the settlement.

U.S District Judge Frank Volk of the Southern District Court of West Virginia is overseeing the settlement.  The case is called *Rose v. Sandy*, No.  5:22-cv-00405 (S.D. W.Va.).  The people who sued are called the Plaintiffs. The Settling Defendants are Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the West Virginia Division of Corrections and Rehabilitation, Betsy Jividen, Brad Douglas, and Michael Francis.

### 2.    What is this lawsuit about?

Former inmates are suing on behalf of themselves and others, saying they were subjected to inhumane treatment (for example, overcrowding, faulty plumbing, unsanitary living conditions, inadequate nutrition, inadequate bedding and hygiene items, improper disciplinary measures, lack of prisoner safety) during their time at Southern Regional Jail.

### 3.    Why is this a class action?

In a class action lawsuit, one or more people called Class Representatives sue on behalf of themselves and other people who have similar claims.  In this case, the Class Representatives are Michael D. Rose, Robert C. Church, Sr., Nicole Henry, Edward L. Harmon, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger.  One court will resolve the issues for all Class Members.

### 4.    Why is there a settlement?

The Court has not decided in favor of the Plaintiffs or the Settling Defendants.  Instead, both sides have agreed to a settlement.  By agreeing to a settlement, the Parties avoid the costs and uncertainty of a trial, and Class Members receive benefits described in this Notice.  The settlement does not mean that the Settling Defendants did anything wrong.

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

## WHO IS PART OF THE SETTLEMENT

If you received a notice in the mail and/or email about the settlement, then you may be a Class Member. But even if you did not receive a notice about this settlement, you may be a Class Member, as described below.

### 5.   Who is included in the settlement?

You are included in the settlement if you were an inmate at Southern Regional Jail for more than two days anytime between September 22, 2020 and Month XX, 2024 or the date the settlement is granted final approval.

### 6.   What if I'm still not sure if I am included?

If you are not sure whether you are included, you may call 1-888-398-7011 or visit www.WVsrjsettlement.com.  You may also write with questions to WV SRJ Settlement, PO Box 2426, Faribault, MN 55021-9126.

## THE SETTLEMENT BENEFITS

### 7.   What does the settlement provide?

Settling Defendants have agreed to create a Settlement Fund of $4,000,000, the highest amount the State of West Virginia's insurance coverage will pay.  The Settlement Fund will pay eligible Class Members, as well as attorneys' fees and expenses.  The Settling Defendants will also provide up to $50,000 to pay the cost to provide notice and administer the settlement.

## HOW TO GET A PAYMENT

### 8.   How can I get a payment?

To ask for a payment, you must complete and submit a Claim Form online or by mail by **Month XX, 2024**. You can access the online Claim Form by using the Claimant ID number found in the mail or email you received about the settlement.  The Claimant ID is required to submit a claim online. If you are a Class Member and do not have a Claimants ID, you can call 1-888-398-7011 to request a Claim Form.  Please read the instructions carefully.

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

## 9.    When will I get a payment?

Class Members who are entitled to payments will receive their payment sometime after the settlement becomes final.  This will not happen until the Court grants final approval to the settlement and any appeals are resolved in its favor (see "The Final Approval Hearing" below).  If there are appeals, resolving them can take time.

## THE LAWYERS REPRESENTING YOU

## 10.    Do I have a lawyer in this case?

Yes. The Court has appointed several law firms to represent all Class Members.

| | | |
|---|---|---|
| Stephen P. New<br>Emilee B. Wooldridge<br>Stephen New & Associates<br>430 Harper Park Drive<br>Beckley, WV 25801 | Amanda J. Taylor<br>Taylor, Hinkle & Taylor<br>115 1/2 S Kanawha Street<br>Beckley, WV 25801 | Timothy P. Lupardus<br>Lupardus Law Office<br>275 Bearhole Road<br>Pineville, WV 24874 |
| Robert Dunlap<br>Robert P. Dunlap & Associates PLLC<br>345 Prince Street<br>Beckley, WV 25801 | Zachary Kyle Whitten<br>Whitten Law Office<br>50 Main Avenue<br>Pineville, WV 24874 | |

You will not be charged for contacting these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 11.    How will the lawyers be paid?

Class Counsel will be paid from the Settlement Fund for fees and expenses (up to 35% of the Settlement Fund).  The request for fees and expenses must be approved by the Court.  Class Counsel will also request that the Court approve an incentive award of $1,000 for each Class Representative for their efforts in bringing the class action.

## IMPACT ON ABILITY TO SUE SETTLING DEFENDANTS – RELEASE OF CLAIMS

## 12.    Can I sue the Settling Defendants on my own if I do not participate in the settlement?

No.  This is a limited fund settlement which means you will not be able to sue the Settling Defendants and other Released Parties (see below) on your own for matters covered by the settlement, because there would not be enough funds available to litigate those claims.  The

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

Settlement Agreement, available on the Internet at www.WVsrjsettlement.com, contains the full terms of the release of claims.

The Released Parties include Settling Defendants, together with the State of West Virginia, the West Virginia Department of Homeland Security, the West Virginia Division of Corrections, and each of their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on their behalf.

## OBJECTING TO THE SETTLEMENT

### 13.   How do I tell the Court if I do not like the settlement?

You can object to the settlement if you don't like some part of it.  The Court will consider your views.  To object, you must submit a letter that includes:

- Your full name, address, telephone number, and email address (if available);

- A statement saying that you object to the settlement in *Rose v. Sandy*, No. 5:22-cv-00405;

- In clear and concise terms, the objection and legal and factual arguments supporting the objection;

- Facts showing that you are a Class Member;

- The statement "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding Class membership are true and correct to the best of my knowledge"; and

- Your signature and date.

If you intend to appear at the Final Approval Hearing (with or without personal counsel), the written objection must also contain:

- Identify the attorney(s) representing you who will appear at the hearing.
- Include the attorney(s) name, address, phone number, e-mail address, and the state bar(s) to which counsel is admitted.
- If you intend to request the Court to allow you to call witnesses at the hearing, you need to include that information in your written objection, which must also contain a list of any witnesses and a summary of each witness's expected testimony.

You must file your written objection with the Court no later than **Month XX, 2024**:

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

| Court |
|---|
| Clerk of Court |
| Robert C. Byrd United States |
| Courthouse and Federal Building |
| 110 North Heber Street |
| Beckley, WV 25801 |

If you do decide to make your objection through your own attorney, you will be responsible for your attorney's fees and costs.  It is not necessary to have an attorney to file an objection.

## THE FINAL APPROVAL HEARING

### 14.    What is the Final Approval Hearing?

The Court will hold a hearing to decide whether to give final approval to the settlement, called a the Final Approval Hearing.  The purpose of the hearing is for the Court to determine whether the settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class, as well as to consider the award of attorneys' fees and expenses to Class Counsel.

### 15.    When and where is the Final Approval Hearing?

The hearing will be held on Month XX, 2024 at x:xx x.m. in the U.S. District Court for the Southern District of West Virginia, located at 110 North Heber Street, Beckley, WV 25801.  At the hearing, the Court will hear any objections and arguments about the proposed settlement.  The hearing may be postponed to a different date or time or location without notice.  Please check the website for any updates or changes about the settlement generally or the hearing specifically.

### 16.    May I speak at the hearing?

You may ask the Court for permission to speak at the hearing, but you may only do so if you have properly objected to the settlement (see Question 13).

## GETTING MORE INFORMATION

### 17.    How do I get more information?

This Notice summarizes the settlement.  More details are in the Settlement Agreement.  To see a copy of the Settlement Agreement, the Court's Preliminary Approval Order, Class Counsel's application for attorneys' fees and costs, and the Complaints filed in this class action visit www.WVsrjsettlement.com. or call 1-888-398-7011.

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

| **18.** | **What if my address or other information has changed or changes after I submit a Claim Form?** |
|---|---|

It is your responsibility to inform the Claims Administrator of your updated contact information. You may do so by email (info@WVsrjsettlement.com) or at the address below:

WV SRJ Settlement
PO Box 2426
Faribault, MN 55021-9126

**Questions? Call 1-888-398-7011 or Visit www.WVsrjsettlement.com**

7

**<u>EXHIBIT 5</u>**
**[Claim Form]**

WV SRJ SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING INC
PO Box 2426
Faribault, MN 55021-9126

**IMPORTANT LEGAL MATERIALS**

| FOR OFFICIAL USE ONLY |
|---|
| 01 |

# *BARCODE39*

- UAA - <<SequenceNo>>

**Claimant ID #:** <<barcode39>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<Address3>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

## CLAIM FORM

If you were an inmate at the Southern Regional Jail in Beaver, West Virginia for more than two days since September 22, 2020, you may be eligible for a payment from a settlement with the state of West Virginia. **To participate in this SETTLEMENT, you must submit this claim form by Month XX, 2024.** You can also file your claim online at www.WVsrjsettlement.com. Your Claimant ID is required to submit a claim online. Your right to share in the SETTLEMENT FUND will depend on the Court's final approval of the settlement and the State of West Virginia's records which reflect how long any prisoner was incarcerated. The amount of compensation will depend upon the number of authorized claimants filing claims and the number of days you were incarcerated.

Name: _____

Street Address: _____

City/State/Zip Code: _____

Date of Birth: ____ ____ / ____ ____ / ____ ____ ____ ____

ANSWER THE FOLLOWING QUESTION

Were you incarcerated at Southern Regional Jail for more than two days since SEPTEMBER 22, 2023?

☐ Yes     ☐ No

I declare, under penalty of perjury, that the answer stated above is true and correct.

Signed by: _____
            [Signature]                                    [Date]

TO BE ELIGIBLE TO PARTICIPATE IN THIS SETTLEMENT, RETURN THIS CLAIM FORM TO THE ADDRESS BELOW **BY MONTH XX, 2024** USING THE ENCLOSED POSTAGE PAID ENVELOPE.

| MAIL THE CLAIM TO: | If you want your check sent to a different address than the one above, please indicate that address here: |
|---|---|
| **WV SRJ Settlement Administrator**<br>**c/o Rust Consulting, Inc. - XXXX**<br>**PO Box 2426**<br>**Faribault, MN 55021-9126** | |