# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

MICHAEL D. ROSE,
and EDWARD L. HARMON,
*on their own behalf and on behalf*
*of all others similarly situated*,

      Plaintiffs,

v.                                                            CIVIL ACTION NO.  5:22-cv-00405

MICHAEL FRANCIS,
*individually and as an employee of*
*the West Virginia Division of Corrections*
*and Rehabilitation*,
THE RALEIGH COUNTY COMMISSION,
John/Jane Doe Employees of the Raleigh
County Commission,
THE FAYETTE COUNTY COMMISSION,
John/Jane Doe Employees of the Fayette
County Commission,
THE GREENBRIER COUNTY COMMISSION,
John/Jane Doe Employees of the Greenbrier
County Commission,
THE MERCER COUNTY COMMISSION,
John/Jane Doe Employees of the Mercer
County Commission,
THE MONROE COUNTY COMMISSION,
John/Jane Doe Employees of the Monroe
County Commission,
THE SUMMERS COUNTY COMMISSION,
John/Jane Doe Employees of the Summers
County Commission,
THE WYOMING COUNTY COMMISSION,
John/Jane Doe Employees of the Wyoming
County Commission,
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
John/Jane Doe PrimeCare Employees,
JOHN/JANE DOE CORRECTIONAL OFFICERS,
BETSY JIVIDEN, *individually as an employee of the*
*West Virginia Division of Corrections and Rehabilitation*,
WEXFORD HEALTH SOURCES, INC.
John/Jane Doe Wexford Employees,

BRAD DOUGLAS, *individually and in his official*
*capacity as the acting Commissioner of the West*
*Virginia Division of Corrections and Rehabilitation*,
JEFF S. SANDY, *individually and in his official*
*capacity as the Cabinet Secretary of the West*
*Virginia Division Department of Homeland Security, and*
WILLIAM K. MARSHALL, III
*individually and in his official capacity as the Commissioner*
*of the West Virginia Division of Corrections and Rehabilitation*,

           Defendants.

## MEMORANDUM OPINION & ORDER

Pending is Defendants' Joint Motion to Dismiss Second Amended Class Action Complaint [Docs. 483, 484], filed July 31, 2023, along with additional motions identified and adjudicated at the conclusion of this written opinion and order.  Plaintiffs responded to the Joint Motion to Dismiss on August 29, 2023, [Doc. 585], to which all Defendants jointly replied on August 29, 2023, [Doc. 588]. The matter is ready for adjudication.[1]

## I.

On September 22, 2022, Plaintiffs Michael D. Rose and Edward Harmon, former inmates and/or pre-trial detainees at Southern Regional Jail (hereinafter "SRJ") in Beaver, West Virginia, instituted this action on behalf of themselves and other similarly situated individuals. Plaintiffs' original Complaint asserted several claims against Defendants Betsy Jividen, Michael Francis, Larry Warden, and the County Commissions of Raleigh, Fayette, Greenbrier, Mercer, Monroe, Summers, and Wyoming Counties ("County Defendants"), and PrimeCare, as well as

---

[1] On January 17, 2024, Defendant PrimeCare Medical of West Virginia, Inc. ("PrimeCare"), petitioned for relief under Chapter 7 of the United States Bankruptcy Code. In compliance with 11 U.S.C. § 362, all proceedings against PrimeCare are stayed and, as more fully reflected within, all motions pending and filed by PrimeCare -- or to which it is a party -- are, respectively, **DENIED** without prejudice in their entirety or as to PrimeCare alone.

various "John/Jane Does," challenging multiple unconstitutional conditions of confinement, policies, and practices at SRJ. [Doc. 1].

On October 7, 2022, Plaintiffs amended the Complaint to assert claims against Wexford Health Sources, Inc. ("Wexford"), the current medical care provider for inmates at SRJ among other facilities. [Doc. 7 ¶ 49]. Plaintiffs proposed two classes: (A) Current Inmates from January 1, 2018, to present, who are or were inmates housed at SRJ, and (B) Former Inmates who, from September 21, 2020, to present, were incarcerated at SRJ. [*Id.* at ¶¶ 244, 297]. Plaintiff Michael D. Rose was identified as Class A Representative. [*Id.* at ¶¶ 259–96]. Plaintiff Edward L. Harmon was identified as Class B Representative. [*Id.* at ¶¶ 312–58].

On November 18, 2022, Plaintiffs filed a Motion for Leave to Amend the Amended Complaint. [Doc. 30]. Plaintiffs sought to add a claim for violation of the Americans with Disabilities Act ("ADA") and to add a new subclass representative Plaintiff to bring the ADA claim. [Doc. 31 at 4].

On December 30, 2022, Plaintiffs filed an Amended Motion for Leave to Amend the Amended Complaint. [Docs. 86, 87]. Plaintiffs sought leave to (1) add an additional claim for violation of the ADA, (2) add a new subclass representative Plaintiff for the ADA claim, and, (3) substitute new class Plaintiffs who were incarcerated at SRJ. [Doc. 87 at 3]. On April 5, 2023, the Court granted Plaintiffs' Amended Motion for Leave to File Second Amended Complaint. [Doc. 172].

On July 17, 2023, Plaintiffs filed the Second Amended Class Action Complaint. [Doc 433]. Six new Plaintiffs were added: Charles Blessard, Robert C. Church, Sr., Nicole Henry, Thomas Fleenor, Jr., William Bohn, and Tonya Persinger. Additionally, Plaintiffs added two new Defendants, namely, William K. Marshall, III, the Commissioner of the West Virginia Division of

Corrections and Rehabilitation ("WVDCR"), and David Young,[2] SRJ superintendent. The claims in the Second Amended Class Action Complaint are as follows: (1) Count I – Eighth Amendment Violations (Conditions of Confinement); (2) Count II – Eighth Amendment Violations (Deliberate Indifference to Serious Medical Need); (3) Count III – Conspiracy to Commit Eighth Amendment Violations; (4) Count IV – Fourteenth Amendment Violations (Conditions of Confinement); (5) Count V – Fourteenth Amendment Violations (Deliberate Indifference to Serious Medical Need); (6) Count VI – Conspiracy to Commit Fourteenth Amendment Violations; (7) Count VII – Failure to Intervene/Bystander Liability; (8) Count VIII – Negligence; (9) Count IX – Gross Negligence; (10) Count X – *Prima Facie* Negligence; (11) Count XI – Intentional Infliction of Emotional Distress ("ÍIED"); (12) Count XII – Common Law Civil Conspiracy; (13) Count XIII – Violations of the ADA; and (14) Count XIV – Temporary Injunctive Relief pursuant to *Federal Rule of Civil Procedure* 65.

At a hearing on November 9, 2023, the parties noted a pending settlement respecting Defendants Jeff S. Sandy, Betsy Jividen, Brad Douglas, and William K. Marshall, III (hereinafter "the Settling Defendants"). The Court then denied as moot and without prejudice Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint [Docs. 483, 484] with respect to the Settling Defendants. [Doc. 821]. The Court now addresses the Joint Motion to Dismiss as it relates to the non-settling Defendants.

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and

---

[2] On August 30, 2023, Plaintiffs voluntarily dismissed without prejudice Defendant David Young pursuant to *Federal Rule of Civil Procedure* 41(a)(1)(A). [Doc. 590].

plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within twenty-one days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting

the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[]

all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

#### A.      *Claims Against the County Commissions*

The claims against the County Defendants are (1) Conspiracy to Commit Eighth Amendment Violations (Count III), (2) Conspiracy to Commit Fourteenth Amendment Violations (Count VI), (3) Failure to Intervene (Count VII), (4) Negligence (Count VIII), (5) Gross Negligence (Count IX), (6) *Prima Facie* Negligence (Count X), (7) Intentional Infliction of Emotional Distress ("IIED") (Count XI), and (8) Common Law Conspiracy (Count XII). The claims all appear to spring from a common root, namely, that each County Defendant owes a nondelegable duty under West Virginia law to care for its respective inmates pursuant to *West Virginia Code* section 7-8-2a(a) (1947).

The claims fail for at least two reasons. First, Plaintiffs have utterly failed to provide a plausible foundation for holding the County Defendants liable for the alleged federal constitutional claims. Second -- and further in service of the conclusion in the preceding sentence -- the county commissions do not own, operate, maintain, or administer regional jails.  W. Va. Code § 7-3-2 (1989);[3] *see also* § 15a-3-1 (2018). *West Virginia Code* section 7-8-2a(a) provides:

> On and after [January 1, 1949], the county commission of each county shall provide wholesome and sufficient food and clean and sufficient bedding for all prisoners *confined in the county jail*, and shall furnish the soaps, disinfectants, and other supplies needed by the jailer . . . .

---

[3] "The county commission of every county . . . shall provide at the county seat thereof a suitable . . . jail[.] . . . [However,] any county commission providing and maintaining a jail on the effective date of this article shall *not* be required to provide and maintain a jail *after a regional jail becomes available* . . . ." W. Va. Code § 7-3-2 (emphasis supplied).

*Id.* (emphasis supplied). The SRJ is not a "county jail." It is part of the statewide network of regional jails that "gradually replaced what had been 55 independently operated county jails." *W. Va. Div. of Corr. & Rehab., History*, https://dcr.wv.gov/aboutus/Pages/history.aspx (last visited Feb. 20, 2024).

Plaintiffs contend section 7-8-2a(a) requires county commissions to provision SRJ inasmuch as it (1) "comports" with the subsequent legislation setting up the regional jail system, (2) the subject statute is still "on the books," and (3) the provision was "last amended in 1985." [Doc. 585 at 28]. Section 7-8-2a was enacted in 1947, almost 40 years before the regional jail system existed. W. Va. Code § 7-8-2a (1947), *amended by* 1985 W. Va. Acts ch. 47, 347–49. Since enactment, section 7-8-2a has required each county to "provide wholesome and sufficient food and clean and sufficient bedding for all prisoners confined in *the county jail*[.]" *Id*. In 1985, the statute was amended to allow county commissions to provide for the feeding of prisoners by contracting with either private vendors or county, state, or municipal governmental agencies. *Id*.

That same year, the state legislature passed the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") Act; the measure created the WVRJCFA and empowered it to construct and operate a regional jail system. W. Va. Code §§ 31-20-1 to -32 (1985) *repealed, in part, by* 2018 W. Va. Acts ch. 107; *see also id.* §§ 15a-3-1 to -18 (2018) (replacing the WVRJCFA with the WVDCR, a division within the West Virginia Department of Homeland Security). Over time, a system of ten regional jails was created to service West Virginia's 55 counties. *W. Va. Div. of Corr. & Rehab., History*, https://dcr.wv.gov/aboutus/Pages/history.aspx (last visited Feb. 20, 2024).

In view of the expanding regional jail system, *West Virginia Code* section 7-3-2 was amended in 1989 to nullify the requirement that a county maintain an independent "county

jail" once a "regional jail" became available. *See* W. Va. Code § 7-3-2 ("[A]ny county commission providing and maintaining a jail on the effective date of this article shall not be required to provide and maintain a jail after a regional jail becomes available unless the county commission determines that such a facility is necessary[.]"). In 2018, the WVDCR replaced the WVRJCFA and is now the sole agency responsible for "providing for the . . . pretrial detention of adult persons facing criminal charges and [the] incarceration and care of adult convicted offenders." *Id.* § 15A-3-1. Thus, despite Plaintiffs' arguments to the contrary, section 7-8-2a never obligated county commissions to provision regional jails.

Plaintiffs offer additional contentions contrary to the mandatory statutory text, related enactments, and policy and reason. But the result is the same. West Virginia does not impose any duty upon the County Defendants to operate their own jails or provision the regional facilities like SRJ. Thus, Plaintiffs have failed to plausibly state a claim against the County Defendants inasmuch as those municipalities do not own, operate, maintain, or administer SRJ.

Furthermore, the County Defendants are statutorily immune from several of Plaintiffs' state claims asserting vicarious liability (Counts VIII, IX, X, XI, and XII). "The Governmental Tort Claims and Insurance Reform Act grants broad, but not total, immunity from tort liability to political subdivisions of the State." *Cabell Cnty. Comm'n v. Whitt*, 242 W. Va. 382, 389, 836 S.E.2d 33, 38–39 (2019) (quoting *O'Dell v. Town of Gauley Bridge*, 188 W. Va. 596, 600, 425 S.E.2d 551, 555 (1992)). *West Virginia Code* section 29-12A-4(c)(2) imposes liability upon the County Defendants for the negligence of their employees acting within their scope of employment. But the employing political subdivisions -- the County Defendants -- are statutorily immune from liability where injury resulted from the "[p]rovision, equipping, lawful

operation or maintenance of any prison, jail[,] or correctional facility," W. Va. Code § 29-12A-5(a)(14).

Plaintiffs additionally allege that unnamed county employees acted in a "reprehensible, willful and wanton, [and] malicious," manner [Doc. 433, ⁋⁋ 655, 664, 671, 680, 686]. Assuming that is true, the County Defendants retain immunity. *See Brooks v. City of Weirton*, 202 W. Va. 246, 256 n. 14, 503 S.E.2d 814, 824 n. 14 (1998) ("We do not find any language in [section 29-12A-5(a)] that creates a 'wanton or reckless conduct' exception to the statutory immunities afforded to political subdivisions, as opposed to subdivision employees."); *see also id.* at 258, 502 S.E.2d at 826 ("May a political subdivision be directly sued and named as a defendant . . . where the plaintiff alleges that the employees of the political subdivision acted in a 'wanton or reckless manner' under W. Va. Code [§] 29-12A-5(b)(2) (1986)? . . . [W]e answer this question in the negative."); *State ex rel. Grant Cnty. Comm'n*, 244 W. Va. 649, 660, 856 S.E.2d 608, 619 (2021) ("[W]hile political subdivisions may be liable for certain claims for negligence, claims of intentional and malicious acts are included in the general grant of immunity." (internal quotation marks omitted)); *Mallamo v. Town of Rivesville*, 197 W. Va. 616, 623, 477 S.E.2d 525, 533 (1996) (finding town had no liability where police chief allegedly committed conspiracy because conspiracy is an intentional act, not a negligent one). Thus, the County Defendants are immune to the state claims asserting vicarious liability.

Accordingly, the Court **GRANTS** the Joint Motion to Dismiss Second Amended Class Action Complaint on all counts pled against the County Defendants, and those counts are **DISMISSED WITH PREJUDICE** unless Plaintiffs, not later than March 20, 2024, provide an explanation respecting why dismissal should be without prejudice.

**B.      *Claims Against Wexford***

### 1.      42 U.S.C. § 1983 Claims

Plaintiffs assert several claims pursuant to 42 U.S.C. § 1983 against Defendant Wexford, including (1) Eighth and Fourteenth Amendment Violations (Counts I, II, IV, and V), (2) Conspiracy to Commit Eighth and Fourteenth Amendment Violations (Counts III and VI), and (3) Failure to Intervene (Count VII).

Assuming Defendant Wexford qualifies as a "person" acting under "color of law" as required under § 1983, it nevertheless contends it never proceeded herein pursuant to an unconstitutional policy or custom as required by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The decision in *Monell* imposes municipal liability when the "execution of a government's policy or custom . . . inflicts the injury . . . " about which a plaintiff complains.  And our Court of Appeals held decades ago that *Monell* applies in the type of situation here presented. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("In *Monell* . . . , the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone. We see this holding as equally applicable to the liability of private corporations [sued under § 1983]."). An actionable policy or custom arises in four ways:

> (1) [T]hrough an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (alterations in original) (quoting *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022)).

Respecting the first method, Plaintiffs "must point to an 'express policy,' that is, 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Howard*, 68 F.4th at 952 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). Respecting the third method, there must be "continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984) (internal citations omitted). Respecting the fourth method, one "must show that 'a pattern of comparable practices has become actually or constructively known to responsible policymakers.'" *Howard*, 68 F.4th at 952 (quoting *Spell v. McDaniel*, 824 F.2d, 1380, 1391 (4th Cir. 1987)). Thus, a "'custom or usage' can support *Monell* liability 'only if its continued existence can be laid to the fault of municipal . . . [policymakers], and a sufficient causal connection between the "municipal custom and usage" and the specific violation can then be established.'" *Id.* at 952–53 (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002)).

First, Plaintiffs allege that "Defendants [PrimeCare and Wexford] were deliberately indifferent to, and willfully ignored[,] . . . serious medical needs . . . by failing to establish, monitor, and/or enforce policy directives and operational procedures to ensure that inmates at . . . SRJ receive prompt and reasonable treatment for their medical needs." [Doc. 433 at 64 ¶ 563, 71 ¶ 612]. This is no more than a "[t]hreadbare recital[]" of the governing constitutional and *Monell* standards. It is a headline with no body copy. And while Plaintiffs point generally to "Wexford policies and procedures, Wexford Acceptance of Terms & Conditions, and the National

Commission on Correctional Healthcare's Jail and Prison Standards," [*Id.* at 62 ¶ 550,  65 ¶ 567, 66–67 ¶581, 69 ¶ 599, 72 ¶ 616, 73–74 ¶ 630], they fail to identify any "express policy" implicated by Wexford's alleged actions. Such generalized allegations are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citation omitted).

Second, Plaintiffs allege correctional officers at SRJ regularly took inmates into unmonitored medical examination rooms and "beat them as a form of punishment." [Doc. 433 at ¶ 210]. They contend SRJ nursing staff was aware of the practice but rarely provided the inmates with the medical treatment required for the significant injuries suffered as a result [*Id.* at ¶ 212]. Plaintiffs further allege inmate sick calls are routinely ignored by Wexford nursing staff, and inmates with serious medical conditions or injuries are rarely sent to outside medical providers. [*Id.* at ¶¶ 235, 237].

Plaintiffs' allegations suggest a highly generalized pattern of ignoring sick calls and reprehensible beatings at the hands of correctional officers; but that imprecise pattern alone is insufficient to give rise to municipal liability for Wexford. Rather, the allegations must demonstrate a "duration and frequency" of the practices "indicat[ing] that policymakers [-- the ranking Wexford officials --] (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Baltimore City State's Att'y Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (internal quotation marks omitted) (citing *Spell*, 824 F.2d at 1387–91). And the allegations must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. Just one example of the pleading deficiency suffices. Plaintiffs include no facts explaining even the slightest particulars of how the purported pattern was carried out or the

identities of any persons authorizing it. Those omissions alone doom the municipality claim on *Twombly*/*Iqbal* grounds.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' § 1983 claim against Defendant Wexford and **GRANTS** the Joint Motion to Dismiss to the same extent.

## 2.     Negligence Claims

Defendant Wexford also seeks dismissal of Plaintiffs' Counts VIII through X negligence claims. In West Virginia, the Medical Professional Liability Act ("MPLA"), West Virginia Code sections 55-7B-1 to -12, governs all "medical professional liability" actions "resulting from the death or injury of a person *for any tort* or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." *Id*. § 55-7B-2(i) (emphasis supplied). This includes "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services." *Id*.; *see also State ex rel. W. Va. Univ. Hosps., Inc. v.  Scott*, 246 W. Va. 184, 193, 866 S.E.2d 350, 359 (2021).

"The failure to plead a claim as governed by the [MPLA] does not preclude application of the Act." Syl. Pt. 4, *Blankenship v. Ethicon, Inc*., 221 W. Va. 700, 702, 656 S.E.2d 451, 453 (2007). "Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by [the MPLA[4]], the Act

---

[4] The MPLA defines "health care" as follows:

(1) Any act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment;

(2) Any act, service or treatment performed or furnished, or which should have been

applies regardless of how the claims have been pled." *Id*. However, if "the action in question was outside the realm of the provision of ['health care,'] the statute does not apply." *Id*. at 707, 656 S.E.2d at 458 (alteration in original) (quoting *Gray v. Mena*, 218 W. Va. 564, 570, 625 S.E.2d 326, 332 (2005)).

The actions in question here -- namely, that medical staff ignored inmate sick calls and emergent medical needs, failed to send inmates with serious medical needs to an outside hospital for treatment, falsified medical documentation, and failed to attend to inmates who they knew were injured as a result of beatings by correctional officers [Doc. 433 at ¶¶ 209–13, 235–37] -- all undoubtedly relate to the provision of "health care." Because Counts VIII and IX are grounded in medical negligence, they are properly within the purview of the MPLA.[5] Accordingly, the medical negligence claims in Counts VIII and IX require these footings:

> [T]he health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession

---

> performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services; and
>
> (3) The process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers.

W. Va. Code § 55-7B-2(e).

[5] The Court notes that Plaintiffs generally allege medical staff "are aware that inmates are being beaten by correctional officers without just cause, but do nothing about it." [Doc. 433 at ¶ 209]. Such an allegation could conceivably give rise to a negligence claim against medical staff for acts or omissions not within the context of rendering "health care" were there some duty to protect or report the incidents to a supervising authority. However, Plaintiffs fail to identify any duty medical staff owed the inmates, aside from rendering heath care services, once medical staff became aware of the beatings. Thus, this allegation, without more, is insufficient to support a claim of negligence.

or class to which the health care provider belongs acting in the same or similar circumstances; and (2) such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3.

Plaintiffs simply allege "Defendants" owed to them -- and breached -- a duty of care. [Doc. 433 at ¶¶ 652–54, 659–63, 668–70]. They neglect mention of the precise duty owed by Wexford, much less how it breached and proximately caused injury. More importantly, they omit the applicable standard of care required by the Legislature in the MPLA. Thus, Plaintiffs' allegations are insufficient to give Wexford fair notice of what the claims are and the grounds upon which they rest.

Respecting *Prima Facie* Negligence in Count X, Plaintiffs allege "Defendants" violated *West Virginia Code* section 7-8-2a(a) and *West Virginia Code of State Rules* sections 95-1-8 and 95-1-10. [Doc. 433 at ¶¶ 668–669.] As noted, *West Virginia Code* section 7-8-2a(a) applies only to county commissions.  Furthermore, *West Virginia Code of State Rules* sections 95-1-8 and 95-1-10 were repealed in 2019. 2019 W. Va. Acts ch. 166, 1385. Plaintiffs' offhand suggestion their claim is based on unstated rules, policies, and procedures obviously runs afoul of federal pleading standards, even assuming those unidentified provisions applied to Wexford. [Doc 585 at 19–22].

Accordingly, Counts VIII through X are **DISMISSED WITHOUT PREJUDICE** with respect to Defendant Wexford, and the Joint Motion to Dismiss is **GRANTED** to the same extent. The Court emphasizes the claims unsuccessfully alleged are of the most significant variety. If properly pled in accordance with this written opinion and order, they may lead to a timely adjudication of quite serious wrongdoing.

16

### 3.    IIED

Defendant Wexford also seeks dismissal of Plaintiffs' Count XI claim for IIED. To prevail on an IIED claim, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 11, *Zsigray v. Langman*, 243 W. Va. 163, 166, 842 S.E.2d 716, 719 (2020) (quoting Syl. Pt. 3, *Travis v. Alcon Lab'ys, Inc.,* 202 W. Va. 369, 369, 504 S.E.2d 419, 421 (1998)); *see also Hines v. Hills Dep't Stores, Inc.*, 193 W. Va. 91, 98, 454 S.E.2d 385, 392 (1994) (Cleckley, J., concurring) (*per curiam*) (first proposing this four-part formulation).

Plaintiffs omit, at a minimum, how Defendant Wexford's conduct factually blossomed into the serious misconduct required by the first and second elements. Accordingly, Count XI is **DISMISSED WITHOUT PREJUDICE** against Wexford, and the Joint Motion to Dismiss is **GRANTED** to the same extent.

### 4.    Civil Conspiracy

The Count XII claim for Common Law Civil Conspiracy is subject to summary disposition. A common law civil conspiracy requires "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. Pt. 3, *Jane Doe-1 v. Corp. of Pres. of Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 432, 801 S.E.2d 443, 448 (2017) (quoting Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009)). Plaintiffs allege that Defendants had

17

a meeting of the minds and committed overt acts to accomplish the tortious actions and injuries described in the allegations. [Doc. 433 at ¶¶ 466–67]. Those labels, legal conclusions, and "formulaic recitation of the elements" are, as noted throughout, insufficient. *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Accordingly, Count XII is **DISMISSED WITHOUT PREJUDICE** as to Wexford for failure to state a claim, and the Joint Motion to Dismiss is **GRANTED** to the same extent.

## IV.

Based upon the foregoing discussion, the Court **ORDERS** as follows respecting the Joint Motion to Dismiss and additional pending motions herein:

1. Defendants' Joint Motion to Dismiss the Second Amended Complaint [**Doc. 433**] is **GRANTED IN PART** and

   a. Counts III, VI, VII, VIII, IX, X, XI, XII are **DISMISSED WITH PREJUDICE** as to the County Defendants;

   b. Counts VIII through XII are **DISMISSED WITHOUT PREJUDICE** as to Defendant Wexford;

   c. The entirety of Plaintiffs' Section 1983 claims against Defendant Wexford are **DISMISSED WITHOUT PREJUDICE**; and

   d. The claims in (a) through (c) above may be lodged anew via an amended pleading filed on or before March 20, 2024, along with the supporting explanation as to the claims set forth in (a), as required *supra*.

2. Plaintiffs' Motion to Appoint Interim Class Counsel [**Doc. 205**], filed April 25, 2023, Motion for Finding of Contempt [**Doc. 216**], filed May 2, 2023, Motion for a Finding of Spoliation [**Doc. 373**], filed July 6, 2023, and Motion for Class Certification [**Doc.**

**518**], filed August 9, 2023, are **DENIED WITHOUT PREJUDICE** with leave to refile in the event the pending settlement is rejected;

3. Plaintiffs' Motion to Set Expedited Deadline for Service of Defendants' Discovery Responses if Defendants' Motion is Denied [**Doc. 368**], filed June 28, 2023, is **DENIED AS MOOT**;

4. Defendant Wexford's Joint Motion to Seal Exhibit 8 to Plaintiffs' Motion for Class Certification [**Doc. 527**], filed August 11, 2023, is **GRANTED**;

5. Defendants' Joint Motion to Strike Certain Exhibits Attached to Plaintiffs' Motion for Class Certification [Doc. 567], filed August 23, 2023, is **DENIED WITHOUT PREDJUDICE** with leave to refile in the event the pending settlement is rejected; and

6. The Order and Proposed Findings and Recommendation [**Doc. 774**], entered October 30, 2023, is provisionally stricken, along with the motions proposed for adjudication therein [**Docs. 600, 713**], with their revival and objections thereto [**Doc. 784**] to be addressed as necessary in the event the settlement is rejected.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER:        March 13, 2024



Frank W. Volk
United States District Judge