IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MICHAEL D. ROSE et al.,**

   **Plaintiffs,**

v.                                                                    **Civil Action No. 5:22-cv-00405**
                                                                       **Honorable Frank W. Volk**

**WEXFORD HEALTH SOURCES, INC., et
al.,**

   **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WEXFORD HEALTH
SOURCES, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**NOW COMES** the Defendant Wexford Health Sources, Inc. (hereinafter "Wexford"), by

counsel, Jordan K. Herrick, David E. Schumacher, David L. Shuman, Jr. and the law firm of Bailey

& Wyant, PLLC, and hereby offers the following Memorandum of Law in support of its

contemporaneously filed Motion to Dismiss the Third Amended Complaint.

**I.      STATEMENT OF THE CASE**

The operative Complaint in the above-captioned lawsuit entitled the Third Amended Class

Action Complaint was filed on July 30, 2024. (ECF No. 946). Wexford is named as one of the

Defendants. In the Third Amended Complaint, nine (9) Plaintiffs are named. However, only three –

Steven Martin, Elgie Adkins, and, Sabrina Eagle, have asserted claims against Wexford and its

employees, representatives, and agents. (*Id.*, ¶¶ 15, 30, 37).

Steven Martin alleges that while he was Wexford's patient at Southern Regional Jail

(hereinafter "SRJ"), various Wexford employees, agents, or representatives failed to timely conduct

an EKG. (*Id.*, ¶ 357). Plaintiff Martin alleges that his EKG was abnormal when it was conducted.

1

(*Id.*, ¶ 358). He alleges that as a direct and proximate result of this action and inaction, he suffered emotional distress and increased risk of harm. (*Id.*, ¶ 359).

Elgie Adkins alleges that while he was Wexford's patient at SRJ, various Wexford employees, agents, or representatives failed to provide him with a 14-day physical timely; failed to send him for surgical consult for a hernia; and, failed to provide him with dental care. (*Id.*, ¶¶ 399, 408, 418). He alleges that as a direct and proximate result of this action and inaction, he suffered emotional distress, mental anguish, physical pain and suffering, and increased risk of harm. (*Id.*, ¶ 422).

Last, Sabrina Eagle alleges that while she was Wexford's patient at SRJ, she failed to receive a mental health appointment and did not receive mental health medications. (*Id.*, ¶¶ 451-452). She alleges that as a direct and proximate result of this action and inaction, she suffered emotional distress, mental anguish, and increased risk of harm. (*Id.*, ¶ 453).

Based on these factual allegations, Plaintiffs assert four causes of action against Wexford. First, in Counts I and II, they allege that these actions violated their rights under the Eighth or Fourteenth Amendment of the *United States Constitution*. (*Id.*, ¶¶ 454-553). Second, in Count III, they allege that Wexford is liable for common law conspiracy and conspiracy to violate their Eighth and Fourteenth Amendment rights under the *United States Constitution*. (*Id.*, ¶¶ 554-569) Last, in Count IV, they allege that Wexford is liable pursuant to the West Virginia Medical Professional Liability Act. (*Id.*, ¶¶ 570-593).

The allegations against Wexford fall woefully short of the pleading standards set forth in Rule 8 of the *Federal Rules of Civil Procedure*. Therefore, as a matter of law, Wexford is entitled to dismissal.

## II.    LEGAL STANDARD

"In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (1993) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)). Nonetheless, the Fourth Circuit has noted, "[t]he court need not, however, accept unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "The inclusion of conclusory legal terms, however, does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion, 'since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.'" *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir.1994); *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir.2001)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal* 679.

For the second step, a court must take the remaining factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. See *Twombly* at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

## III.    ARGUMENT

### A.    Counts I and II – 42 U.S.C. § 1983.

Plaintiff's claims against Wexford in Counts I and II are brought pursuant to 42 U.S.C. § 1983. Count I of the Third Amended Complaint seeks damages for violation of Eighth Amendment rights and Count II seeks damages for violation of Fourteenth Amendment rights. However, the Third Amended Complaint fails to set forth sufficient facts to support a claim for violation of either Amendment of the *United States Constitution* nor that said violation occurred as a proximate result of an official policy or custom of this Defendant. Therefore, dismissal is warranted.

#### 1.    There are insufficient facts pled in the Third Amended Complaint that any of the Plaintiffs' Constitutional rights were violated.

Plaintiffs Martin, Adkins, and Eagle fail to set forth in the Third Amended Complaint whether they were pre-trial detainees or post-conviction inmates during the time in which they were Wexford's patients. Thus, both the Eighth and Fourteenth Amendments must be analyzed

4

accordingly. (ECF No. 946, ¶¶ 12, 27, 34).

### a.    Eighth Amendment

The Eighth Amendment to the *United States Constitution* forbids more than just "physically barbarous punishments"—it extends to "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society[,] or which involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks and citations omitted). Deliberate indifference to a prisoner's serious medical needs constitutes the type of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.* at 104 (citing *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). But not every "claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a claim under the Eighth Amendment for deliberate indifference to medical needs, a plaintiff must plead facts sufficient to show that (1) objectively, a deprivation of medical care was "sufficiently serious," and (2) subjectively, prison officials were deliberately indifferent to the plaintiff's serious medical needs "with a sufficiently culpable state of mind." *See Wilson v. Seiter*, 501 U.S. 294, 296-98, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Serious medical conditions are those recognized to affect an essential life function. *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); *Webb v. Prison Health Services*, 1997 U.S. Dist. LEXIS 7821, 1997 WL

298403 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious).

As it pertains to the objective component, Plaintiff Martin fails to assert any diagnosis in his allegations. He simply states that his EKG was abnormal. He makes no allegations that it mandated treatment. He makes no allegations that it was so easily recognizable that it necessitated a doctor's attention. Plaintiff Eagle simply alleges she did not receive mental health medications or receive a mental health appointment. She makes no allegations that she suffered from any mental health condition, though. One of Plaintiff Adkins' three claims fall short of successfully alleging the objective portion of the deliberate indifference analysis. First, he alleges he did not receive his fourteen-day physical timely. This objectively on its face lacks any diagnosis or severity.

Even if these allegations could survive the objective component, the Third Amended Complaint fails to assert any claims that support the subjective portion of the analysis. Turning to the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). A finding of deliberate indifference requires more than a showing of mere negligence. *Farmer* at 835; see also *Estelle* at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* at 837. A

6

prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Further, "[a]n inmate's disagreement with a medical officer's diagnosis or course of treatment will not support a valid Eighth Amendment claim." *Daye v. Proctor*, Civil Action No. 1:13-cv-227, 2015 U.S. Dist. LEXIS 25833, *9 (N.D.W. Va. 2015) (Keeley, J.) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).

None of the three Plaintiffs assert any allegations that any of the medical care providers actions rose to the level of deliberate indifference. Plaintiff Martin simply alleges he needed an EKG, and it was not done timely and when he did get the EKG, it was abnormal. He asserts no allegations that any of the medical care providers knew he needed the EKG and ignored the need to get the EKG and that the delay resulted in the abnormal EKG. He simply jumps to the conclusion that the failure to "timely" provide the EKG resulted in the abnormal EKG without any factual allegations connecting the two, let alone any allegations that the medical care providers' actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" so as to support a claim for deliberate indifference. *Miltier, supra.* Therefore, Plaintiff Martin cannot proceed on a deliberate indifference claim.

Plaintiff Adkins' alleged delay in getting the 14-day physical also falls short of deliberate indifference. The Fourth Circuit has held that there is no Eighth Amendment violation:

> unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe

pain." See *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); see also *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

*Formica v. Aylor*, 739 Fed. Appx. 745, 755 (4th Cir. 2018). Substantial harm may also be "a life-long handicap or permanent loss." *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmate v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Plaintiff Adkins fails to assert any substantial harm by not timely performing the 14-day physical. Therefore, the claim for deliberate indifference must fail.

This same analysis can be applied to the delay in the dental examination. Plaintiff Adkins alleges that he ultimately had his teeth extracted. However, he fails to allege any facts that this delay unnecessarily prolonged his pain or that his complaints were being ignored. Thus, this claim for deliberate indifference must fail.

Last, as it pertains to the hernia and referral to a surgeon, Plaintiff Adkins fails to sufficiently allege that he suffered any physical harm by not being referred to a surgeon. "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference." *King v. U.S.*, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (quoting *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 Fed. Appx. 356 (4th Cir. 2013), *citing Russell v. Shaffer*, 528 F.2d 318, 319 (4th Cir. 1975). This claim boils down to nothing more than a disagreement as to how to treat Plaintiff Adkins' hernia. Thus, his claim for deliberate indifference must fail.

Regarding Plaintiff Eagle, there are absolutely no facts alleged that the failure to provide her

the mental health medications or complete the mental health appointment were done knowing of and disregarding an excessive risk to her health and safety. *Jackson, supra.* Thus, her deliberate indifference claim must fail.

None of the Plaintiffs' claims against Wexford meet the pleading standards for a deliberate indifference claim. They simply allege that there was treatment they did not receive or did not receive timely and that it violated their constitutional rights. There are simply insufficient facts pled that would permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense. *Iqbal*, 550 U.S. at 679. Therefore, the Motion to Dismiss must be granted.

### b.    Fourteenth Amendment

The Fourth Circuit Court of Appeals has recently held that the test for deliberate indifference under the Fourteenth Amendment is objective, in contrast to the subjective test applied for such claims under the Eighth Amendment. *Short v. Hartman*, 87 F.4th 539, 608-09 (4th Cir. 2023) (relying on *Kinsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The court set the standard as follows:

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611.

None of the three Plaintiffs assert any allegations that any of the medical care providers actions rose to the level of conduct set forth in *Short*. Plaintiff Martin simply alleges he needed an EKG and it was not done timely and when he did get the EKG, it was abnormal. He fails entirely to plead that he suffered a "medical condition or injury that posed a substantial risk of serious harm…"

Plaintiff Martin only alleges that he was delayed in getting an EKG – and no facts to support that he had a serious medical condition – and that when he received his EKG, it was abnormal. Again, Plaintiff Martin does not allege that the abnormal EKG results indicated that he suffered from a serious medical condition. There are also no facts pled to indicate that any of the Wexford Defendants failed to act and/or their inaction posed an unjustifiably high risk of harm to Plaintiff Martin. Quite simply, Plaintiff Martin pleads that he had an abnormal EKG and pleads no other facts to establish that Defendants acted with the requisite intent to establish a Fourteenth Amendment violation.

The same is true for Plaintiff Adkins. First, regarding the failure to conduct a 14-day physical, Plaintiff Adkins has not, and cannot, plead that he suffered from a serious medical condition or injury that posed a significant risk of harm. He merely alleges that he did not have a physical. Not only has Plaintiff Adkins failed to plead that he suffered from a medical condition or injury, but he has also failed to demonstrate any facts to support that the alleged inaction in providing him with the physical posed an unjustifiably high risk of harm to Plaintiff Adkins. Therefore, his Fourteenth Amendment claim must fail.

Next, Plaintiff Adkins' claims that his dental requests resulted in deliberate indifference also fail. As a result of the delay, Plaintiff Adkins alleges that he ultimately had his teeth extracted. Plaintiff Adkins fails to allege that he was suffering from a serious medical condition and, further, fails to allege that his teeth were extracted due to any inaction on the part of the Defendants. To establish a Fourteenth Amendment claim, Plaintiff Adkins is required to plead factual support to establish that the inaction "posed an unjustifiably high risk of harm." Plaintiff Adkins fails to meet this burden and his claims related to delays in dental care must fail.

Last, as it pertains to the hernia and referral to a surgeon, Plaintiff fails to sufficiently allege

10

that he suffered any physical harm by not being referred to a surgeon.  Plaintiff Adkins does not allege that the delay in the referral resulted in having an operation that he otherwise would not have had.  To establish deliberate indifference under the Fourteenth Amendment, Plaintiff Adkins must demonstrate that he was suffering from a medical condition and that the inaction by Defendant posed an unjustifiably high risk of harm to him.  He simply does not allege facts to support this and meet his burden.  First, Plaintiff Adkins has not plead that his condition was a serious medical condition or an injury that posed a risk of serious harm.  He merely pleads that he had a hernia and was not timely provided a referral.  This does not rise to the level required to establish a deliberate indifference claim and his claims fail as a matter of law.

Lastly, regarding Plaintiff Eagle, there are absolutely no facts alleged that the failure to provide her the mental health medications or complete the mental health appointment demonstrated a medical condition or serious injury that posed a substantial risk of harm.  Plaintiff Eagle does not even allege that she suffered from a mental health condition.  Plaintiff Eagle pleads no facts to support a Fourteenth Amendment deliberate indifference claim and, therefore, her claims fail as a matter of law.

> ### 2. There are insufficient facts pled in the Third Amended Complaint that the alleged constitutional rights were the result from the application of an official policy or custom.

Because Wexford is a private corporation rather than an individual, Plaintiffs must also show that the deprivation of rights resulted from the application of an official policy or custom. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999) (applying the "principles of § 1983 municipal liability articulated in *Monell* and its progeny" to private corporations). The Fourth Circuit Court of Appeals has held:

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2)

through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal punctuation and quotation marks omitted).

As with a corporation such as Wexford, policy may be made through formal decision-making channels or through "custom [which] may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691). A custom becomes attributable to the entity "when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d, 1380, 1387 (4th Cir. 1987). A showing of policy through deliberate indifference requires "continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted).

The Supreme Court has urged particular caution where *Monell* liability is premised on either deliberate indifference or on custom. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* Thus, a plaintiff must point to a "specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later." *Spell*, 824 F.2d at 1390. "Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single

violation charged." *Id*. at 1388.

In this case, Plaintiffs have failed to make sufficient allegations to satisfy *Monell* in that their allegations of a policy or custom on the part of Wexford are wholly conclusory. Both the *Twombly/Iqbal* standard of federal pleading, and case law specific to correctional medical care have held this to be insufficient to state a claim. *Twombly* and *Iqbal* established that a plaintiff must plead a ***plausible*** claim for relief, and not merely recite conclusory allegations devoid of any factual support. *Iqbal* at 679. As the Fourth Circuit has precisely held, the *Twombly/Iqbal* standard applies to allegations about the existence of a policy or custom under *Monell*. See *Cook v. Howard*, 484 F. App'x 805, 810-811 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1600, 185 L. Ed. 2d 580 (2013). In *Cook*, the Fourth Circuit affirmed the dismissal of *Monell* claims against the Baltimore City Police Department, observing that "[t]he amended complaint suffers from a number of infirmities with respect to the claims against the BCPD. Most strikingly, it repeatedly sets forth legal conclusions masquerading as factual allegations." *Id*. at 810.

Rulings of this type have been followed by other Courts in this Circuit to dismiss *Monell* claims effectively identical to the Plaintiff's in this case. In *Taylor v. Somerset Cnty. Comm'rs*, 2016 U.S. Dist. LEXIS 94201, 2016 WL 3906641 (D. Md., Jul. 19, 2016), the District of Maryland held the following language to be insufficient to state a *Monell* claim alleging inadequate medical care while incarcerated:

> The above described acts and omissions, which constituted unconstitutional cruel and unusual punishment suffered by Ms. Taylor, was [sic] part of an official policy or custom and was part of an official culture of deliberate ignorance and indifference to the health and medical needs of inmates, and specifically Ms. Taylor.

*Id*. at 28-29. All the allegations against Wexford are conclusory and comparable to those in *Taylor*. For instance, Plaintiff pleads:

> Wexford's policy or custom of failing to enforce NCCHC standards, its own policies
> and procedures, WVDCR policies, and the standard of care, as well as its failure to
> prevent short staffing and excessive overdue tasks resulted in Steven Martin and
> other similarly situated, not receiving a timely EKG.

(ECF 946, ¶ 490). The remaining allegations against Wexford with regarding to its policies and customs are simply restatements of Plaintiff's allegations of wrongdoing against Wexford and do not establish a policy or custom. (*Id.*, ¶ 490-500). These allegations are no less conclusory than the one found insufficient in *Taylor*. It alleges no facts about how this purported pattern was carried out or the identity of the persons authorizing this pattern. Further, a "pattern" standing alone is insufficient to state a *Monell* claim. Rather, facts must be alleged which show that "the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d, 1380, 1387 (4th Cir. 1987). This sparse, conclusory allegation alleges no such thing. Therefore, the Third Amended Class Action Complaint fails to state a claim under *Monell*, and Plaintiffs' 42 U.S.C. § 1983 claims against Wexford must be dismissed, with prejudice.

## B. Counts III – Conspiracy to Commit Eighth and Fourteenth Amendment Violations.

"To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [… the] deprivation of a constitutional right [. . . ]." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

The Third Amended Complaint fails to establish that the Defendants acted jointly in concert and performed some overt act. Plaintiffs generally allege that the "Medical Defendants" had conversations with WVDCR Defendants regarding several issues including staffing and the ability to timely carry out sick calls. (ECF 946, ¶ 562). The Third Amended Complaint then alleges that the

14

"Medical Defendants" and WVDCR conspired to deprive inmates of constitutionally guaranteed medical care due to failing to somehow make changes to the medical staffing and correctional officer staffing issues. (*Id.*, ¶¶546-566). Plaintiffs fail to allege any overt acts in furtherance of a conspiracy and, further, fail to allege that a conspiracy even exists. The conclusory facts contained in the Third Amended Complaint are insufficient to establish that a conspiracy existed and must fail as a matter of law.

### C.      Count III – Common Law Conspiracy.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009)." A civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id.* at Syl. Pt. 9. Notably, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453, 460 (W. Va. 1986) (quoting *Wise v. S. Pac. Co.*, 223 Cal. App. 2d 50, 72, 35 Cal. Rptr. 652 (1963)). Additionally, one cannot conspire to be negligent. See, e.g., *Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 239 W. Va. 428, 459, 801 S.E.2d 443, 473 (W. Va. 2017); *William v. AES Corp.*, 28 F. Supp. 3d 553, 574-575 (E. D. Va. 2014) (applying Virginia law) ("Plaintiffs fail to state an actionable claim for any underlying tort other than ordinary negligence. Thus, Plaintiffs' civil conspiracy claim fails.").

Here, Plaintiffs have admitted in the Third Amended Complaint that Wexford is a contractor for the West Virginia Division of Corrections and Rehabilitation. (ECF 946, ¶¶ 219-221). Further, all claims asserted against Wexford arise out of the contract to provide medical care at SRJ. Therefore, Wexford, acting in its official capacity as the medical care provider at SRJ cannot, pursuant to West Virginia law, conspire with its principal or the principal's employees. Plaintiffs' claims for common law civil conspiracy must be dismissed. Assuming, *arguendo*, that Wexford can somehow conspire with the WVDCR, the Third Amended Complaint asserts nothing more than conclusory allegations and fail to meet the pleading requirements of Rule 8. *Twombly* and *Iqbal* established that a plaintiff must plead a ***plausible*** claim for relief, and not merely recite conclusory allegations devoid of any factual support. *Iqbal* at 679. Therefore, Plaintiff's claim fails as a matter of law.

### D.    Count IV – Medical Negligence.

Under the West Virginia Medical Professional Liability Act, to prevail in a medical negligence action, a plaintiff is required to offer proof that "an injury or death resulted from the failure of a health care provider to follow the accepted standard of care." *W.Va. Code* § 55-7B-3(a). There are two elements of proof required:

(1)    The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and,

(2)    Such failure was a proximate cause of the injury or death.

*W.Va. Code* § 55-7B-3(a).

Neither of the three Plaintiffs asserting claims against Wexford can meet the requirements of W. Va. Code § 55-7B-3(a). Plaintiffs' Third Amended Complaint fails entirely to establish what the standard of care is, much less how any action and/or inaction of Wexford violated it. In order to

16

demonstrate a claim for medical malpractice, the Plaintiff must plead the standard of care by demonstrating that "the health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances." *W. Va. Code § 55-7B-3(a)*. In the Third Amended Complaint, Plaintiffs merely assert that Wexford's "deviation from the standard of care directly and proximately resulted in [Plaintiffs]…suffering emotional distress and increased risk of harm." (ECF 946, ¶ 586). However, nowhere in the Third Amended Complaint is the actual standard of care identified other than conclusory statements regarding staffing and unfulfilled sick calls. Absent more, the Third Amended Complaint fails to sufficiently plead the standard of care allegedly violated by Wexford.

Further, no Plaintiff has plead that any failure on the part of Wexford was the proximate cause of any injury or death. The Third Amended Complaint generally alleges that Plaintiffs suffered "emotional distress, mental anguish, physical pain and suffering, and increased risk of harm" due to the alleged breaches of the medical standard of care. However, Plaintiffs fail to demonstrate or allege how any such damages were proximately caused by Wexford and, further, fail to establish an actual injury as a result of Wexford's alleged breaches of the standard of care. Plaintiff Martin simply alleges he needed an EKG and it was not done timely and when he did get the EKG, it was abnormal. He alleges no further injuries caused by the delay. This is insufficient to state a claim under W. Va. Code § 55-7B-3(a). As for Plaintiff Adkins, nowhere in his allegations relating to the failure to obtain a physical; the failure for a timely dental appointment; or the failure for a referral for his hernia does he allege he suffered any type of damage. The general damages cited in the Third Amended Complaint are not sufficient and do not establish a causal link to any allegations against Wexford. Lastly, Plaintiff Eagle alleges no damages whatsoever. She fails to

17

even allege she suffered from an alleged mental health condition.  There are simply no allegations to support a finding that Wexford was the proximate cause of any alleged damages suffered by Plaintiff Eagle. As a result, Plaintiffs' MPLA claims must be dismissed, with prejudice.

## IV.    CONCLUSION

**WHEREFORE**, for the reasons stated herein, Defendant Wexford Health Sources, Inc. respectfully prays this Honorable Court **GRANT** this Defendant's Motion to Dismiss with prejudice and grant such other relief as this Honorable Court deems just and proper.

**WEXFORD HEALTH SOURCES, INC.,
By Counsel,**

  /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
David E. Schumacher (WV Bar #3304)
David L. Shuman, Jr. (WV Bar #12104)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: (304) 345-4222
F: (304) 343-3133
jherrick@baileywyant.com
dschumacher@baileywyant.com
dshuman@baileywyant.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

**MICHAEL D. ROSE et al.,**

    **Plaintiffs,**

v.
                                  **Civil Action No. 5:22-cv-00405**
                                  **Honorable Frank W. Volk**

**WEXFORD HEALTH SOURCES, INC.,**
**et al.,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WEXFORD HEALTH SOURCES, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, August 16, 2024:

D. C. Offutt, Jr.
Anne Liles O'Hare
Mark R. Simonton
Elijah S. Stevens
Offutt Simmons Simonton, PLLC
949 Third Avenue, Suite 300
P.O. Box 2868
Huntington, WV 25701
Attorney For: PrimeCare Defendants

Robert P. Dunlap
Dunlap & Associates, PLLC
345 Prince Street
Beckley, WV 25801
Attorney For: Plaintiffs

Stephen P. New
Emilee Wooldridge
Stephen New & Associates
430 Harper Park Drive
PO Box 5516
Beckley, WV 25801

Attorney For: Plaintiffs

Timothy P. Lupardus
Lupardus Law Office
275 Bearhole Road
PO Box 1680
Pineville, WV 24874
Attorney For: Plaintiffs

Zachary K. Whitten
Whitten Law Office, L.C.
P.O. Box 753
Pineville, WV 24874
Attorney For: Plaintiffs


  /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
David E. Schumacher (WV Bar #3304)
David L. Shuman, Jr. (WV Bar #12104)