## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**BRYAN STAFFORD,** *in his capacity as the*
*Executor of the Estate of Thomas Fleenor, Jr.,*
*et al.,*

      **Plaintiffs**,

**v.**

**PRIMECARE MEDICAL, INC.,** *et al.*,

      **Defendants.**

      **Civil Action No. 5:22-CV-00405**
      **Hon. Frank W. Volk**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DONNA DEAN-CHRIVIA'S MOTION TO DISMISS

Defendant Donna Dean-Chrivia ("**Defendant Dean-Chrivia**") is a newcomer to this putative class action.  On July 30, 2024, the Plaintiffs used their Third Amended Class Action Complaint (the "**TAC**"), ECF No. 946—now their <u>fourth bite</u> at the same litigation apple—to bring her into the fold nearly two years after this litigation originally commenced.  The most impressive aspect of the seventy-seven page TAC is how the Plaintiffs managed to spill so much ink drafting a pleading that—quite literally—says <u>nothing</u> of substance about Defendant Dean-Chrivia.  Out of the TAC's six-hundred-eighteen paragraphs, she is referenced in just <u>four</u> of them.  (TAC ¶¶ 92, 95, 442–43, ECF No. 946.)  The allegations of the TAC are so generalized, conclusory, and collective that the reader is left to guess why the Plaintiffs are even suing Defendant Dean-Chrivia in the first place.  In fact, not a single count of the TAC bothers to mention her by name (*see id.*, ¶¶ 454–618), thereby making it impossible to discern from the face of the TAC even what causes of action are being asserted against her.

The TAC exemplifies an approach to pleading best summarized as: sue first, then figure out if there happens to be a factual basis for the suit later.  Of course, that will not do.  For the TAC

to meet the demands of Rule 8 of the Federal Rules of Civil Procedure, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief <u>that is plausible on its face</u>'" in the sense that its well-pled factual allegations allow this Court "to draw the reasonable inference that [Defendant Dean-Chrivia] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The TAC—which hardly utters a single syllable about Defendant Dean-Chrivia—falls woefully short of meeting that standard, so it must be dismissed with prejudice as to her, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.    **FACTUAL BACKGROUND**

On July 30, 2024, the Plaintiffs filed the operative TAC, in which the Plaintiffs—for the first time during this multi-year litigation—named Donna Dean-Chrivia as a defendant.  To describe the TAC's allegations against Defendant Dean-Chrivia as threadbare would be a profound exaggeration.  She is mentioned <u>just four times</u> in the seventy-seven page, six-hundred-eighteen paragraph TAC.  (TAC ¶¶ 92, 95, 442–43, ECF No. 946.)  In fact, the allegations of the TAC are so generalized, conclusory, and collective that it is impossible to discern from the face of the TAC why Defendant Dean-Chrivia has been sued or even what causes of action are being asserted against her.  She is not mentioned by name in a single count of the TAC.  (*Id.*, ¶¶ 454–618.)

The only specific allegations made against Defendant Dean-Chrivia, which must be accepted as true for the time being, fall dramatically short of pleading a plausible claim for relief against her.  The TAC alleges that Defendant Dean-Chrivia was, "at all times relevant" to the TAC, a "medical provider" of some unspecified sort who was "employed or contracted by Wexford to provide medical services" of an undisclosed kind "to pretrial detainees and inmates at SRJ [i.e., the Southern Regional Jail]."  (*Id.*, ¶ 92.)  She is listed alongside seventeen other named individuals as being, for some unspoken reason, "responsible for the provision of medical services to pretrial

detainees [at the] Southern Regional Jail which was constitutionally adequate and which met the applicable standard of care." (*Id.*, ¶ 95 (footnote omitted).)  Of the remaining named Plaintiffs, Defendant Dean-Chrivia is alleged to have been involved with only one: Sabrina Eagle, who was "a pretrial detainee and/or" an "incarcerated" convict at the Southern Regional Jail ("**SRJ**") from June 25, 2022, through September 30, 2022. (*Id.*, ¶ 34.)  During Plaintiff Eagle's "time as a Wexford patient," the TAC alleges she was "under the care of" six named individuals, one of whom was Defendant Dean-Chrivia. (*Id.*, ¶ 442.)  In a conclusory and generalized fashion, the TAC alleges these six named individuals, at some undetermined point in time and in some unparticularized manner, "failed to ensure that Plaintiff Eagle received timely and adequate mental health care." (*Id.*, ¶ 443.)

The most remarkable aspect of the TAC is just how few facts are actually alleged against Defendant Dean-Chrivia.  Despite being around the same length as a novella,[1] the dearth of factual allegations pled against Defendant Dean-Chrivia is evident.  For example, the TAC fails to meaningfully identify who Defendant Dean-Chrivia is.  Only her ostensible employment or contractual relationship with Defendant Wexford Health Sources, Inc. as an unspecified "medical provider" is alleged. (*Id.*, ¶ 92.)  The TAC does not disclose what type of provider (e.g., physician, nurse, counselor, psychologist, social worker, etc.) she is, what kind of position she purportedly held at the SRJ, or what specific responsibilities were entrusted to her and by whom. (*See generally id.*)  Perhaps most significantly, the TAC is deafeningly silent about her involvement with Plaintiff Eagle, including when she first interacted with Plaintiff Eagle, in what capacity she interacted with Plaintiff Eagle, how and when Plaintiff Eagle supposedly came to be under her

---

[1] *See Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*, 444 N.Y.S.2d 79, 79 (N.Y. App. Div. 1981) (describing a complaint "consisting of 42 pages and 104 paragraphs" as "a veritable novella").

care, and why she was allegedly responsible for ensuring that Plaintiff Eagle received timely and adequate mental health care.  (*See generally id.*)

Although Defendant Dean-Chrivia is not named in a single count of the TAC, counsel for the Plaintiffs have represented that Plaintiff Eagle is asserting four claims against her.  In **Count I**, the TAC alleges, pursuant to 42 U.S.C. § 1983, a claim for deliberate indifference to serious medical needs arising from the Eighth Amendment to the U.S. Constitution.  (*Id.*, ¶¶ 454–503.)  **Count II** alleges an identical claim arising from the Fourteenth Amendment to the U.S. Constitution.  (*Id.*, ¶¶ 504–53.)  In **Count III**, Plaintiff Eagle alleges federal and, ostensibly, state law claims for conspiracy to deprive her of constitutionally guaranteed medical care.  (*Id.*, ¶¶ 554–69.)  Lastly, in **Count IV**, a claim for medical negligence under the West Virginia Medical Professional Liability Act ("**MPLA**"), W. VA. CODE §§ 55-7B-1 to -12, is alleged.  (*Id.*, ¶¶ 570–93.)  Not a single one of these causes of action alleges a plausible claim for relief against Defendant Dean-Chrivia, so each must be dismissed—with prejudice, given that the TAC represents the Plaintiffs' fourth bite at the apple—for failing "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

## II.    LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a); *see also McCaffrey v. Chapman*, 921 F.3d 159, 163 (4th Cir. 2019).  The purpose of a "motion to dismiss pursuant to Rule 12(b)(6)" of the Federal Rules of Civil Procedure is to "test[] the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019) (citing FED. R. CIV. P. 12(b)(6)).  In assessing such a motion, this Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Bass v. Weinstein Mgmt. Co.*, 56 F.4th 355, 360 (4th Cir.

2022) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  However, this presumption of truth does not apply to "legal conclusion[s]" masquerading as "factual allegation[s]," to "unwarranted inferences, unreasonable conclusions, or arguments," or to "naked assertions devoid of further factual enhancement," which this Court must rather "put aside."  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (quoting *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In order to meet this requirement, a plaintiff must "do more than 'plead[] facts that are merely consistent with a defendant's liability.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Instead, "the facts alleged must 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Woods*, 855 F.3d at 647 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "A plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022).

## III.  ARGUMENT

### A.    Count I Fails to State an Eighth Amendment Claim for Deliberate Indifference Against Defendant Dean-Chrivia That Is Plausible On Its Face

Count I of the TAC fails to allege against Defendant Dean-Chrivia a plausible claim for deliberate indifference to serious medical needs under the Eighth Amendment.  To plead such a claim, Plaintiff Eagle must plausibly allege not only that she was a convicted inmate, *see Bell v.*

*Wolfish*, 441 U.S. 520, 535–37 & n.16 (1979) (holding the Eighth Amendment only protects post-conviction detainees), but also that Defendant Dean-Chrivia was "deliberately indifferent to a substantial risk to [her] safety or medical needs," *King v. Riley*, 76 F.4th 259, 264 (4th Cir. 2023) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976)).

Establishing an Eighth Amendment claim of deliberate indifference is admittedly no easy task. *See Jackson v. Lightsey*, 775 F.3d 170, 178–79 (4th Cir. 2014) (describing the required showing as a "high bar" and an "exacting standard"). It requires, at this stage, well-pled allegations sufficient to satisfy both "an objective and subjective element." *King*, 76 F.4th at 264 (citing *Farmer*, 511 U.S. at 834–37; *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022)). "The objective element requires a 'serious' medical condition," *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (quoting *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021)), while the subjective component requires factual allegations sufficient to show the defendant "had actual subjective knowledge of both **[a]** the inmate's serious medical condition <u>and</u> **[b]** the excessive risk posed by the official's action or inaction," *Jackson*, 775 F.3d at 178 (emphasis added) (citing *Farmer*, 511 U.S. at 837–39; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Where "a deliberate indifference claim is predicated on a delay in medical care," as is the case here, "there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (emphasis in original) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008) (per curiam)); *see also Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022).

### 1.    The TAC Fails to Plausibly Allege Plaintiff Eagle's Post-Conviction Incarceration.

The Eighth Amendment "has no application" where there has not been "a formal

adjudication of guilt against [an incarcerated person] at the time [she] required medical care." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Only a convicted inmate has the right to bring an Eighth Amendment claim for deliberate indifference, while only a pretrial detainee is capable of bringing such a claim under the Fourteenth Amendment.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015).  Obviously Plaintiff Eagle could not be both a pretrial detainee and a convicted inmate simultaneously.  Yet the TAC implausibly alleges that she was "a pretrial detainee and/or was incarcerated" post-conviction at the SRJ from June 25, 2022, through September 30, 2022.  (TAC ¶ 34 (emphasis added), ECF No. 946.)  Plaintiff Eagle cannot state a plausible claim for relief under the Eighth Amendment while hedging her actual penological status. The fact of the matter is: whether Plaintiff Eagle was a pretrial detainee or convicted inmate is easily and readily ascertainable, which begs the question why no attempt has been made to allege her actual status with precision.  Plaintiff Eagle's failure to allege such a basic and material fact speaks volumes about gamesmanship that is being played in the TAC and is fatal to Count I.

>       2.       **The TAC Fails to Plausibly Allege That Plaintiff Eagle Suffered From Any Medical Condition—Much Less a Serious Medical Condition.**

Furthermore, the TAC does not include a single well-pled allegation that Plaintiff Eagle in fact suffered from a serious medical condition that demanded professional intervention during the period of her confinement.  "[A] 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Iko*, 535 F.3d at 241 (omission in original) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).  In this Circuit, a prison inmate is only

>       entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty **(1)** that the prisoner's symptoms evidence a serious disease or injury; **(2)** that such disease or injury is curable or may be

substantially alleviated; **and (3)** that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.

*Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977) (emphasis added).  The "essential test" is "one of medical necessity," not "simply that which may be considered merely desirable."  *Id.* at 47–48.

In this case, the TAC does not allege that Plaintiff Eagle was afflicted with **any** mental health condition **at all** when she presented to the SRJ on June 25, 2022, or at any point thereafter—much less that her unpled and undisclosed condition was serious enough to mandate treatment as a matter of constitutional right.  (*See generally* TAC, ECF No. 946.)  The TAC is devoid of material factual allegations that are necessary to establish an objectively serious medical need.  For example, the TAC is silent about whether Plaintiff Eagle suffered from a mental health condition and, if so, what symptoms (if any) she experienced and displayed, whether (and what) treatment could have substantially alleviated the unpled symptoms of her undisclosed condition, and how a delay in providing care caused her substantial harm.  (*See generally id.*)

Although the TAC alleges Plaintiff Eagle's intake screening indicated "that she was under the care of a mental health provider and/or psychiatrist" (*id.*, ¶ 444), that singular allegation is insufficient to establish a serious medical need as a matter of law.  The bare allegation that an inmate's intake screening indicated, for instance, "a psychiatric history and a history of drug or alcohol abuse" does not equate to "an objectively serious medical need."[2]  *J.F. ex rel. Benton v. Correct Care Sols., LLC*, No. GJH-16-2177, 2017 WL 881814, at *5 (D. Md. Mar. 2, 2017).  Significantly more detail is required to plausibly allege an objectively serious medical need.  *See, e.g.*, *Wright v. United States*, No. 1:19-CV-146-FDW, 2020 WL 1674557, at *7 (W.D.N.C. Apr. 6, 2020) (granting motion to dismiss deliberate indifference claim because allegations of

---

[2] An inmate with a serious "psychological condition" who is known to be "on the verge of suicide" is the sort of "serious medical need to which state officials must . . . not be deliberately indifferent," *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 120 (4th Cir. 1990), but no allegations of that sort are made in the TAC.

"depression" and "mood disorders" were "too vague and conclusory" to qualify as serious medical needs), *aff'd per curiam sub nom. Wright v. Rich*, 836 F. App'x 179 (4th Cir. 2021). Even if Plaintiff Eagle happened to suffer from a mental health condition—which, again, has not been alleged—she still must plead sufficient <u>facts</u> from which this Court could reasonably infer her condition "was medically serious." *Snider v. Hughes*, 59 F.3d 167, 1995 WL 378519, at *2 (4th Cir. 1995) (unpublished table decision). That detail is missing from the TAC, and the absence of it dooms Count I.

> **3.      The TAC Fails to Plausibly Allege That Plaintiff Eagle Sustained Serious Harm From Any Supposed Delay in Treatment.**

In addition, the TAC neither alleges that Plaintiff Eagle suffered substantial harm, nor that her condition was markedly exacerbated on account of the alleged delay in medical care. (*See generally* TAC, ECF No. 946.) Although the TAC alleges that Plaintiff Eagle's "mental health appointment was rescheduled" (*id.*, ¶ 449) and that her undisclosed "mental health medications were not verified or administered" while she was incarcerated (*id.*, ¶ 452), mere "delay" in attending to her supposed medical need is "not enough" to allege a plausible claim of deliberate indifference, *Moskos*, 24 F.4th at 298. In this Circuit, a deliberate indifference claim "predicated on a delay in medical care" is cognizable only if "'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (emphasis in original) (quoting *Webb*, 281 F. App'x at 166–67).

Here, the TAC fails to allege facts from which this Court could reasonably infer any "marked" exacerbation of Plaintiff Eagle's unpled mental health condition or "serious harm" that occurred. The conclusory allegation that "Plaintiff Eagle suffered emotional distress, mental anguish, and increased risk of harm" (TAC ¶ 453, ECF No. 946) will not do, for it is just "the type

of 'unadorned, the-defendant-unlawfully-harmed-me accusation[]' and 'legal conclusion[]' that [is] insufficient to survive a Rule 12(b)(6) motion to dismiss," *Langford*, 62 F.4th at 125 (quoting *Iqbal*, 556 U.S. at 678).

In the alternative, even if serious harm has been plausibly alleged, the TAC still does not allege—as it must—that Defendant Dean-Chrivia was responsible for the injurious delay. (*See generally* TAC, ECF No. 946.) Well-pled allegations of that sort are indispensable to Count I's survival, because "for liability to be imposed under § 1983, each defendant must have had personal knowledge of, *and involvement in*, the alleged" constitutional deprivation. *Pearce v. Smith*, No. 1:20CV413 (AJT/TCB), 2022 WL 4126450, at *3 (E.D. Va. Sept. 9, 2022) (emphasis in original) (citing *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690–91 (E.D. Va. 2010)). In this case, the TAC does not allege **anything whatsoever** about Defendant Dean-Chrivia's supposed involvement with Plaintiff Eagle—a point that is explained in more detail below. (*See* Part III.A.4, *infra*.) Not a single well-pled allegation of the TAC establishes that Defendant Dean-Chrivia "played any role in the provision of medical care at" the SRJ generally, or to Plaintiff Eagle specifically. *Pearce*, 2022 WL 4126450, at *3. "Having failed to allege any personal connection between [Defendant Dean-Chrivia] and any denial of [Plaintiff Eagle's] constitutional rights, the action against [Defendant Dean-Chrivia] must fail." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citing *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973); *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971)).

### 4. The TAC's Generalized, Conclusory, and Collective Allegations Fail to Plausibly Allege Defendant Dean-Chrivia's Deliberate Indifference.

Lastly, Count I fails to plead a cognizable claim for deliberate indifference because all of the supporting allegations are generalized, conclusory, and collective. To state a plausible claim for deliberate indifference under the Eighth Amendment, the binding precedent of this Circuit required Plaintiff Eagle "to plead sufficient facts to plausibly allege that <u>each Defendant</u> **[1]**

actually knew about [her] serious medical condition and **[2]** the risks of failing to treat [her]." *Langford*, 62 F.4th at 125 (emphasis added). The TAC must "isolate the allegedly unconstitutional acts of each defendant"—not lump them together with "categorical references" to multiple defendants. *Id.* (first quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), then quoting *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012)). The reason why is simple: in the absence of "specific factual allegations" directed to each individual defendant, the TAC fails to give "fair notice" about Plaintiff Eagle's "claim[s] and the underlying factual support" for them. *Id.* (collecting cases).

Here, the TAC—which "makes only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [Plaintiff Eagle] or was responsible for the denial of [her] Eighth Amendment rights"—fails "to plausibly allege deliberate indifference on the part of each Defendant," including Defendant Dean-Chrivia. *Id.* at 124–25. Not a single allegation is made in the TAC that Defendant Dean-Chrivia "had actual subjective knowledge" of Plaintiff Eagle's alleged "serious medical condition." *Jackson*, 775 F.3d at 178 (citing *Farmer*, 511 U.S. at 837–39; *Iko*, 535 F.3d at 241). Nor does the TAC allege if— much less how—Defendant Dean-Chrivia "had actual subjective knowledge" of any "excessive risk" of harm to Plaintiff Eagle that her "inaction" would present. *Id.* (citing *Farmer*, 511 U.S. at 837–39; *Iko*, 535 F.3d at 241). Just like the plaintiff in *Langford*, Plaintiff Eagle does "not identify who" Defendant Dean-Chrivia is, "in what capacity" that she "interacted with" Plaintiff Eagle, "or how (or even if)" she "was responsible for [Plaintiff Eagle's] medical treatment." 62 F.4th at 125.

Given the utter absence of particularized allegations against Defendant Dean-Chrivia, Plaintiff Eagle has failed to allege **any** facts from which this Court could reasonably infer Defendant Dean-Chrivia's liability on Count I. For instance, the TAC does **not** allege that Defendant Dean-Chrivia was the provider who performed Plaintiff Eagle's intake screening on

June 25, 2022.  (TAC ¶ 444, ECF No. 946.)  The TAC does **not** allege that Defendant Dean-Chrivia was the provider who set Plaintiff Eagle "for a mental health sick call on June 26, 2022." (*Id.*, ¶ 448.)  The TAC does **not** allege that Defendant Dean-Chrivia was the provider who "rescheduled" Plaintiff Eagle's "mental health appointment . . . on August 11, 2022." (*Id.*, ¶ 449.) The TAC does **not** allege that Defendant Dean-Chrivia was the provider responsible for performing the "mental health call" on "August 18, 2023 [*sic*]," or for marking the task as "completed" when a portion of Plaintiff Eagle's record supposedly "reflects that no such appointment was carried out." (*Id.*, ¶ 450.)  The TAC does **not** allege that Defendant Dean-Chrivia was the provider who "deleted" Plaintiff Eagle's "September 23, 2022, 90-day mental health follow up . . . with the change note reflecting that she was released seven days later on September 30, 2022." (*Id.*, ¶ 451.)  The TAC does **not** allege that Defendant Dean-Chrivia was the provider who failed to "verif[y] or administer[]" Plaintiff Eagle's "mental health medications . . . during her 97 day incarceration."  (*Id.*, ¶ 452.)  No meaningful factual allegations are pled against Defendant Dean-Chrivia whatsoever.  (*See generally id.*)

The sum and substance of the TAC's allegations are that six individuals—one of which was Defendant Dean-Chrivia—somehow "failed to ensure that Plaintiff Eagle received timely and adequate mental health care." (*Id.*, ¶ 443.)  But, as already discussed (*see* Part I, *supra*), the TAC does not disclose what type of provider Defendant Dean-Chrivia is, what kind of position she purportedly held at the SRJ, or what specific responsibilities were entrusted to her and by whom. (*See generally id.*)  The TAC is silent about her involvement with Plaintiff Eagle, including when she first interacted with Plaintiff Eagle, in what capacity she interacted with Plaintiff Eagle, how and when Plaintiff Eagle supposedly came to be under her care, and why she was allegedly responsible for ensuring that Plaintiff Eagle received timely and adequate mental health care.  (*See generally id.*)  The only allegations against Defendant Dean-Chrivia are precisely "the type of

'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' and 'legal conclusions' that are insufficient to survive a Rule 12(b)(6) motion to dismiss." *Langford*, 62 F.4th at 125 (quoting *Iqbal*, 556 U.S. at 678). Because the TAC's generalized and collective allegations fail to plausibly allege that Defendant Dean-Chrivia "had actual subjective knowledge" of Plaintiff Eagle's alleged "serious medical condition" or "the excessive risk" of harm that would result from "inaction," Count I must be dismissed with prejudice as to Defendant Dean-Chrivia for failing to state a claim upon which relief could be granted. *Jackson*, 775 F.3d at 178 (citing *Farmer*, 511 U.S. at 837–39; *Iko*, 535 F.3d at 241).

**B.    Count II Fails to State a Fourteenth Amendment Claim for Deliberate Indifference Against Defendant Dean-Chrivia That Is Plausible On Its Face**

For much the same reasons, Count II of the TAC fails to allege against Defendant Dean-Chrivia a plausible claim for deliberate indifference under the Fourteenth Amendment. To state a Fourteenth Amendment "claim for deliberate indifference to a medical need,"

> a pretrial detainee must plead that **(1)** they had a medical condition or injury that posed a substantial risk of serious harm; **(2)** the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; **(3)** the defendant knew or should have known **(a)** that the detainee had that condition and **(b)** that the defendant's action or inaction posed an unjustifiably high risk of harm; and **(4)** as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (emphasis added). Unlike the Eighth Amendment claim alleged in Count I, each element of the Fourteenth Amendment claim alleged in Count II is objective. In other words, Plaintiff Eagle must allege sufficient factual material to support the inference that Defendant Dean-Chrivia's "action or inaction was . . . 'objectively unreasonable'" based on what she "should have known"—as opposed to what she actually knew— "of [Plaintiff Eagle's condition] and [the] risk" inaction presented. *Id.* (quoting *Kingsley*, 576 U.S. at 397).

Count II is afflicted with the same fundamental flaws that doom Count I. Just like Count I, Count II fails to allege—even formulaically—each essential element needed to state a cognizable claim for relief. To start, Plaintiff Eagle's status as a pretrial detainee is not plausibly alleged. (*See* Part III.A.1, *supra*.) The TAC does not allege that Plaintiff Eagle had a mental health condition **at all**, let alone that her condition posed a substantial risk of serious harm. (*See* Part III.A.2–3, *supra*.) The TAC does not allege **what** appropriate action Defendant Dean-Chrivia knowingly or recklessly failed to take, **how** she knew about Plaintiff Eagle's unpled and undisclosed condition, or **why** she ought to have known about it. (*See* Part III.A.4, *supra*.) Similarly, the TAC does not allege—much less plausibly explain—**how** Defendant Dean-Chrivia should have known that her unspecified inaction posed an unjustifiably high risk of harm to Plaintiff Eagle. And the TAC does not plausibly allege **how** Plaintiff Eagle suffered harm attributable to Defendant Dean-Chrivia. (*See* Part III.A.4, *supra*.) The failure of the TAC to allege—even formulaically or as legal conclusions—the hornbook elements of Count II is truly remarkable given that the TAC is the Plaintiffs' **fourth bite** at the apple. In the face of such foundational pleading failures, Count II must be dismissed with prejudice as to Defendant Dean-Chrivia for failing to state a plausible claim for relief.

### C.    Count III Fails to Plausibly Plead the Existence of a Conspiracy.

The same result holds true for the federal and state law conspiracy claims pled in Count III of the TAC. To plead a cognizable conspiracy claim, Plaintiff Eagle must plausibly allege "that **1)** the defendants acted jointly in concert, **2)** an overt act was done in furtherance of the conspiracy, and **3)** the overt act resulted in deprivation of [her] constitutional right." *Greene v. Putnam Cnty. Comm'n*, No. CV 3:21-0520, 2022 WL 16859739, at *8 (S.D. W. Va. Nov. 10, 2022) (Chambers, J.) (emphasis added) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)); *accord* Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009). "Bald allegations that a

conspiracy existed are insufficient." *Greene*, 2022 WL 16859739, at *8 (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)).  To survive a motion to dismiss, the TAC must plead "<u>concrete supporting facts</u>" that make the existence of a conspiracy not merely possible but plausible, *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (emphasis added) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)), such as "who the members of the conspiracy were, the existence and nature of their agreement, their motivations, and their acts in furtherance of the conspiracy," *Braxton v. Young*, No. CV 2:18-CV-00585, 2019 WL 9048997, at *4 (S.D. W. Va. Nov. 15, 2019) (Tinsley, J.) (citing *Soc'y Without A Name*, 655 F.3d at 346), *report and recommendation adopted*, 2020 WL 1482578 (S.D. W. Va. Mar. 27, 2020) (Copenhaver, Jr., J.).

The generalized and conclusory allegations of Count III come nowhere close to pleading the plausible existence of a conspiracy that involved Defendant Dean-Chrivia.  To adequately plead such a conspiracy, the TAC must recite sufficient **<u>facts</u>**—not conclusory labels—that would plausibly explain **<u>why</u>** Defendant Dean-Chrivia would conspire to deprive Plaintiff Eagle of her constitutional right to medical care.  But the TAC neither identifies Defendant Dean-Chrivia's alleged motive nor recites any "concrete supporting facts" at all.  The individual members of the alleged conspiracy are **<u>not</u>** identified, the existence of an unlawful agreement and the details of it are **<u>not</u>** stated, the motivation for Defendant Dean-Chrivia (or any other Defendant) to participate in the conspiracy is **<u>not</u>** alleged, and not a single overt act in furtherance of the conspiracy is pled. (*See* TAC ¶¶ 554–69, ECF No. 946.)  Defendant Dean-Chrivia is not even mentioned in Count III.

Count III rests upon nothing more than a singular conclusory allegation that the "Medical Defendants"—that term being undefined—conspired with the West Virginia Division of Corrections and Rehabilitation "to deprive inmates of constitutionally guaranteed medical care." (*Id.*, ¶ 566.)  Under the binding precedent of this Circuit, that single conclusory allegation fails to

state a plausible claim.  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" the existence of an unlawful conspiracy.  *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020).  Given the complete absence of specific or concrete factual allegations directed to Defendant Dean-Chrivia, Count III must be dismissed for failing to state a plausible claim for relief.  *See, e.g.*, *Buzzard v. Ballard*, No. 2:15-CV-06376, 2017 WL 1032509, at *5 (S.D. W. Va. Mar. 17, 2017) (Johnston, J.) (holding the "conclusory allegation[]" that "Defendants conspired together in order to violate the Plaintiff's constitutional rights" failed to state a plausible claim).

### D.    Count IV Fails to Plausibly Plead a Claim for Medical Negligence.

Similarly, Count IV fails to allege against Defendant Dean-Chrivia a plausible claim for medical negligence.  "In West Virginia, the essence of a medical malpractice action arises from a physician-patient relationship."  *Bellomy v. United States*, 888 F. Supp. 760, 764 (S.D. W. Va. 1995) (Haden, J.) (citing *Rand v. Miller*, 185 W. Va. 705, 706, 408 S.E.2d 655, 656 (1991)).  Only once a "physician-patient relationship is established" does the practitioner owe "his or her patient a duty of care when rendering medical services."  *Id.*  To plead a medical negligence claim, Plaintiff Eagle must plausibly allege **(1)** that a provider-patient relationship existed, **(2)** that Ms. Dean-Chrivia "failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances"; and **(3)** that her "failure was a proximate cause of the injury" sustained.  *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762 (S.D. W. Va. 2003) (Haden, J.) (quoting W. VA. CODE § 55-7B-3(a)(1)–(2)).

The TAC's generalized, conclusory, and collective allegations fail to plausibly allege a medical negligence claim against Defendant Dean-Chrivia.  "The law has long held that separate defendants must be treated separately."  *Hubbard v. State Farm Indem. Co.*, 213 W. Va. 542, 548,

584 S.E.2d 176, 182 (2003). To plead a plausible claim, Rule 8 required Plaintiff Eagle to "allege facts that 'establish **each individual [d]efendant's liability** for the misconduct alleged.'" *McLin v. VA Dep't of Corr.*, No. 7:19CV00247, 2020 WL 448260, at *2 (W.D. Va. Jan. 28, 2020) (emphasis added) (alteration in original) (quoting *Galicki v. New Jersey*, No. CIV.A. 14-169 JLL, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015)). Having named multiple individuals in the TAC, Plaintiff Eagle cannot simply "refer to all defendants 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying 'which defendants engaged in what wrongful conduct.'" *Id.* (quoting *Falat v. Cnty. of Hunterdon*, No. CIV.A. 12-6804 SRC, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)).

Yet, that is precisely the tact taken in the TAC. Defendant Dean-Chrivia is not mentioned **even a single time** in Count IV. (*See generally* TAC ¶¶ 570–93, ECF No. 946.) Relative to Plaintiff Eagle, all that the TAC alleges is that the "Wexford Defendants"—that term being undefined—"deviated from the standard of care by operating understaffed, operating with chronic and excessive overdue tasks and nurse sick calls, and failing to provide timely care which resulted in Plaintiff Sabrina Eagle's mental health care and medication being delayed during her entire 97-day incarceration." (*Id.*, ¶ 590.) Just like the TAC's predecessor did, the Plaintiffs "simply allege 'Defendants' owed to them – and breached – a duty of care." *Rose v. Francis*, No. 5:22-CV-00405, 2024 WL 1096906, at *7 (S.D. W. Va. Mar. 13, 2024) (Volk, J.). "They negligent mention of the precise duty owed by [Defendant Dean-Chrivia], much less how it [was] breached and proximately caused injury." *Id.* The collective and generalized "allegations are insufficient to give [Defendant Dean-Chrivia] fair notice of what the claims are and the grounds upon which they rest." *Id.*

More fundamentally, the TAC's collective and conclusory statements fail to plausibly allege each and every essential element of a medical negligence claim. Take, for example, the

foundational element of duty. "The essence of a medical malpractice action is a physician-patient relationship." *Rand*, 185 W. Va. at 706, 408 S.E.2d at 656. It is what gives rise to the existence of a duty under the MPLA in the first instance. *Gooch v. W. Va. Dep't of Pub. Safety*, 195 W. Va. 357, 366, 465 S.E.2d 628, 637 (1995) ("[I]t is axiomatic that unless such a relationship is established a legal duty cannot exist between the parties."); *see also Kruse v. Farid*, 242 W. Va. 299, 305, 835 S.E.2d 163, 169 (2019) (holding that "once the physician-patient relationship" ends, a medical professional "no longer had a duty to provide medical care to" the patient). And the scope of that duty is dependent upon "the profession or class to which the health care provider belongs." *Baisden*, 275 F. Supp. 2d at 762 (quoting W. VA. CODE § 55-7B-3(a)(1)).

But, in this case, the TAC says **<u>absolutely nothing</u>** about when Defendant Dean-Chrivia first interacted (i.e., assumed a duty) with Plaintiff Eagle (if she interacted with Plaintiff Eagle at all), in what capacity she interacted with Plaintiff Eagle (i.e., what duty was assumed), how and when Plaintiff Eagle supposedly came to be under her care (i.e., the scope of the duty owed), and what type of provider (e.g., physician, nurse, counselor, psychologist, social worker, etc.) she is. (*See generally* TAC, ECF No. 946.) How could this Court possibly ascertain the existence and boundaries of Defendant Dean-Chrivia's duty (if any) to Plaintiff Eagle when the TAC is—quite literally—devoid of **<u>any factual allegations</u>** about her interaction(s) with Plaintiff Eagle? The "'naked assertions' of wrongdoing" in the TAC completely lack the "factual enhancement" needed for the TAC "to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). In fact, the TAC is so utterly bereft of factual allegations against Defendant Dean-Chrivia that it would not pass muster under even the defunct notice-pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957), *abrogated by Twombly*, 550 U.S. 544.

At the risk of belaboring the point, the same conclusion holds true relative to the elements of breach, causation, and damages.  Even assuming that Defendant Dean-Chrivia owed some sort of nebulous duty of care to Plaintiff Eagle, at no point does the TAC explain **what** Defendant Dean-Chrivia did (or did not do) that deviated from the "degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which" she belongs.  W. VA. CODE § 55-7B-3(a)(1).  Not a single pertinent factual allegation mentions Defendant Dean-Chrivia by name.  (*See* Part III.A.4, *supra*.)  And, of course, without any plausible allegation of breach, the TAC hardly explains **how** her conduct could be considered "a proximate cause of" Plaintiff Eagle's supposed "injury."  W. VA. CODE § 55-7B-3(a)(2).  Similarly, the conclusory allegation that Plaintiff Eagle suffered "emotional distress, mental anguish, and increased risk of harm" (TAC ¶ 591) does not plausibly allege the fact of injury, for it is just "the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation[]' and 'legal conclusion[]' that [is] insufficient to survive a Rule 12(b)(6) motion to dismiss," *Langford*, 62 F.4th at 125 (quoting *Iqbal*, 556 U.S. at 678).  In short, Count IV must be dismissed as to Defendant Dean-Chrivia for failing to state a plausible claim for relief.

## IV.    CONCLUSION

In accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure, and as required by the binding precedent of this Circuit laid out above, the Court must dismiss Count I, Count II, Count III, and Count IV of the TAC—the only claims asserted against Defendant Dean-Chrivia—with prejudice for failing to state plausible claims for relief.

Dated: September 19, 2024          DEFENDANT DONNA DEAN-CHRIVIA,

                                    By Counsel,

                                    /s/ *J. Ben Shepard*
                                    Tamela J. White-Farrell, Esquire (WVSB No. 6392)

J. Ben Shepard, Esquire (WVSB No. 13261)
**FARRELL & FARRELL PLLC**
914 5th Avenue, P.O. Box 6457
Huntington, WV 25772-6457
Phone: (304) 522-9100 / Fax: (304) 522-9162
tjw@farrell3.com / jbs@farrell3.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**BRYAN STAFFORD,** *in his capacity as the*
*Executor of the Estate of Thomas Fleenor, Jr.,*
*et al.,*

        **Plaintiffs**,

**v.**

**PRIMECARE MEDICAL, INC.,** *et al.*,

        **Defendants.**

Civil Action No. 5:22-CV-00405
Hon. Frank W. Volk

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Defendant Donna Dean-Chrivia, hereby certify that on this **19th day of September, 2024**, the foregoing "**Memorandum of Law in Support of Defendant Donna Dean-Chrivia's Motion to Dismiss**" was filed with the Court using the CM/ECF system, which will serve/send notification of such filing to all CM/ECF counsel of record.

/s/ *J. Ben Shepard*
Tamela J. White-Farrell, Esquire (WVSB No. 6392)
J. Ben Shepard, Esquire (WVSB No. 13261)
**FARRELL & FARRELL PLLC**
914 5th Avenue, P.O. Box 6457
Huntington, WV 25772-6457
Phone: (304) 522-9100 / Fax: (304) 522-9162
tjw@farrell3.com / jbs@farrell3.com