# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

BRYAN STAFFORD, *in his capacity*
*as Executor of the Estate of*
THOMAS FLEENOR, JR.,
JOHN CRABTREE,
STEVEN MARTIN,
GARY TOLER,
ELGIE ADKINS,
and SABRINA EAGLE,
*on behalf of themselves and*
*others similarly situated*,

        Plaintiffs,

v.                                         CIVIL ACTION NO. 5:22-cv-00405

PRIMECARE MEDICAL, INC.,
PRIMECARE MEDICAL OF WEST VIRGINIA, INC.
THOMAS WEBER,
BRETT BAVINGTON,
TODD HESKINS,
KRISTA VALLANDINGHAM,
MELISSA JEFFERY,
BRANDY EASTRIDGE,
HELEN PERKINS,
JESSICA MILLER,
BRANDY EASTRIDGE,
WEXFORD HEALTH SOURCES, INC.,
MARY STONE,
DANIEL CONN,
ELAINE GEDMAN,
JOHN FROELICH,
HUMAYAN RASHID, M.D.,
ANGELA NICHOLSON, MSN, APRN, FNP-C,
AMBER DUNCAN,
LISA MULLENS, LPN,
CASSEY BOLEN,
JOHN PENNINGTON, MA, LPC, NCC, NCSC,
KENNADI SMITH, LPN,
BRITTANI MARSHALL, RN,

ASHLEY STROUP, LPN,
DONNA DEAN-CHRIVIA,
JOHN AND JANE DOE
PRIMECARE AND WEXFORD EMPLOYEES,
and TAYLOR BROOKS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Donna Dean-Chrivia's Motion to Dismiss with Prejudice the Third Amended Class Action Complaint [Doc. 1040], filed September 19, 2024, along with additional motions identified and adjudicated at the conclusion of this written opinion and order. Plaintiff Sabrina Eagle responded to the Motion to Dismiss on October 3, 2024, [Doc. 1076]. The matter is ready for adjudication.

## I.

On September 22, 2022, Plaintiffs, former inmates and/or pre-trial detainees at Southern Regional Jail (hereinafter "SRJ") in Beaver instituted this action on behalf of themselves and other similarly situated individuals for alleged violations of their constitutional and civil rights. [Doc. 1].  On July 30, 2024, Plaintiffs filed the operative Third Amended Class Action Complaint ("Complaint") naming Ms. Dean-Chrivia for the first time. [Doc. 946]. Plaintiffs' counsel alleges Plaintiff Eagle -- a former "pre-trial detainee and/or inmate" at SRJ, [*Id.* at 50 ¶ 431] -- has four claims against Ms. Dean-Chrivia. [Doc. 1041 at 4; *see generally* Doc. 1076]. Count I  asserts an Eighth Amendment claim for deliberate indifference to serious medical needs pursuant to 42 U.S.C. § 1983. [Doc. 946 at 53–60 ¶¶ 454–503]. Count II alleges an identical claim arising from the Fourteenth Amendment. [*Id.* at 60–67 ¶¶ 504–53]. Count III alleges federal and state law conspiracy claims. [*Id.* at 67–69 ¶¶ 554– 69]. Count IV asserts a claim for medical negligence

pursuant to the West Virginia Medical Professional Liability Act ("MPLA"), *West Virginia Code* sections 55-7B-1 to -12. [*Id.* at 69–72 ¶¶ 570– 93].

Ms. Dean-Chrivia now moves pursuant to Rule 12(b)(6) to dismiss with prejudice. [Doc. 1040 at 1]. Plaintiff Eagle responds she "sufficiently alleges . . . [Ms. Dean-Chrivia's] unconstitutional actions and actions in violation of state law result[ed] in inadequate care cognizable under both § 1983 and the West Virginia MPLA . . . ." [Doc. 1076 at 3].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within twenty-one days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert.*

*denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.

The entirety of the factual allegations pled against Ms. Dean-Chrivia, with some inference on the Court's part, are as follows:

> 92. Defendant Donna Dean-Chrivia was . . . a medical provider employed or contracted by Wexford to provide medical services to pretrial detainees and inmates at SRJ.
>
> . . .
>
> 95. Defendants Rashid; Perkins; Eastridge; Nicholson; Duncan, Mullens, Bolen, Pennington, Smith, Leedy, Vallandingham, Marshall, Blair, Martin, White, Stroup, Dean-Chrivia, and Brooks were healthcare providers responsible for the provision of medical services to pretrial detainees as Southern Regional Jail which was constitutionally adequate and which met the applicable standard of care.
>
> . . .
>
> 442. During her time as a Wexford patient Plaintiff [Eagle] was under the care of Defendant Rashid; Defendant Ashley Stroup, LPN; Defendant Donna Dean-Chrivia; Defendant Brandy Eastridge, LPN; Defendant Brittani Marshall, RN; Defendant Taylor Brooks.

443. Defendants Stroup; Dean-Chrivia; Eastridge; Marshall; Brooks; and Rashid failed to ensure that Plaintiff Eagle received timely and adequate mental health care.

444. During her June 25, 2022, intake screening, Plaintiff Eagle indicated that she was under the care of a mental health provider and/or psychiatrist.

445. Plaintiff Eagle's intake was neither reviewed by an RN within twenty-four hours, as required by NCCHC standards, nor reviewed by an RN at all prior to her release on September 30, 2022.

446. Rather, Defendant Stroup, and [sic] LPN, reviewed Plaintiff's intake.

. . .

448. On intake, Plaintiff Eagle was set for a mental health sick call on June 26, 2022.

449. Plaintiff's June 26, 2022, mental health appointment was rescheduled on August 11, 2022.

450. Plaintiff's record indicates that a mental health call was completed on August 18, 2023, but the "Mental Health Sick Call" portion of her record reflects that no such appointment was carried out.

451. Plaintiff's September 23, 2022, 90-day mental health follow up was deleted with the change note reflecting that she was released seven days later on September 30, 2022.

452. Plaintiff's mental health medications were not verified or administered during her 97-day incarceration.

453. As a direct and proximate result of Wexford Defendants' actions and inactions, Plaintiff Eagle suffered emotional distress, mental anguish, and increased risk of harm.

[Doc. 946 at 16, 51–52 (footnote omitted)].

## A.    *Count I – Eighth Amendment Violations*

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). This proscription accords

inmates the right "to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). "This right . . . requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022) (internal quotation marks omitted). "A successful medical deliberate indifference claim has two components, objective and subjective." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (internal quotation marks omitted). "The objective component requires that the plaintiff's medical condition be serious -- one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (cleaned up). "The subjective component requires showing that the defendant had actual subjective knowledge of both the [plaintiff's] serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (cleaned up).

The Complaint falls grievously short of alleging a plausible deliberate indifference claim against Ms. Dean-Chrivia. Indeed, Plaintiffs fail at the first step: they are silent as to the subject medical condition, alleging only "Plaintiff Eagle indicated that she was under the care of a mental health provider and/or psychiatrist . . . ." [Doc. 946 at 51 ¶ 444; *see also id.* at 52 ¶ 448] (noting "Plaintiff Eagle was set for a mental health sick call . . . ."); [*Id.* ¶ 452] (noting Plaintiff Eagle took "mental health medications . . . ."); [*Id.* ¶ 453] (stating "Plaintiff Eagle suffered emotional distress, mental anguish, and increased risk of harm . . . ."). These are the prototypical, conclusory allegations condemned by *Twombly* and its progeny. One cannot divine any objectively serious medical condition.

Assuming the missing medical condition was sufficiently serious, there are no allegations Ms. Dean-Chrivia knew of Plaintiff Eagle's mysterious condition or the risks

accompanying any treatment failures. One is further left to guess on such material points as (1) Ms. Dean-Chrivia's involvement with Plaintiff Eagle, (2) the capacity in which she interacted with Plaintiff Eagle, (3) how she bore responsibility for Plaintiff Eagle's treatment, or (4) her healthcare credentials, if any.

The remaining pleading deficiencies need not be addressed. The foregoing abundantly demonstrates the pleading, at least as to Ms. Dean-Chrivia, is unsalvageable. Merely listing Ms. Dean-Chrivia as one of six individuals responsible for ensuring Plaintiff Eagle "received timely and adequate mental health care," is insufficient to give "fair notice" of the particular unconstitutional acts Ms. Dean-Chrivia allegedly committed. *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023). *Cf. SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015) ("At trial, a § 1 plaintiff will be required to make a 'factual showing that each defendant conspired in violation of the antitrust laws.' Thus, the complaint must forecast that factual showing, and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed. In other words, the complaint must 'specify how these defendants [were] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendants.'") (cleaned up). Allegations must be sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. The only allegations against Ms. Dean-Chrivia are precisely "the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' and 'legal conclusions' that are insufficient to survive a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Accordingly, Count I is **DISMISSED WITHOUT PREJUDICE** as to Ms. Dean-Chrivia for failure to state a claim, and the Motion to Dismiss is **GRANTED** to the same extent.

8

**B.**    ***Count II – Fourteenth Amendment Violations***

The Eighth Amendment "has no application" where there has "been no formal adjudication of guilt against [an incarcerated person] at the time [she] required medical care." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). A pretrial detainee may, however, bring a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Though Plaintiff Eagle's status as either a pretrial detainee or post-conviction inmate is easily and readily ascertainable, "Plaintiffs are allowed to plead in the alternative." *Rosa v. PSA Airlines, Inc.*, 80 F.4th 488, 495 n. 4 (4th Cir. 2023) (citing *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. 2023)); *see also* Fed. R. Civ. P. 8(a)(3). Therefore, the Court assesses whether the Complaint states a plausible claim for relief against Ms. Dean-Chrivia pursuant to the Fourteenth Amendment. To state such a claim, a pretrial detainee must plead the following:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short*, 87 F.4th at 611. A pretrial detainee need not "show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Rather, "it is sufficient that the plaintiff show that . . . the defendant should have known of that condition and that risk, and acted accordingly." *Id.*

Free from the constraints of the subjective showing required under the Eighth Amendment, the Complaint nonetheless fails to present a plausible Fourteenth Amendment deliberate indifference claim against Ms. Dean-Chrivia. Assuming, once again, Plaintiff Eagle had a medical condition that posed a substantial risk of serious harm, Plaintiffs omit any allegations that Ms. Dean-Chrivia should have known of Plaintiff Eagle's condition or the risks of failing to treat her. Plaintiffs also include no facts explaining how Plaintiff Eagle suffered harm attributable to Ms. Dean-Chrivia. Those omissions alone doom the Plaintiffs' claim on *Twombly/Iqbal* grounds.

Accordingly, Count II is **DISMISSED WITHOUT PREJUDICE** as to Ms. Dean-Chrivia for failure to state a claim, and the Motion to Dismiss is **GRANTED** to the same extent.

## C.    Count III – Conspiracy

To establish a civil conspiracy under § 1983, a plaintiff must show "the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right [of the plaintiff]." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Similarly, a common law civil conspiracy requires "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. Pt. 3, *Jane Doe-1 v. Corp. of Pres. of Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 432, 801 S.E.2d 443, 448 (2017) (quoting Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009)).

Plaintiffs allege "Medical Defendants" met with "[West Virginia Division of Corrections and Rehabilitation] Defendants regarding correctional staffing, medical staffing, and the inability to timely and adequately carry out medical tasks and nurse sick call." [Doc. 946 at 68

¶ 562]. During these alleged meetings, "Medical Defendants overtly acted to maintain an understaffed system that resulted in deprivation of access to medical care for pretrial detainee and inmates." [*Id.* at ¶ 563]. These labels, legal conclusions, and "formulaic recitation of the elements" are insufficient to state a plausible conspiracy claim against Ms. Dean-Chrivia. *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions are not entitled to the assumption of truth and are insufficient to state a claim." (cleaned up)). There are no allegations Ms. Dean-Chrivia was present at or even aware of any of these alleged meetings, knew SRJ was understaffed, took some overt action to ensure it remained understaffed, or had any duty whatsoever to correct or report an understaffing problem. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" the existence of an unlawful conspiracy. *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (internal quotation marks omitted).

Accordingly, Count III is **DISMISSED WITHOUT PREJUDICE** as to Ms. Dean-Chrivia for failure to state a claim, and the Motion to Dismiss is **GRANTED** to the same extent.

**D.    *Count IV – Medical Negligence***

In West Virginia, the MPLA governs all "medical professional liability" actions "resulting from the death or injury of a person *for any tort* or breach of contract based on health care[1] services rendered, or which should have been rendered, by a health care provider or health

---

[1] The MPLA defines "health care" as follows:

(1) Any act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment;

(2) Any act, service or treatment performed or furnished, or which should have been

care facility to a patient." W. Va. Code § 55-7B-2(i) (emphasis supplied). This includes "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services." *Id.*; *see also State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 193, 866 S.E.2d 350, 359 (2021).

Assuming Ms. Dean-Chrivia is a "Wexford Defendant" as that phrase is used throughout the Complaint, Plaintiffs allege she "deviated from the standard of care by operating understaffed, operating with chronic and excessive overdue tasks and nurse sick calls, and failing to provide timely care which resulted in Plaintiff Sabrina Eagle's mental health care and medication being delayed during her entire 97-day incarceration." [Doc. 946 at 72 ¶ 590]. These allegations unquestionably relate to the provision of "health care." Because Count IV is grounded in medical negligence, it is covered by the MLPA and requires these footings:

> (1) The health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (2) such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3.

Plaintiffs simply allege "Wexford Defendants" owed to them -- and breached -- a duty of care. [Doc. 946 at 69 ¶¶ 571, 574]. They neglect mention of the precise duty owed by Ms.

---

> performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services; and

> (3) The process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers.

W. Va. Code § 55-7B-2(e).

Dean-Chrivia to Plaintiff Eagle, much less how she breached and proximately caused injury. More importantly, they neither identify the type of "medical provider" Ms. Dean-Chrivia was, nor mention the applicable standard of care. Thus, the Complaint is insufficient to give Ms. Dean-Chrivia fair notice of what the claims are and the grounds upon which they rest.

Accordingly, Count IV is **DISMISSED WITHOUT PREJUDICE** with respect to Ms. Dean-Chrivia, and the Motion to Dismiss is **GRANTED** to the same extent.

## IV.

Based upon the foregoing discussion, the Court **GRANTS** the Motion to Dismiss [**Doc. 1040**] and **DISMISSES WITHOUT PREJUDICE** Counts I through IV with respect to Ms. Dean-Chrivia. Ms. Dean-Chrivia's Motion to Modify Scheduling Order and Stay Discovery [**Doc. 1042**] is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER:        October 15, 2024

Frank W. Volk
Chief United States District Judge