**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**BRYAN STAFFORD, Executor of the**
**Estate of THOMAS FLEENOR, JR., et al.,**

  **Plaintiffs,**

**v.**   Civil Action No. 5:22-cv-00405

**PRIMECARE MEDICAL, INC., et al.,**

  **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS**
**CERTIFICATION AS TO PRIMECARE DEFENDANTS**

COME NOW Plaintiffs, by undersigned counsel, and in further support of *Plaintiffs'*
*Motion for Class Certification as to PrimeCare Defendants* state as follows:

**FACTUAL BACKGROUND**

This putative class action seeks redress for 5,308 patients who were denied access to
adequate medical care at Southern Regional Jail ("SRJ") due to the systematic failure of PrimeCare
Defendants between September 22, 2020, and June 26, 2022. *See*, WVDCR Annual Report FY
2023 at **Exhibit 1**. Plaintiffs have uncovered chronic, systemic, and unchecked failure by
PrimeCare to provide adequate medical care constitutionally guaranteed to its patients at SRJ due
to irrefutable understaffing, unabated overdue tasks, and an abiding indifference which, in the face
of PrimeCare's clear understanding of its shortcomings, can only be explained as deliberate.

Each of PrimeCare's 5,308 individual patients had a constitutional right to access adequate
medical care. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976). Deliberate
indifference to the serious medical needs of the inmate and detainee population through systemic
and gross deficiencies in staffing, facilities, equipment, or procedures violates the constitutional

1

rights of those inmates and detainees. *Id.*; *Baxley v. Jividen*, 508 F. Supp. 3d 28, 55 (S.D. W. Va. 2020) (quoting, *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

PrimeCare was deliberately indifferent and medically negligent respecting the Class. Specifically, the *Third Amended Complaint* [TAC] avers:

> PrimeCare exercised a persistent and widespread custom of remaining understaffed, causing and permitting chronic and excessive overdue tasks and sick calls to accumulate; causing and permitting excessive delays of medical care; causing and permitting systemic failures to adhere to NHCCHC standards, PrimeCare policies and procedures; WVDCR policies, and the standard of care; and refusing to send patients for outside care, so as to constitute an actionable policy or custom that deprived Plaintiffs […] and others.

[ECF 946, ¶ 469].

PrimeCare was awarded a multi-million-dollar contract to provide medical care to all patients at Southern Regional Jail with the DOCR in 2016. See *Contract*, at **Exhibit 2**. PrimeCare's obligations and duties under the contract were in accordance with the Request for Quotation issued by DOCR. *Id*. PrimeCare extended the contract multiple times, allegedly under the same terms and conditions, through June of 2022. See *Bavington Letter*, at **Exhibit 3**. Despite the testimonial claim by PrimeCare CEO Tom Weber that PrimeCare was consistently losing money under the DOCR contract, [Weber <u>Vol. III, p. 53-55</u>], at **Exhibit 4**, PrimeCare chose to perpetuate serious understaffing and did not seek contract revision or additional DOCR funding. Ex. 4; see also <u>Ex. 3</u>.

PrimeCare owed SRJ patients duties of care derived from the National Commission on Correctional Health Care ["NCCHC"] Standards for Health Services in Jails; PrimeCare's own policies (which mirror NCCHC standards); the DOCR Contract terms; and the standard of care for correctional facilities. See *NCCHC Standards*, at **Exhibit 5**. PrimeCare's deliberate indifference

to the serious medical needs of the Class, breach of the standard of care for correctional healthcare, the terms of its Contract, breach of NCCHC Standards, and breach of PrimeCare's own adopted standards is clear.  One need read no further than page 3 of the NCCHC Standards to recognize that PrimeCare failed to meet the first and most essential obligation to its SRJ patients, that of ensuring *Access to Care*.  See *J-A-01, NCCHC Standards*, at Ex.5.

*Access to Care requires that* "in a timely manner, a patient is seen by a qualified healthcare professional, is rendered a clinical judgment, and receives the care that is ordered." Ex. 5, p. 3. *Access to Care* is an "essential" standard, and Brent Bavington, PrimeCare's President, testified that he recognizes it as being of "utmost importance." [Bavington 26; 13-16], at **Exhibit 6**.  Mr. Bavington further acknowledged that "access to care helps prevent the risk of serious injury, illness, or death in the patient population." [Bavington 27; 16-19]. The NCCHC requires PrimeCare to avoid barriers to access to care and specifies unreasonable barriers to include "[h]aving an understaffed, underfunded, or poorly organized system with the result that it is not able to provide appropriate and timely access to care." Ex. 5, p. 3.

The NCCHC designates *Staffing* an "important" standard requiring that PrimeCare "ensure sufficient numbers and types of health staff to care for the inmate population." Ex. 5, p. 60. Sufficiency of staffing is measured by timely and thorough physician encounters and **the length of the backlog**. *Id*, p. 61 (emphasis added).

PrimeCare's backlog was enormous due to chronic patterns of understaffing and failure to provide SRJ patients' access to care in breach Contract, NCCHC standards, and the standard of care. See *Mathis Report*, at **Exhibit 7**. Substantial evidence of PrimeCare's breach comes from its own Weekly Reports from January 2021 through June 25, 2022. See *Quarterly Weekly Reports and Summaries* at **Exhibit 8** through **Exhibit 13**. All of these reports reflect excessive overdue

tasks in every category. *Id*. Krista Vallandingham, Regional VP of Operations for PrimeCare, alarmingly testified that PrimeCare had actual knowledge of its abundant deficiencies up through its entire chain of command regarding the number of overdue tasks. [Vallandingham, p. 143, ll. 21-24], at **Exhibit 14**. Despite this knowledge, PrimeCare astonishingly did nothing to abate the increased risk it posed to SRJ patients.

PrimeCare's reports show up to 71% of PrimeCare's SRJ patients had 14-day H&P overdue *per week*. Ex. 9 – Ex. 14. Up to 412 inmates (60.5% population) endured overdue physician sick calls weekly *Id*. Up to 185 inmates (27% population) had an overdue psychology appointment. *Id*. Up to 202 inmates (30% population) had overdue mental health appointments weekly, *Id*. Up to 135 (20% population) had overdue dental calls weekly. *Id*. A shocking 76% of SRJ inmates suffered overdue EKGs . *Id*. All other care categories reveal a similar pattern. *Id*. Of forty-nine (49) randomly selected PrimeCare patient records reviewed by Plaintiffs. zero incarcerated for over 14 days had a timely 14-day physical. Of the inmates with identifiable "MD Sick Call," only one was seen timely by a physician. Likewise, nearly every patient with a mental health or dental sick call was seen untimely, if at all, and often by an unqualified provider.

PrimeCare's own statistics and a sampling of Class Members' medical records prove the Plaintiffs' actions meritorious. The high numbers and percentages of overdue tasks carried week to week, year to year, and reflect the severity of PrimeCare's indifference. PrimeCare's actual knowledge exhibited deliberate indifference. [Vallandingham, p. 143, ll. 21-24], at Ex. 14. If that is not sufficient, the NCCHC proscribed as *essential* PrimeCare's duty to use these reports in monthly meetings, the minutes or summaries of which " … should include problems identified, corrective actions initiated, problems resolved since the last meeting, and problems with corrective actions." *NCCHC*, pg. 9, at Ex.5. In more than two years of litigation, no evidence has surfaced

that PrimeCare corrected understaffing or overdue tasks at SRJ.PrimeCare's lack of *essential* corrective actions at SRJ reflects an institutional and deliberate indifference. and is further reflected by the recent testimony of PrimeCare's SRJ Health Services Administrator. [Perkin's Depo, III, pp106-108], at **Exhibit 15**.

PrimeCare's internal reporting reflects violation of the NCCHC Staffing standard. Ex. 5, pp. 60-61. Every week for the final 18 months of PrimeCare's contract, the "corrective action" foroverdue tasks reflects staffing shortages. These staffing shortages are supported by the testimony of Dr. Humayan Rashid, the sole physician employed by SRJ during Primecare's contracts:

Q:    [Y]ou also talked about chronic shortage of medical staff at the jail as well,
      correct?
A:    That is correct.
Q:    And that obviously has a negative impact on the quality of medical care
      provided at the jail; do you agree with that?
A:    That is correct.

[Rashid p. 73, ll. 16-23], at **Exhibit 16**. Dr. Rashid alerted PrimeCare administration several times verbally and at least three or four times in writing. [Rashid, p. 77, ll. 22-24, p. 78, ll. 1-2].

Brent Bavington was assigned responsibility at PrimeCare for the West Virginia region. He testified to the importance of adequate health care staffing:

Q:    Is it important that the correctional health care provider have sufficient
      staff?
A:    Ok. Same question I think. But yes, it is important.
Q:    Why?
A:    So that we can render the care needed for our patient population.

[Bavington 31; 14-20].

Melissa Jeffery, Former Assistant Regional Manager for PrimeCare, agreed that PrimeCare was obligated to ensure sufficient numbers of qualified health personnel to deliver

adequate healthcare services to all patients to meet standard of care. [Jeffrey, January 12, 2024, p. 78], at **Exhibit 17**. Jeffery testified that in the seven quarters that she was Assistant Regional Manager for PrimeCare at SRJ, there was never a staffing analysis conducted. [Jeffrey, p. 103]. Jeffery was aware of Dr. Rashid's concerns about understaffing and backlog of overdue tasks. See, Emails from Dr. Rashid, at **Exhibit 18**.

PrimeCare's corporate representative testimony admitted the need to obtain more staffing and failure to do so:

> Q:  If there is a swing of 10 percent or less [in Average Daily Population], PrimeCare, the staffing matrix and the proposal that it submits is unchanged if the swing is 10 percent or less?
> A:  Generally, yes.
> Q:  And so if the change is 10 percent or more that is when PrimeCare then needs to consider adjusting its staffing matrices and other resources?
> A:  Yes.

[Weber, Vol. II, 5; 1-11] at **Exhibit 19**. Despite an increase in SRJ population of 30% during PrimeCare's contracts, PrimeCare made no substantial staffing increase. See Staffing Matrices, at **Exhibit 20**.

When questioned about practitioner level staffing at SRJ, PrimeCare testified:

> Q:  Using the ADP during that contract, the population at Southern Regional Jail continues to grow by 134 inmates?
> A:  Yes. Eventually.
>
> Q:  The FTE on [the staffing matrix] stands for Full-Time Equivalent.
> A:  Yes.
>
> Q:  PrimeCare never adds any hours for doctors?
> A:  Correct.
>
> Q:  And for the entire contract, the medical director and only licensed MD to work for PrimeCare maintains the full time equivalent of 0.2 employees?
> A:  Yes. Eight hours per week.
>
> Q:  PrimeCare never adds any mid-levels or mid-level hours?
> A:  No, not above the 22 hours.

6

Q:    And the [2]2 hours is full time equivalent of .55 employees?
A:    Yes.

Q:    Combined[,] the hours for anyone capable of fulfilling the role of a practitioner never equate to a single full time employee during the life of this contract?
A:    A medical practitioner, correct.

Q:    And that's even under the best of circumstances if the staffing matrix hours are fulfilled?
A:    Yes.

[Weber, Vol. II, 145-147].

Q:    What, if any, consideration was given by PrimeCare given the number of overdue tasks for the PA and the doctor during the life of the contract to adding PA or physician hours?
[…]

Q:    Is the answer that PrimeCare gave no consideration to adding any provider hours during the life of the contract?
A:    Not significant consideration, if any, was given, correct.

Q:    PrimeCare never adds hours during the life of the contract for RNs?
A:    Correct.

Q:    Licensed mental health professional?
A:    Correct.

Q:    Dental?
A:    Correct.

Q:    Psychiatrists?
A:    Correct.

Q:    Or psychologists?
A:    Correct.

Q:    Did PrimeCare give any consideration to adding any hours for any of those positions?
A:    That was not – not significantly, no.

Q:    [A]nd that's true even with the number of overdue tasks in the areas that overdue tasks are in?
A:    Yes.

7

[Weber, Vol. II, 148-149]. As it relates to the Southern Regional Jail being overcrowded through 2022, Weber stated that there was "an increased strain on staff, so we had to augment staff in providing more care . . . the system that we were being paid for was not the system we were providing." [Weber, Vol. III, p. 54], at Ex. 4.

Mr. Weber's testimony is even more problematic considering PrimeCare VP of Operations and former Regional Manager Krista Vallandingham's testimony that based on overdue tasks, the staffing plan was not adequate for providers at PrimeCare. See, [Vallandingham, p. 149, ll. 1-6]. Despite this admission, Ms. Vallandingham indicated she could not recall a single action taken by PrimeCare to address provider overdue tasks. [Vallandingham145; 19-23], at Ex. 14.

Former SRJ Superintendent, Michael Francis frequently complained about PrimeCare's failures, raising overdue tasks with Brent Bavington and taking concerns over untreated inmates to the medical director.  [Francis pp. 231-2, 233-4]at **Exhibit 21.** Francis testified that PrimeCare never seemed to improve – that they were shorthanded all the time [Francis pp 231-236] at *Id.*

In summary, Plaintiffs can prove that PrimeCare failed its essential duty to provide timely access to care by properly qualified medical professionals and that PrimeCare's conduct reflects deliberate indifference to the heightened risk of harm to this Class as a whole.

## DISCUSSION OF PLAINTIFFS' CONSITUTIONAL CLAIMS

When determining whether class certification is proper, the Court may consider the merits of class claims "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgon Inc., v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Jonathan R. v. Justice*, 344 F.R.D. 294 (S.D. W. Va. 2023).  As such, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail

on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotation marks and citation omitted).

In a challenge to the policies of an institution in a class action "'[d]eliberate indifference to inmates' health needs may be shown, for example, by proving that there are "such systemic and gross deficiencies in staffing, facilities, equipment or procedures that the inmate population is effectively denied access to adequate medical care."'" *Baxley v. Jividen*, 508 F. Supp. 3d 28, 55 (S.D. W. Va. 2020) (quoting, *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).  This is at the heart of Plaintiffs' Constitutional claims herein.

The government is required to provide medical care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976). "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation." *Id*. at 103, 290. "[D]eliberate indifference to serious medical needs of prisoners" is prohibited by the Eighth Amendment. *Id*. at 104, 291. Furthermore, "a pretrial detainee makes out a due process violation if he shows 'deliberate indifference to serious medical needs.'" *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citations omitted)

A two-prong test is used to determine whether an Eighth Amendment violation exists. The two-prong test consists of a objective and subjective requirement. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). The Objective element is proven where "…the inmate must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury, **or a substantial risk thereof**." *Id*. **(emphasis supplied)**(citation and internal quotation marks omitted); See also, *Thompson v. Commonwealth*, 878 F.3d 89, 107 (4th Cir. 2017).

9

The subjective element is proven by a showing that, "'a prison official [must] actually know of and disregard an objectively serious condition, medical need, or risk of harm.'" *Baxley v. Jividen*, 508 F. Supp. 3d at 56 (quoting, *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir. 2003)). Deliberate indifference equates to "recklessness of the subjective type used in criminal law." *Id*. (quoting, *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)).

> As PrimeCare is a private corporation, Plaintiffs "must also show that the deprivation of rights resulted from application of an official policy or custom." *Taylor v. Wexford Health Sources, Inc.*, No. 2:23-cv-00475, 2024 U.S. Dist. LEXIS 105363, at *32-33 (S.D. W. Va. June 13, 2024) (citing, *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999) (applying the "principles of § 1983 municipal liability articulated in *Monell* and its progeny" to private corporations)). A policy or custom can exist "…through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation and internal quotation marks omitted).

> Complaints regarding the conditions of a pretrial detainee's confinement are not measured against the standards of the Eighth Amendment. As the Supreme Court has found, the state is without the "power to punish with which the Eighth Amendment is concerned [unless] . . . it [first] secured a formal adjudication of guilt in accordance with due process of law." *Lyons v. Powell*, 838 F.2d 28, 29 (1st Cir. 1988) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-672 (1977)). Therefore, the Due Process Clause of the Fourteenth Amendment provides the appropriate standard. *Id*. (citation omitted).

Conditions that amount to punishment of the detainee deprive the detainee of his liberty without due process of law. *Lyons*, 838 F.2d at 29 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine whether a condition amounts to a punishment, [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id*. (citation omitted). Further, "[i]f a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment." *Id*. at 29 (citing *Bell*, 441 U.S. at 539).

Invariably, if a violation of the Eighth Amendment is proven in correctional facilities that houses both convicted inmates and pretrial detainees, a violation of the Fourteenth Amendment will also have been proven for the pretrial detainees. A 2015 United States Supreme Court case "held that the plaintiff detainee did not have to show the defendant officer acted with subjective intent." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 54 (S.D. W. Va. 2020) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 391, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). The *Baxley* Court noted that *Bell* was recognized by the United States Supreme Court as standing for "the proposition that pretrial detainees can prevail on Due Process claims by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.*

## ARGUMENT

### LEGAL STANDARD FOR CLASS CERTIFICATION REVIEW

Rule 23(a) of the Federal Rules of Civil Procedure establishes four class certification requirements:

> (1) a class so numerous that joinder of all members is impracticable (the "numerosity" requirement);
> (2) questions of law or fact common to the class (the "commonality" requirement);
> (3) the representative parties' claims and defenses are typical of the class's claims and defenses (the "typicality" requirement); and
> (4) the representative parties that will fairly and adequately protect the class's

interests (the "adequacy of representation" requirement).

 Fed. R. Civ. P., 23(a); *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009).

 In addition to these four requirements, a plaintiff must also demonstrate that the proposed class action fits into one of three forms permitted by Rule 23(b). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).

### LEGAL STANDARD FOR ISSUE-BASED CLASS CERTIFICATION

In addition to satisfying the requirements of Federal Rule of Civil Procedure 23(a) and (b), Plaintiff respectfully requests that this Court certify the proposed class under Rule 23(c)(4) with respect to specific issues. Rule 23(c)(4) permits the Court to certify a class action on particular issues even if other aspects of the case do not satisfy all of the typical prerequisites for class certification. By certifying certain issues like liability for class treatment, the Court can streamline the litigation and resolve common questions of law or fact on a class-wide basis, thereby enhancing judicial efficiency and promoting the fair and efficient resolution of the underlying claims.

### A. Legal Standard for Certification of an Issues-Based Class.

Rule 23(c)(4) confers  Courts wide discretion to certify common legal or factual questions for class-wide treatment, stating "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Doing so will contribute to the fair and efficient resolution of the claims.

Rule 23(c)(4) promotes efficiency and judicial economy, prevents the risk of inconsistent outcomes, and allows parties to avoid the burden of trying individual issues that could be resolved through class-wide determination.

### B. Application of Rule 23(c)(4) to the Current Case

Plaintiffs respectfully submit that the Court should exercise its discretion under Rule 23(c)(4) to certify specific issues like liability under 42 U.S.C. § 1983 in this case for class treatment.  The Fourth Circuit gives "Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989), *cert. denied*, *Anderson v. Aetna Casualty & Surety Co.,* 493 U.S. 959, 110 S. Ct. 377, 107 L. Ed. 2d 362, 1989 U.S. LEXIS 5323 (1989). Commonality requirements

for issue-based Class Certification are less stringent than those of a 23(b)(3) analysis, and the Fourth Circuit aggressively endorses and encourages the use of Civ. R. 23(c)(4). *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989), reasoning that "… courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case." *Id*.

Plaintiffs seeking certification "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*; *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).  That the claims brought are common to all is clear from the discussion of those claims herein above.

Plaintiffs assert that class certification is appropriate. However, if this Court disagrees, the Fourth Circuit also endorses and encourages the use of Civ. R. 23(c)(4) to decide liability. *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989), "[I]n order to promote the use of the class device and to reduce the range of disputed issues, [and] courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case." *Id*.

### PLAINTIFF PRIMECARE PATIENTS CONSITUTE A DEFINABLE AND ASCERTAINABLE CLASS.

As a threshold matter, the proposed class here satisfies the implicit Rule 23 requirement of ascertainability.  A class definition is sufficient if it is administratively feasible for the court to determine whether a particular individual is a member of the class, based on objective criteria, without extensive and individualized fact-finding or mini-trials. *See* Charles Alan Wright & Arthur R. Miller, 7A *Federal Practice and Procedure* § 1760 (3d ed. 2020 update)

Plaintiffs propose a class definition in the precise, objective manner required:

**Generally, all current and former pretrial detainees and inmates at Southern Regional Jail from September 22, 2020, to present.  As to PrimeCare Defendants, the proposed class period is September 22, 2020, to June 25, 2022**.

[ECF 946, p. 37] [the "Class"]. This readily calculable class consists of five-thousand three-hundred and eight (5,308) members. These definitions appropriately restrict the boundaries of the class.

I.    **PLAINTIFF PRIMECARE SRJ PATIENTS MEET THE REQUIREMENTS OF RULE 23(A).**

A.    **The Plaintiff Class is So Numerous that Joinder is Impracticable.**

The proposed class of more than 5,000 former PrimeCare inmate patients meets Rule 23(a)(1)'s numerosity requirement, as it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  A class with "40 or more members raises a presumption of impracticability based on numbers alone." William Rubenstien, *Newberg on Class Actions* § 3:12 (5th ed. June 2020 Update); See also *Fain v. Crouch*, 342 F.R.D. 109, 114 (S.D. W. Va. 2022) ("courts have generally found numerosity present when a class has 40 or more members. *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020) (citing *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984))").  Similarly, the United States District Court for the Southern District of West Virginia found that 6,000 foster care children satisfied the numerosity requirement. *Jonathon R., et al. v. Jim Justice, et al.*, 344 F.R.D. 294 (S.D.W.Va. 2023).

B.    **The Putative Class Members Share Common Questions of Law and Fact.**

To meet the commonality requirement, there must be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2).

In civil rights cases, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members," *Armstrong*, 275 F.3d at 868, even if the challenged policy or practice will affect individual class members in different ways. See,

e.g., *Postawko*, 910 F.3d at 1038-1039 Even a single common question[1] will suffice to meet the requirement for class certification for the determination of law or fact. See, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "To satisfy Rule 23(a)(2), plaintiffs must show their claims involve a common question or contention 'of such a nature that it is capable of class-wide resolution…" *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1038 (8th Cir. 2018) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 350)).

In the context of inadequate health care, differences among class members with respect to the specific incidents of inadequate health care or disability discrimination that they have suffered do not undermine commonality. *Baxley v. Jividen*, 338 F.R.D. 80, 85 (S.D. W. Va. 2020) (explaining that the incarcerated plaintiffs, challenging West Virginia Division of Corrections and Rehabilitation's uniform healthcare policies and procedures, did not need to show that every class member was actually injured by the healthcare system, as the risk of harm was a sufficient injury) see also *Postawko*, 910 F.3d at 1039 (quoting *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("although a presently existing risk may ultimately result in different future harm for different inmates . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm") (emphasis added))

The discovery completed to date demonstrates that the PrimeCare Defendants through the highest levels of PrimeCare Medical, Inc. were aware of the medical understaffing and excessive, accumulating number of overdue tasks. PrimeCare Defendants individually and collectively failed to alleviate these circumstances in any meaningful way. The chronic shortage of medical staff

---

[1] Not all questions of law or fact must be common to every member of the class, as even a single common question will satisfy the commonality requirement. *Jonathan R.*, 344 F.R.D. 294 at 304.

negatively impacts the quality of medical care provided at the jail [Rashid 73; 16-23]. Dr. Rashid complained about the understaffing to PrimeCare and Wexford through various verbal discussion and three or four times by written request to the Assistant Regional Manager and/or Regional Manager. [Rashid, 78; 2-22, 85-86; 14-24, 1-24]. This policy and custom continued for more than two years of the class period under PrimeCare. PrimeCare admits a violation of the *Access to Care* standard inasmuch as it requires timeliness. Ex. 5, p. 3. By the admissions of its own managerial employees, this failure results in risk of serious injury, illness, or death. [Vallandingham 91: 1-23]; [Bavington 27: 16-22].These conditions continually subjected the Class to substantial risks of harm. Commonality is easily proven in this case.

C.    **The Claims of the Named Plaintiff Inmate Patients are Typical**

To meet the typicality requirement, the claims of the named plaintiffs must be "typical of the claims or defenses of the class." Rule 23(a)(3). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868 (citations omitted). The injuries do not have to be identical but must be similar and arise from the same course of conduct. *Id.* The representative parties must "'possess the same interest and suffer the same injury' as the class members." *Jonathan R. v. Justice*, 344 F.R.D. 294 at 314 *citing Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). Their claims, however, need not "be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp*., 436 F.3d 461, 467 (4th Cir. 2006). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dall*., 254 F.3d 551, 571 (5th Cir. 2001) (quoting 5 James William Moore, et al., *Moore's Federal Practice* § 23.24 (3d ed. 2000)).

Plaintiffs' claims all center on the prevailing medical practices, policies, and conditions at SRJ arising from PrimeCare's deliberate indifference to understaffing, overdue tasks, and an abject failure to take action to avoid these barriers to patient access to care. Plaintiffs allege violations of the Eighth and Fourteenth Amendments on behalf of themselves and other SRJ inmates subjected to PrimeCare's tenure as Responsible Health Authority at SRJ. The Plaintiffs and putative class members were patients of PrimeCare and were each and all subjected to deliberate indifference and inadequate medical care. The typicality requirement is satisfied.

Thomas Fleenor, Jr., was incarcerated from February 13, 2021 to July 12, 2021 and March 9, 2022 to July 22, 2022. During his time as a PrimeCare patient, Mr. Fleenor did not receive adequate detox checks and PrimeCare Defendants failed to adhere to proper detox protocol. Further, Mr. Fleenor's medications were not continued upon incarceration. Lisa Mullens, a PrimeCare employee, treated patients including but not limited to class representative Fleenor. Mullens agreed that for someone who requires medications for detox, such as Mr. Fleenor, there is a risk to that inmate patient if they don't get their detox medications. [Mullens, p. 32], at **Exhibit 22**. Mr. Fleenor and other similarly situated inmates were not given detox medications consistently and were chronically subjected to missed and/or rescheduled detox checks that were never conducted by PrimeCare.

Jonathan Crabtree's 14-day physical was never completed during his entire 101-day incarceration. He also suffered a 97-day delay to be seen by mental health after requesting a mental health sick call during his intake screening. Cassey Bolen (Wriston), one of PrimeCare's employees treating Mr. Crabtree, testified that she believed a 97-day delay in getting someone to see mental health is unacceptable, and could be harmful to someone's mental health for the delay

in treatment. [Cassey Wriston , pg. 17-20], at **Exhibit 23**. Further, Cassey Wriston was responsible for rescheduling Mr. Crabtree's 14-day physical that took 101 days to complete. *Id.*

Gary Toler was not provided proper follow up and care for a stroke. Despite August 2021,orders for physical therapy, rehabilitation, and neurology follow-up. PrimeCare Defendants did not send Mr. Toler to rehabilitation or a neurologist until October of 2021 at which time he received only six physical therapy/rehabilitation sessions and was discharged with no improvement.  As a result of PrimeCare Defendants' negligence and deliberate indifference, Mr. Toler suffered increased risk of harm and resulting impairments.  Mr. Toler testified that he brought this action as a class representative because he knew that he was not alone in not receiving timely physical therapy and outside facility appointments. [Gary Toler, 46], at **Exhibit 24.**

Sabrina Eagle entered incarceration on June 25, 2022 – the last day of PrimeCare's contract.  Despite indicating that she was under the care of a mental health provider in the community, Ms. Eagle never received appropriate mental status evaluation during her incarceration.  Further, Ms. Eagle's intake was neither reviewed by an RN or within twenty-four hours as required by NCCHC standards, a mechanism that could have detected her need for additional care.

### D.    Named Plaintiffs Will Adequately Represent the Class

### a. Proposed class representatives

Federal Rule of Civil Procedure 23(a)(4) requires that representative parties "fairly and adequately protect the interests of the class." "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists*

*Comm. to Stop the War*, 418 U.S. 208, 216 (1974)); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W. Va. 2005).

The requirement in Rule 23(a)(4) looks to whether any real and material conflicts of interest exist between the named parties and the class they seek to represent. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58, n. 13 (1982)). As the Fourth Circuit has noted:

> For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental. A conflict is not fundamental when, as here, all class members share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants]. Moreover, a conflict will not defeat the adequacy requirement if it is "merely speculative or hypothetical."
>
> *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010 (citation and internal quotation marks omitted).

The Named Plaintiffs and the putative class members all share the same interests seeking redress for PrimeCare's deliberate indifference to medical access and care. The inadequacy of the medical care; the medical understaffing: the overdue task lists; and the deliberate indifference to their serious medical needs are all conditions that Plaintiffs and Class endured and for which they seek remedy. The Named Plaintiffs and the putative class members all desire compensation for their injuries. The Named "Plaintiffs do not seek relief for themselves different in quality or character from the relief sought for the class as a whole." See, *Scott v. Clarke*, 61 F. Supp. 3d. 569, 589 (W.D. Va. 2014). These interests are aligned, not conflicting.

The named Plaintiffs have already demonstrated that they "have the ability and commitment to prosecute the action vigorously" See, *Thomas v. La.-Pacific Corp.*, 246 F.R.D.

505, 509 (D.S.C. 2007) in that they have each already answered written discovery requests and

given testimony by deposition.[2]

### b. Plaintiffs' Counsel Meet the Requirements of Rule 23(g) and Should Be Appointed Class Counsel.

Counsel for the named Plaintiffs request to be appointed counsel for the class, pursuant to

Federal Rule of Civil Procedure 23(g). That Rule provides in pertinent part:

(1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

    (A) must consider:

        i. the work counsel has done in identifying or investigating potential claims in the action;

        ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

        iii. counsel's knowledge of the applicable law; and iv. the resources that counsel will commit to representing the class;

    (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . .

(2) Standard for Appointing Class Counsel. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4) .

(4) Duty of Class Counsel. Class counsel must fairly and adequately represent the interests of the class.

*Fed. R. Civ. P.* 23(g).

Class counsel are fiduciaries to the absent members of the class. See *Rodriguez v. W. Pub. Co.*,

563 F.3d 948, 968 (9th Cir. 2009). The duty of adequate representation requires counsel to

---

[2] Plaintiff Fleenor appears now by the Administrator of his Estate, Brian Stafford, who is a professional Physician's Assistant, well positioned through his education, training and experience to understand the issues which impacted the class which Fleenor represents. Brian Stafford worked many years as a PA in a Wyoming County healthcare practice where he became all too familiar with the risks inherent to unsupervised drug and alcohol detoxification and is well-educated and experienced to understand the issues posed by unmonitored detoxification of SRJ inmates under PrimeCare's tenure.

represent the class competently, vigorously, and without conflicts of interest with the class. *See* *Amchem Prods.*, 521 U.S. at 626 n. 20. *See also*, *Blenko v. Cabell Huntington Hosp., Inc.*, No. 3:21-0315, 2022 U.S. Dist. LEXIS 142637, * 14 (S.D. W. Va. Aug. 10, 2022) (citation and internal quotation marks omitted). The named plaintiffs' attorneys must be "competent, dedicated, qualified, and experienced enough to be able to conduct the litigation" in a vigorous manner. *In re Serzone*, 231 F.R.D. at 238 (citation omitted). Plaintiffs' counsel has extensive experience handling class action litigation, mass tort litigation, and other complex civil litigation matters. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).   Class Counsel's experience in handling class action and other complex civil litigation matters have been previously submitted before this Court and referenced at ECF 849, specifically 849-5.

Plaintiffs' counsel have been on the front lines of identifying and investigating potential claims in this class action litigation.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i). Class counsel spent hundreds of pre-suit investigative hours, conducted very extensive written discovery, reviews of tens of thousands of documents, numerous depositions, and an extensive motions practice prosecuting this action.

## II.    The Proposed Class Meets the Requirements for Certification under Federal Rule of Civil Procedure 23(b)(3).

Under Rule 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  A class action is the superior method of resolving large-scale claims if it will achieve economies of time, effort, and expenses, as well as promote uniformity of decision as to

persons similarly situated. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Rule 23(b)(3) further provides that:

> The matters pertinent to these findings include:
>
> > (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

### A.    Predominance.

The Rule 23(b)(3) predominance requirement [. . . ] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Gray v. Hearst Communs., Inc.*, 444 F. App'x 698, 701 (4th Cir. 2011), quoting *Amchem Prods.*, 521 U.S. at 623 (internal quotation marks omitted). When "claims arise out of a common course of conduct" by the Defendants and "the only significant individual issues involve damages, which rarely present predominance problems," certification is appropriate. *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943, at *16-17 (E.D. Va. Sep. 13, 2022). The Fourth Circuit has "embraced the view that the mass tort action for damages may be appropriate for class action, either partially or in whole." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003) (citation and internal quotation marks omitted).

### B.    Superiority.

In determining whether a class action is superior,

> the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the

judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

*Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) quoting 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005).

The *Stillmock* Court concluded that the superiority requirement was met when no indication existed that the "class members would have a strong interest in individual litigation." *Id.* at 275. The Court reasoned that "certification promotes consistency of results giving [the defendant] the benefit of finality and repose." *Id.* (citing *Gunnells*, 348 F.3d at 429). Defendants have each expressed concerns in this matter regarding litigation at other West Virginia facilities and by other inmates – certainly, Defendants would have much graver concerns if each SRJ inmate were forced to bring their claims individually.

Additionally, where the "allegations establish that a large group of individuals endured the same event[s] and that their claims center on essentially the same constitutional violation," resolution by a means other than a class action "has little reason." *Fobbs v. Hunt*, No. 3:21cv26 (DJN), 2021 U.S. Dist. LEXIS 87094, at *54-55 (E.D. Va. May 5, 2021). This is especially true in the case of inmates who are incarcerated "and would have substantial difficulties bringing individual actions on their own." *Id.*

## III.    The Proposed Classes Meet Requirements for One or More Issue-Based Classes under Federal Rule of Civil Procedure 23(c)(4).

Alternatively, if this Court should find that class certification is not appropriate, then Plaintiffs proposed defining the following issue-based classes:

**<u>Issue Class 1</u>**

Did PrimeCare Defendants violate the Eighth and Fourteenth Amendment Rights of the Class by being deliberately indifferent to their serious medical needs through systemic and gross deficiencies in staffing, facilities, equipment, and/or procedures?

**Issue Class 2**

Did PrimeCare Defendants breach the standard of care for correctional medical providers?

**Issue Class 3**

Did the Defendants conspire with one another to violate the class members' constitutional Eighth and Fourteenth Amendment rights?

Federal Rule of Civil Procedure 23(c)(4) permits a class action to be maintained with respect to particular issues.

> Consistent with the text of Rule 23(c)(4), one commentator recently observed as follows: 'Although traditional claims brought under Rule 23(b) involve "an all-or-nothing decision to aggregate individual cases," Federal Rule of Civil Procedure 23(c)(4) allows litigants to resolve <u>specific issues</u> in a case on a class-wide basis.' Joseph Seiner, <u>The Issue Class</u>, 56 B.C. L. Rev. 121, 132 (2015) (quoting Jon Romberg, <u>Half A Loaf Is Predominant and Superior to None: Class Certification of Particular Issues Under Rule 23(c)(4)(A)</u>, 2002 Utah L. Rev. 249, 251 n.96) (emphasis added).

> *Good v. Am. Water Works Co*., 310 F.R.D. 274, 295-96 (S.D. W. Va. 2015).

The separation of issues for decision is not unique to class actions. Federal Rule of Civil Procedure 42(a)(1) provides that "[i]f actions before the court involve a common question of law or fact, the court may join for hearing or trial any or all matters at issue in the action."

In the Fourth Circuit, "if the action includes multiple claims, one or more of which might qualify as a certifiable class claim, the court may separate such claims from other claims in the action and certify them under the provisions of subsection (c)(4)." *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989)

Plaintiffs propose, if this Court determines that class certification is not appropriate for the entire action, that this Court certify one or more issue classes as previously delineated. Plaintiffs propose an issue class to determine whether the convicted inmates and pretrial detainees were subject to cruel and unusual punishment by virtue of the practices, policies, and actions of PrimeCare Defendants. A separate issue class is proposed to determine that issue with respect to PrimeCare Defendants' breach of the standard of care. A third and final issue class is proposed to

ascertain whether medical defendants conspired with one another or with the former defendants to commit these violations. These three classes would allow this Court to separately address the differing standards under these counts of the Third Amended Complaint.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court GRANT *Plaintiffs' Motion for Class Certification as to PrimeCare Defendants* and enter an order certifying that this case may proceed against PrimeCare Defendants as a class action as set forth herein.

**PLAINTIFFS**
**By Counsel,**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newtaylorlaw.com

Amanda J. Taylor (WVSB No. 11635)
Taylor, Hinkle & Taylor
115 ½ S. Kanawha St.
Beckley, WV 25801
304.894.8733 (P)
681.245.6236 (F)
amanda@thtwv.com

Timothy Lupardus (WVSB No. 6252)
The Lupardus Law Office
275 Bearhole Road
Pineville, West Virginia 24874
(304) 732-0250
office@luparduslaw.com

Zachary Whitten (WVSB No. 13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874

zwhittenlaw@gmail.com

Robert Dunlap (WVSB No. 10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
(304) 255-4762
robertdunlapesq@gmail.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

**BRYAN STAFFORD, Executor of the
Estate of THOMAS FLEENOR, JR., et al.,**

**Plaintiffs,**

**v.**                                    **Civil Action No. 5:22-cv-00405**

**PRIMECARE MEDICAL, INC., et al.,**

**Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel for Plaintiffs does hereby certify that the foregoing *Memorandum of Law in Support of Plaintiffs' Motion for Class Certification as to PrimeCare Defendants* was filed with the clerk on <u>December 6, 2024</u> via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

/s/ Stephen P. New
Stephen New (WVSB#7756)