**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**BRYAN STAFFORD for the Estate of
THOMAS FLEENOR, *et al.*,**

        **Plaintiffs,**

**v.**

**PRIMECARE MEDICAL, INC.** *et al.*        **Civil Action No.: 5:22-cv-00405**
                         **Honorable Frank W. Volk**
        **Defendants.**

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

      COMES NOW Plaintiffs Nicole Henry and Edward Harmon (collectively "Plaintiffs"), by and through undersigned counsel, and submit this Response to the Court's Order to Show Cause (ECF No. 1367), addressing why Plaintiffs' pending motions remain live and properly before the Court, and respectfully state as follows:

### I.    Introduction

    Plaintiffs submit this Response to the Court's Order to Show Cause (ECF No. 1367) to clarify the status of their pending motions and to demonstrate that a concrete, ongoing dispute remains regarding enforcement of a binding settlement agreement between Plaintiffs and the PrimeCare Defendants. The motions are not moot because (1) the parties reached a complete and enforceable settlement agreement on March 4, 2025, (2) both sides substantially performed under that agreement for months thereafter, and (3) PrimeCare repudiated the agreement only after the Court denied class certification, thereby creating a live controversy regarding such settlement that requires judicial resolution. The material facts are not in dispute and are confirmed by PrimeCare's

1

own writings through emails. True and accurate copies of these emails are attached as exhibits to this Response.

On March 4, 2025, PrimeCare's counsel circulated a written term sheet expressly "confirm[ing] that we have reached an agreement to resolve the… litigation," setting out all essential terms, including: a payment of $2,500,000 into a Qualified Settlement Fund; a timeline for full funding; PrimeCare's obligation to pay all administrative and notice costs; agreement to use Rust Consulting as Claims Administrator; the dismissal structure; and a no-admission clause (Exhibit 1). Plaintiffs accepted the offer the same day, confirming in writing: "…we have a deal. Yes, we confirm" (Exhibit 1). This written offer and acceptance, containing all material terms, formed a binding settlement agreement.

Following formation of the contract, both parties proceeded to perform under it. On April 29, 2025, Plaintiffs informed Rust Consulting, copying PrimeCare's counsel[1], that "we have now settled with PrimeCare" and that PrimeCare "…will be responsible for paying all admin and notice costs" (Exhibit 2). PrimeCare made no objection or disputed that a settlement agreement has been reached in response. The parties then held a joint call with Rust on May 5, 2025, during which PrimeCare's counsel personally participated in discussions regarding notice procedures and settlement administration (Exhibit 3).

Throughout late April and May, Plaintiffs and PrimeCare worked collaboratively on class eligibility criteria, including the "14-day" incarceration requirement and the treatment of class members with multiple qualifying periods (Exhibit 4). These are not negotiation communications, they are implementation communications, demonstrating partial performance of the settlement.

[1] Plaintiffs corresponded primarily with PrimeCare's counsel, Mark R. Simonton of Offutt Simmons Simonton, PLLC. When referring to communications with PrimeCare in this Response and supporting Declaration of Counsel, Plaintiffs are referring to communications with Mr. Simonton.

2

During the same period, Plaintiffs circulated a draft Joint Motion for Preliminary Approval and asked PrimeCare to prepare the written settlement agreement "to accurately reflect all of the terms discussed," attaching the WVDCR settlement agreement as a template (Exhibit 5). Plaintiffs followed up on May 30 asking whether PrimeCare would prepare the draft settlement agreement (Exhibit 6). PrimeCare did not dispute the existence of the settlement, did not object to any term, and did not assert any condition precedent.

PrimeCare's position changed only after the Court denied class certification. In a July 22, 2025 email, PrimeCare acknowledged that "an agreement was reached" on March 4 and admitted it participated in the Rust Consulting meeting. But for the first time, PrimeCare claimed it would not honor the settlement because the Court denied preliminary approval, asserting incorrectly that Rule 23(e) approval was a mandatory prerequisite to enforceability. (Exhibit 7). Nothing in the March 4 agreement conditioned performance on class certification or preliminary approval, and Rule 23(e) approval affects only judicial approval of a class settlement, not whether the underlying contract exists.

Plaintiffs promptly moved to reopen the civil action (ECF No. 1357) and to reconsider the denial of preliminary approval (ECF No. 1365), explaining that (1) the denial order contained no findings of fact or conclusions of law, and (2) the Court had not adjudicated whether the settlement was enforceable. (Exhibit 8).

Thus, a live and justiciable controversy remains: whether PrimeCare may unilaterally repudiate a settled agreement, one it negotiated, confirmed in writing, reported to the Court, and partially performed, based solely on subsequent procedural developments that do not affect the validity of the contract. Because that dispute remains unresolved, Plaintiffs' motions are not moot, and the Court should adjudicate them on their merits.

## II.     **Argument**

i.     Class Certification Is Not Required Before a Court May Consider or Approve a Class Settlement, and PrimeCare's Attempt to Walk Away After Certification Was Denied Is Improper

PrimeCare has made it clear through the attached correspondences that its position is that the Court's denial of Plaintiffs' motion for class certification automatically extinguished the negotiated settlement. This is contrary to well-established law. Courts have long recognized that a district court may consider, evaluate, and even approve a class settlement before certifying a class, and that parties may enter into an enforceable settlement agreement prior to certification.

It is well established that a court may consider or certify a class for settlement purposes before certification. See, e.g., *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 849, 119 S. Ct. 2295, 2316, 144 L. Ed. 2d 715 (1999); *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp. 1379, 1389 (D. Md. 1983); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1307 (4th Cir. 1978). These authorities make clear that class certification is not a prerequisite to either (1) reaching a settlement agreement or (2) the Court's ability to consider or approve that settlement.

As *Shelton* explains, "before a District Court may consider or approve a voluntary pre-certification settlement of an action begun as a class action, it is not compelled to undertake the laborious process of arriving at a certification determination under 23(c)(1), with all the burdens such responsibility would entail." *Id*. at 1314. Rather, the court must simply determine what "claims are being compromised" between the plaintiff and defendant, and whether the named plaintiff has used the class action mechanism for unfair personal aggrandizement or in a manner that would prejudice absent putative class members. *Id*. If, after this inquiry, the court is satisfied that there has been no abuse of the class action device and no prejudice to absent putative members,

it "may approve the settlement and dismissal without going through with a certification determination or requiring notice to be given to absent putative class members." *Id*.

This framework underscores the central point here. Nothing in Rule 23 or in the case law conditions the validity of a settlement agreement on the prior certification of a class, nor does the denial of a litigation-class motion automatically void a settlement already reached. The law is clear that courts may engage with, evaluate, and even approve settlements reached before certification, and the parties' agreement is not undone simply because certification was later denied.

ii.    A Complete and Enforceable Settlement Agreement Was Reached on March 4, 2025.

A district court has inherent authority to enforce a settlement agreement where the record establishes that "(1) the parties reached a complete agreement and (2) [the court] is able to determine its terms and conditions." *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991); see also *Campbell v. Adkisson, Sherbert & Assocs.*, 546 F. App'x 146, 152 (4th Cir. 2013); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). No formal written and signed settlement agreement is required for a settlement to be binding. Fourth Circuit Courts have gone as far as to enforce oral settlement agreements. See, e.g., *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990). The two requirements set forth in *Moore* are plainly satisfied here.

The March 4, 2025 email exchange constitutes a written settlement agreement containing all essential terms. PrimeCare's counsel expressly stated: "we have reached an agreement" and set out the material terms, including: (a) a $2.5 million payment into a Qualified Settlement Fund, (b) the timeline for funding, (c) PrimeCare's obligation to pay all administrative and notice costs, (d) use of Rust Consulting as the Claims Administrator, (e) the dismissal structure, and (f) a no-admission provision (Exhibit 1). Plaintiffs responded the same day: "we have a deal. Yes, we

5

confirm" (Exhibit 1). Under *Moore* at its progeny, this written offer and acceptance satisfies both elements of a complete and enforceable settlement contract.

Where factual disputes exist over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the court may not summarily enforce the settlement. Instead, the court must conduct a plenary evidentiary hearing in order to resolve that dispute. *Hensley v. Alcon Lab'ys, Inc.,* 277 F.3d 535, 540–41 (4th Cir. 2002).

However,  there are no such disputes here. PrimeCare has affirmatively admitted in writing that "an agreement was reached" on March 4, 2025 (Exhibit 7). PrimeCare also relied on that agreement throughout April and May: it joined the Rust Consulting administration call (Exhibit 3), engaged in class-definition and eligibility discussions (Exhibit 4), and did not challenge a single material term. At no point did PrimeCare question the authority of its counsel to bind it or suggest that any essential term remained open. If the Court finds any question as to the existence of an agreement, Plaintiffs request a hearing on the matter.

Because the material facts regarding the formation and terms of the settlement are uncontested and fully documented in the parties' written communications, this is not a case requiring a plenary evidentiary hearing. If the Court finds any question as to the existence of an agreement, Plaintiffs request a hearing on the matter.

Plainly, the March 4, 2025 exchange reflects exactly such a complete and definite settlement agreement. Enforcement is therefore appropriate.

iii.    <u>This Case Is Not Moot Because a Live, Justiciable Controversy Exists Regarding Enforcement of the Settlement Agreement.</u>

Federal courts may adjudicate only actual "cases" or "controversies" under Article III. U.S. Const. art. III, § 2. "The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th

Cir. 2011) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)). A case becomes moot only "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Thus, when a change in "facts or the law" eliminates any remaining stakes in the dispute, "the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)

This is not such a case. A concrete dispute remains because Plaintiffs and PrimeCare sharply disagree about the enforceability of their March 4, 2025 settlement agreement. Plaintiffs seek to enforce a binding contract that PrimeCare admits was reached but now refuses to honor. Plaintiffs also seek reconsideration of the denial of preliminary approval, and reopening of the action so that the Court may adjudicate these issues. PrimeCare, in contrast, has taken the position that the contract is no longer enforceable and that it has no remaining obligations. This kind of disagreement over legal rights and contractual duties is the very definition of a live case or controversy.

The Supreme Court has made clear that a case is not moot so long as there is still a remedy available to a party, even a "partial remedy". *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 2067, 135 L. Ed. 2d 453 (1996). Here, multiple remedies remain available to Plaintiffs, including: (1) enforcement of the settlement agreement; (2) reconsideration of the prior denial of preliminary approval; (3) an evidentiary hearing, if necessary, on any factual matters related to enforcement; and (4) other relief appropriate under the Court's inherent authority to enforce binding settlement contracts.

Moreover, the Fourth Circuit and Supreme Court recognizes that mootness mirrors standing over time, "the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Plaintiffs continue to possess a personal stake in obtaining the benefit of the settlement agreement, and PrimeCare continues to oppose that relief. Their interests remain directly adverse.

The existence of this unresolved contract dispute, documented in the parties' writings, confirmed by PrimeCare's July 22 admission that "an agreement was reached," and demonstrated by PrimeCare's subsequent repudiation, preserves a live controversy. Accordingly, because a meaningful and concrete remedy remains available, and because Plaintiffs and PrimeCare remain in active and substantial disagreement over their legal rights and obligations, the case is not moot. The Court retains full jurisdiction to adjudicate Plaintiffs' pending motions.

This Court should have, upon the announcement of the parties that a settlement had been reached at the pretrial conference, scheduled dates for preliminary approval, notice to class members, as well as a date for final approval just as it had done when these same plaintiffs settled with the WVDCR related defendants the year prior. Rule 23 explicitly states that "the parties MUST submit to the Court a motion for preliminary approval …". PrimeCare refused to participate in preparing the motion for preliminary approval, despite having agreed to all material terms of the settlement. This Court's later denial of class certification and one sentence denial of plaintiff's proposed motion for preliminary approval violates Rule 23 of the Federal Rules of Civil Procedure as well as tenets of basic contract law. PrimeCare should not only have this class settlement enforced against it, but plaintiffs and their counsel should be entitled to sanctions for

the manner in which it has conducted itself related to the settlement of the class action against it and its principals and employees.

**III.**    <u>**Conclusion**</u>

For the foregoing reasons, Plaintiffs respectfully submit that their pending motions are not moot and remain squarely within the Court's Article III jurisdiction. The parties reached a complete and enforceable settlement agreement on March 4, 2025; both sides subsequently performed under that agreement; and a live, justiciable controversy now exists because PrimeCare has repudiated its obligations. Plaintiffs therefore request that the Court proceed to adjudicate the merits of the pending motions, including the Motion to Enforce Settlement, the Motion to Reconsider, and the Motion to Reopen, and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

s/ Stephen P. New
Stephen P. New (WV Bar #7756)
Emilee B. Wooldridge (WV Bar #14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801

Amanda Taylor (WVSB 11635)
Taylor, Hinkle & Taylor Inc.
115 ½ South Kanawha St.
Beckley, West Virginia 25801
amanda@thtwv.com

Timothy Lupardus (WV Bar #6252)
The Lupardus Law Office

275 Bearhole Road
Pineville, West Virginia 24874
T: 304-732-0250
office@luparduslaw.com

Zachary Whitten (WV Bar #13709)
The Whitten Law Office
P.O. Box 753
Pineville, West Virginia 24874
zwhittenlaw@gmail.com

Robert Dunlap (WV Bar #10012)
Robert Dunlap & Associates
208 Main Street
Beckley, West Virginia 25801
T: 304-255-4762
robertdunlapesq@gmail.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**BRYAN STAFFORD for the Estate of
THOMAS FLEENOR,** *et al.***,**

        **Plaintiffs,**

**v.**

**PRIMECARE MEDICAL, INC.** *et al.*       **Civil Action No.: 5:22-cv-00405
Honorable Frank W. Volk**

        **Defendants.**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of November, 2025, I filed a copy of the foregoing *Plaintiffs' Response to Show Cause Order* using the Court's CM/ECF filing system, which will cause a copy to be served on all counsel of record.

<u>s/ Stephen P. New</u>
Stephen P. New (WVSB 7756)

11